# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No.02-1383L (Chief Judge Edward J. Damich) |
| Plaintiff, | ) | **SECOND AMENDED COMPLAINT** |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

Plaintiff Samish Indian Nation, a federally recognized Indian tribe, for its Second Amended Complaint hereby alleges as follows:

## Nature of Action

1. The Samish Indian Nation ("Tribe") has continuously existed as an Indian tribe from the time of the Treaty of Point Elliott, 12 Stat. 927, in 1855 up to the present. While the Tribe was entitled throughout its history to recognition by the federal government as an existing Indian tribe, for the period 1969 to 1996 the federal government wrongfully and arbitrarily refused to treat the Tribe as a recognized tribe. The Tribe was entitled to historical recognition before 1996.

2. As a result of the federal government's wrongful actions, the Samish Indian Nation and its members were denied valuable rights, programs, services and benefits from 1969 to 1996 which were provided by the United States under money mandating federal laws to other federally recognized Indian tribes. The Samish Indian Nation seeks compensation

from the United States for this wrongful denial or withholding of rights, programs, services and benefits to the Samish Indian Nation and its members during the period 1969 to 1996.

**Parties**

3. The Samish Indian Nation is a federally recognized Indian tribe, recognized by the United States as a sovereign Indian tribe with legal rights and responsibilities, and eligible for the special rights, programs, services and benefits provided by the United States to Indian tribes, and recognized as possessing powers of self-government. The Samish Indian Nation operates under a written constitution that affirms the authority of the Tribe to act on its own behalf in a governmental capacity and on behalf of its members. In particular, the Samish Constitution at Article VI, Section 2(1) vests the Samish Tribal Council with authority to present and prosecute any claims on behalf of the Tribe or Tribal members.

4. Defendant United States of America ("United States") has numerous trust responsibilities owed to the Tribe, including a duty to preserve and protect the Tribe's legal rights and its status as a sovereign government and to rationally and equitably distribute and allocate funding, services and benefits to the Tribe as part of its duty to provide funding, services and benefits to all federally recognized tribes under money mandating federal statutes.

## Jurisdiction

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1491, 1505. This is an action arising under the Constitution, treaties, and laws of the United States, including but not limited to the statutes listed in paragraph 30 of this Second Amended Complaint.

6. Congress has established a broad array of federally-funded programs, services and benefits to serve federally recognized tribes and their members. In each case covered by this Second Amended Complaint, Congress has established the program, service or benefit, and has appropriated funds over the course of many years, to meet the economic, social services, educational, health and other critical needs of federally recognized tribes and their members. The programs, services and benefits covered by this Second Amended Complaint are made available to all eligible federally recognized tribes (and tribal members) who meet established program criteria, are not awarded on a competitive basis, and are allocated or distributed in a manner such that the amount due can be readily ascertained. These programs, services and benefits include those described in paragraph 30.

## Background Facts

7. The Samish Indian Nation (also known as the Samish Tribe or Samish Indian Tribe) was a signatory to the Treaty of Point Elliott, which was negotiated and signed in 1855 and ratified by the United States Senate in 1859. 12 Stat. 927.

8. The Indian Claims Commission in *Samish Tribe v. United States*, 6 Ind. Claims Comm'n 159, Docket No. 261 (1958), held that the Samish Tribe was the descendant and successor in interest of the Samish Indians of aboriginal times, that the Samish Tribe and its members have continued as a tribal entity into contemporary times, and that the Samish Tribe was a tribal organization whose predecessors in interest along with other groups of Indians, ceded their lands, under the Treaty of Point Elliott to the United States. Under the Indian Claims Commission's ruling, the modern Samish Tribe was held to have a right to sue for damages for the loss of the Tribe's lands under the 1855 Treaty of Point Elliott. The Samish Tribe recovered damages in its Indian Claims Commission proceeding, which award was ratified by Congress pursuant to the Indian Tribal Judgment Funds Use and Distribution Act, Pub. L. No. 93-134, 87 Stat. 466 (1973), *codified as amended at* 25 U.S.C. §§ 1401-1407.

9. In 1969, the United States, through wrongful actions of federal employees and officials within the Department of the Interior, arbitrarily and capriciously omitted the Samish Indian Nation from a list of Indian tribes that had been prepared by the Department of the Interior. While the list was not intended to be a list of federally recognized tribes, it was nevertheless used by the United States to identify federally recognized Indian tribes. There was no lawful authority to create such a list and there was no rational basis for excluding the Samish Indian Nation from the list. But this omission of the Samish Indian Nation from the list, and the resulting treatment of the Tribe as not federally recognized, caused the Tribe and its members to be deprived of all of the programs, benefits and services

afforded by the United States to all other federally recognized Indian tribes and their members for the period 1969 to November 1996.

10. Faced with a total lack of federal support and assistance because of the federal government's wrongful treatment and denial of recognition, the Samish Indian Nation vigorously sought confirmation of its federally recognized status for many years. In an effort to confirm their status as a federally recognized tribe, the Samish Indian Nation in 1972 first petitioned for recognition as an Indian tribe by the United States. After extensive delays by the government, on February 5, 1987, the Assistant Secretary for Indian Affairs issued a decision denying the Tribe's petition for recognition.

11. In April 1989, the Samish Indian Nation filed suit in the United States District Court for the Western District of Washington challenging the Assistant Secretary's adverse recognition decision on Fifth Amendment due process grounds – as the decision was rendered without a hearing or other fundamental due process protections for the Tribe.

12. The federal district court found that the Department's 1989 recognition decision violated due process, as the Samish were not afforded a hearing, and, in particular, were "not given an opportunity to cross-examine the BIA's experts or present their own experts, research materials relied on by the decision makers were withheld from the plaintiffs, and there is evidence that would lead an objective bystander to believe that some of the decision-makers prejudged the case." *Greene v. Lujan,* No. C89-645, 1992 WL

533059, at *9 (W.D. Wash. Feb. 25, 1992). The District Court's decision was affirmed on appeal. 64 F.3d 1266 (9th Cir. 1995).

13. On remand, an administrative law judge was appointed to hear the Tribe's claim of a right to federal recognition. On August 31, 1995, the Administrative Law Judge issued an exhaustive opinion and concluded that the Samish Tribe has continually existed as an Indian tribe from treaty time to the present. *Greene v. Babbitt*, Docket No. Indian 93-1, U.S. Dep't of the Interior, Office of Hearings and Appeals, Recommended Decision of Admin. Law Judge Torbett, at 19 (Aug. 13, 1995).

14. The Administrative Law Judge's decision was considered by Assistant Secretary of Indian Affairs Ada Deer, who was responsible for issuing the Department's final decision. On November 8, 1995, the Assistant Secretary issued a determination in favor of Samish recognition. But the Assistant Secretary in her ruling rejected certain essential findings made by the Administrative Law Judge in support of Samish recognition.

15. The Samish Indian Nation appealed Assistant Secretary Deer's determination on behalf of Samish recognition (but with essential factual findings removed) to federal court asking the Court to reinstate the Administrative Law Judge's factual findings that had been deleted by the Assistant Secretary. On October 15, 1996 in *Greene v. Babbitt*, 943 F. Supp. 1278 (W.D. Wash. 1996), the District Court entered a judgment for the Samish Indian Nation. As a result of the government's history of misconduct in denying the due process rights of the Tribe, the Court reinstated the findings that had been improperly omitted from

the Assistant Secretary's decision recognizing the Tribe rather than remand the matter to the Agency for further proceedings.

16. Among the findings at issue in federal court was one which provided that:

> the omission of the Samish from a list of tribes prepared by the Defendants in the 1960s was neither based on actual research, nor was it intended to be used as the basis for determining which Indian groups are to be recognized by the United States (*see* Final Determination at 16, 38-39).

*Id.* at 1288 n.13. This finding was removed from the Administrative Law Judge's recommended decision in favor of the Samish by Assistant Secretary Deer in her final decision for the BIA.

17. The Tribe argued, and the Court agreed, that this finding was deleted by the Assistant Secretary at the ex parte urging of a government attorney to avoid governmental liability for past federal services and benefits to which the Samish Tribe would have been entitled if they had continued to be a recognized Indian tribe after 1969. The Court found the government's ex parte contacts to be wrongful, found the Administrative Judge's factual findings and legal conclusions on this issue to be exhaustive and well reasoned, and restored the finding.

18. The United States did not appeal the District Court's October 15, 1996 decision in *Greene v. Babbitt.*

19. The federal government has a trust responsibility to federally recognized Indian tribes. This trust responsibility arises from Treaties, statutes and the course of dealings

between the United States and the tribes, over the span of many years. Various aspects of the trust responsibility have been recognized and codified in various federal statutes. These include, but are not limited to the Treaty of Point Elliott, 12 Stat. 927 (1855), to which the Samish Indian Nation was a signatory party; the Indian Reorganization Act of 1934, ch. 576, § 1, 148 Stat. 984, *codified as amended at* 25 U.S.C. §§ 461-479, which confirms the federal government's trust responsibility to preserve and protect tribal self-government by allowing Indian tribes to reorganize their governments and by allowing the Secretary of Interior to acquire land in trust for the benefit of Indian tribes; the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4792, *codified at* 25 U.S.C. § 479a-1, which confirms the Department of Interior's trust responsibility to protect and preserve tribal self-government of all federally recognized Indian tribes, and the statutes listed in paragraph 30.

20. The trust responsibility provides an important backdrop to the federal funding of programs for federally recognized tribes and their members. The United States has a trust responsibility with respect to every federally recognized tribe.

21. Because the trust responsibility protects all federally recognized tribes, the federal government must treat all tribes fairly, and must not take action that diminishes (or eliminates) the privileges or benefits of any federally recognized tribe in a fashion that is not rational in comparison with that enjoyed by other federally recognized tribes. 25 U.S.C. §§ 476(f), (g).

22. Every tribe that is federally recognized today receives – either directly or through programs or services delivered by a federal agency – some amount of federal funds by virtue of being a federally recognized tribe.[1] While the timing and amount of federal funding each tribe receives may vary under rational formulas adopted by the agency, every federally recognized tribe (including newly recognized tribes) eventually receives federal funds for various programs and services.

23. Every tribe that was federally recognized as of 1969 today receives some amount of federal funds by virtue of being a federally recognized tribe. The only exception to this would be tribes, if any, that were terminated by Congressional action after 1969 and have not been restored to federal recognition. The plaintiff is aware of no such tribe.

24. Every tribe that became federally recognized by administrative or legislative means between 1969 and 1996 today receives some amount of federal funds by virtue of being a federally recognized tribe.

25. Congress appropriated substantial funding for the benefit of all Indian tribes and members of Indian tribes during the period from 1969 to 1996, pursuant to a number of federal authorizing statutes. In one of two ways (federal agency funding to benefit a tribe or its members, or direct funding to the tribe or members themselves), every federally

---

[1] For purposes of brevity, when referring to federal funds, we use the term "receives" to mean that the federal funds are either provided directly from the federal government to the tribe, or expended by the federal government specifically for the benefit of the tribe or its members.

recognized tribe received some measure of federal funding under one or more of these statutes, between 1969 and 1996. Such funding must be distributed to tribes based upon a rational or equitable formula.

26. The Samish Indian Nation and Samish tribal members received no funds appropriated by Congress and distributed to or expended on behalf of federally recognized tribes during the period from 1969 through April 8, 1996. No federally recognized tribe (except for the Samish Indian Nation which should have been treated like other recognized tribes), was completely deprived of federal funding from 1969 to 1996.

27. Some of the funds provided to all other federally recognized tribes and their members by the federal government were allocated based on each tribe's trust land base. Federally recognized tribes throughout the continental United States and in particular those tribes in Northwest Washington who became recognized during or as part of the treaty fishing rights litigation in *United States v. Washington*, known as the *Boldt* litigation, *see* 384 F. Supp. 312 (W.D. Wash. 1974), received or obtained reservations for the residence of tribal members and for other tribal purposes. The Samish Tribe, because the United States treated it as unrecognized during this period and because the United States took the position that it was not eligible to acquire land in trust under the Indian Reorganization Act, 25 U.S.C. § 465, did not receive a reservation and did not obtain any lands in trust. The United States declared that the Samish Indian Nation was not eligible for services, benefits and funding provided to other Indian tribes because it did not have a federal land base and because the

United States did not recognize the Tribe. If the Samish Tribe had been properly recognized by the United States during the period 1969 to 1996, the Tribe would have obtained a land base held in trust by the United States for the benefit of the Tribe and would have qualified for federal programs and funds which were tied to the existence of a tribal reservation or land base.

28. The Samish Indian Nation was harmed by the United States' wrongful denial of recognition of the Tribe between 1969 and 1996. Samish tribal members were denied federal services and benefits made available to members of all other federally recognized tribes during this period of time because the United States wrongfully refused to recognize the Samish Tribe. Indian people across the United States suffered from severe social and economic deficits throughout this period. The quality of life for Indian people - whether measured by poverty, health conditions, housing, educational opportunities, unemployment or other indicators – was far below that of any other group in the United States. For members of federally recognized tribes, there was a range of federal programs, benefits and services, including those described in paragraph 30, which sought to ameliorate in some measure the dire living conditions faced by all Indians nationwide. But as a result of the failure of the United States to recognize the Tribe, Samish members were denied desperately needed health care, social services and benefits, education funding and benefits, housing assistance and benefits, and other benefits and services provided by the Unites States to members of federally recognized Indian tribes. This denial of services and benefits resulted in harm to

Samish tribal members and their families, causing them to continue to suffer from serious unmet needs in health care, education, and all other areas.

29. The Samish Indian Nation was harmed by the United States' wrongful denial of recognition to the Samish Indian Nation between 1969 and 1996 in other ways as well. During this period, tribes throughout the United States were able, through implementation of the Self-Determination policy and with federal assistance, to develop their governmental systems and infrastructure, to provide governmental services and benefits to their members such as housing, to begin to make economic progress to address decades of accumulated poverty, to preserve and advance tribal culture and traditions, and to continue operation as a tribal government for the benefit of its people. But, as a result of the United States' failure to recognize the Samish Indian Nation, the Tribe was unable to move forward in these areas on the same basis as all other federally recognized tribes. The federal government's wrongful failure to recognize the Samish Indian Nation during this 27 year period put the Samish Tribe behind all other federally recognized tribes with regard to economic development, the provision of programs and services to its members, and in the development of tribal government and tribal community.

30. The programs, services and benefits provided by the United States during some or all of the period 1969 to 1996 to eligible federally recognized tribes and their members – along with their statutory basis and eligibility requirements – include the following:

a. Tribal Priority Allocations. (i) The Bureau of Indian Affairs provides funding to support a broad range of programs, services and benefits to federally- recognized tribes. These are collectively referred to as "Tribal Priority Allocations," ("TPA"), a term that includes the following categories of BIA programs: Tribal Government, Human Services, Education, Public Safety and Justice, Community Development, Resources Management, Trust Services and General Administration. Within each of these program categories are several specific programs – each of which is a component of TPA. Every federally recognized tribe receives some TPA funds every year. In general, once a federally recognized tribe receives TPA funds, that amount becomes part of that tribe's "base funding," and the tribe receives that amount in subsequent years as well (subject only to action by Congress to increase or decrease funding for that program within TPA).

(ii) In the years beginning in 1969, but prior to the existence of TPA, the programs that are now part of TPA were funded as part of the BIA budget, within the category of "Operation of Indian Programs." During those years, as well, once a tribe received funding for such a program, that funding became a part of the base amount that was (subject to appropriations levels rising or falling) routinely provided to that tribe in subsequent years.

(iii) Every year, Congress appropriates funds for TPA as part of the Appropriations Act for Interior and Related Agencies. The Appropriations Acts for Interior and Related Agencies for the fiscal years 1969 to 1996 are listed in paragraph 30.o. In doing so, Congress acts with the understanding, arising from representations by the Interior

Department and longstanding practice, that every federally recognized tribe will receive some TPA funding each year. Congress has never authorized the Interior Department to provide TPA to less than all federally recognized tribes.

(iv) Congress has also enacted several authorizing statutes that support various programs within TPA. These include the Johnson-O'Malley Act, ch. 147, 48 Stat. 596 (1934), *codified as amended at* 25 U.S.C. §§ 452 - 457, the Indian Child Welfare Act of 1978, Pub. L. No. 95-608, 92 Stat. 3069, *codified at* 25 U.S.C. §§ 1901-1963, the Higher Education Tribal Grant Authorization Act, Pub. L. No. 102-325, pt. B, 106 Stat. 798 (1992), *codified at* 25 U.S.C. §§ 3301-3307, the Indian Alcohol and Substance Abuse Prevention and Treatment Act of 1986, Pub. L. No. 99-570, tit. IV, subtit. C, 100 Stat. 3207, *codified as amended at* 25 U.S.C. §§ 2401-2478, and the Indian Child Protection and Family Violence Prevention Act, Pub. L. No. 101-630, tit. IV, 104 Stat. 4544 (1990), *codified at*, 25 U.S.C. §§ 3201-3211. Together with the annual Interior Appropriations Acts, these statutes provide a network of statutes that are money-mandating for purposes of the claim by a federally recognized tribe that it was wrongfully deprived of TPA funds. This is so because this network of statutes can fairly be interpreted to provide some funds for all federally recognized tribes, and the failure of the government to abide by that purpose can fairly be interpreted to give rise to a claim for money damages.

b. Housing under the 1937 Housing Act. Since 1961, the United States has provided federal financial assistance to Indian tribes to construct, operate and maintain

housing for their members pursuant to the Housing Act of 1937, ch. 896, 50 Stat. 888, and the amendments to that Act – Housing and Community Development Act of 1974, Pub. L. No. 93-383, §§ 102(1)(a), 103, 201, 210, 88 Stat. 633; Housing and Community Development Act of 1977, Pub. L. No. 95-128, §§ 102(a)(16),103(a), 901, 91 Stat. 1111; Indian Housing Act of 1988, Pub. L. No. 100-358, 102 Stat. 676 – (hereinafter "1937 Housing Act"). Tribes were eligible to receive financial assistance under the 1937 Housing Act if they were federally recognized, had authority to exercise governmental powers, sought such financial assistance by adopting an ordinance to establish a Housing Authority that would implement the programs authorized by the Act, and had or were able to establish the administrative capability to carry out the housing project. *See* S. Comm. On Interior and Insular Affairs, 94th Cong., *Indian Housing Effort in United States with Selected Appendixes,* 213, 237 (Comm. Print 1975) (reprinting eligibility criteria); *see also* 24 C.F.R. §§ 805.109, 805.205 (1976); 24 C.F.R. § 905.126 (1991).

c. Housing Improvement Program. In conjunction with the financial assistance provided to Indian tribes and their members under the 1937 Housing Act, the United States provided additional financial assistance for housing for federally recognized Indian tribes and their members through the Housing Improvement Program (HIP) operated by the Bureau of Indian Affairs. Funding for the HIP program was provided by Congress in annual Interior Department Appropriations Acts described in paragraph 30.o below and administered pursuant to BIA regulations, *see, e.g.* 25 C.F.R. pt. 261 (1976); 25 C.F.R. pt. 256 (1983); 25