C.F.R. pt. 256 (1995). Financial assistance under HIP was provided to Indians who were members or descendants of members of federally recognized tribes in need of housing that could not be met through other sources. 25 C.F.R. §§ 261.2(e), (f) (1976); 25 C.F.R. §§ 256.2(e), (f), 256.5 (1983); 25 C.F.R. §§ 256.2, 256.6 (1995)

d. Health Care. Throughout the period at issue in this suit, the United States provided hospital, medical, dental, mental health, and preventative care to Indians who were enrolled members of federally recognized tribes. Such care was provided either directly by the United States through the Indian Health Service (IHS), or, to the extent an IHS facility was not available for the service needed, indirectly by third party health care providers whose services were paid by federal funds under a program known as the contract health care (or contract medical care) program. Since 1976, these services have been provided in large part pursuant to the Indian Health Care Improvement Act (IHCIA), Pub. L. No. 94-437, tit. II, § 201, 90 Stat. 1400 (1976), and the amendments to that Act – Indian Health Care Amendments of 1980, Pub. L. No. 96-537, 94 Stat. 3173; Indian Health Care Amendments of 1988, Pub. L. No. 100-713, 102 Stat. 4784; Indian Health Amendments of 1992, Pub. L. No. 102-573, 108 Stat. 4526, *codified as amended at, inter alia,* 25 U.S.C. § 1621– and funded through the annual appropriations covering both direct and contract health care services for Indians. *See* Interior Department Appropriations Acts as set out in paragraph 30.o. Under the Indian Health Care Improvement Act and its amendments, Indians who are enrolled members of federally recognized tribes have been eligible for and received direct

and contract health care services (IHCIA, tit. I, §§ 4(c), (d), codified at 25 U.S.C. §§ 1603(c), (d)), while federally recognized Indian tribes have been entitled to contract with IHS to operate health care facilities and provide health care services. 25 U.S.C. §§ 1621(d), 1680a.

e. Supplemental Nutrition Program for Women Infants and Children (WIC). Since 1973, federally recognized Indian tribes have been entitled to receive federal funds to administer a supplemental food programs (known as the "WIC" program) to aid pregnant and post-partum women, infants and children. National School Lunch and Child Nutrition Act Amendments of 1973, Pub. L. No. 93-150, § 6(a), 87 Stat. 563, 729, amending the Child Nutrition Act of 1966, Pub. L. No. 89-642, § 17, 86 Stat. 729, *codified as amended at* 42 U.S.C. §§ 1786, 1786(b)(13), 1786(c)(2)(A). Funding for the WIC program has been allocated among the States, state agencies, and Indian tribes pursuant to a formula, 25 U.S.C. § 1786(h), under which all federally recognized tribes seeking to participate in the program have been able to do so.

f. Federal Revenue-Sharing. From 1972 until September 30, 1983, federally-recognized Indians tribes received federal funds under the State and Local Fiscal Assistance Act of 1972, Pub. L. No. 92-512, 86 Stat. 919, *as amended and extended* by the State and Local Assistance Amendments of 1976, Pub. L. No. 94-488, 90 Stat. 2341, and State and Local Fiscal Assistance Act Amendments of 1980, Pub. L. No. 96-604, 94 Stat. 3516, *formerly codified at* 31 U.S.C.§§ 1221 *et seq.* By this act, the United States distributed federal funds to States, local governments, and federally recognized Indian tribes on a

formula basis. Pub. L. No. 92-512 §§ 107, 108(b)(4), 86 Stat. at 922. The funds were made available to all such governments for purposes of public safety (law enforcement and fire protection), environmental protection, public transportation, health, social services for the poor or aged, financial administration, and ordinary and necessary capital expenditures authorized by law. Pub. L. No. 92-512 at § 103.

g. Community Services Block Grants (CSBG). Beginning in 1981, federally-recognized Indian tribes were entitled to request and receive federal funds to address and combat problems of poverty. Funding was authorized under Title VI, Subtitle B of the Omnibus Budget Reconciliation Act (OBRA) of 1981, Pub. L. No. 97-35, § 671, § 674(c), 95 Stat. 357, *codified at* 42 U.S.C. §§ 9903(d), 9911, which was an amendment of the Economic Opportunity Act of 1964, Pub. L. No. 88-452, 78 Stat. 508. Under the 1981 statute and the regulations implementing it, the Secretary of the Department of Health and Human Services "determined that members of Indian tribes and tribal organizations would be better served by direct Federal funding than by funding through the States in every instance that the Indian tribe or tribal organization requests direct funding," 46 Fed. Reg. 48,582, 48,586. (Oct. 1, 1981), and accordingly, that CSBG funding would be provided to an Indian tribe upon the tribe's request. *Id. see also* 45 C.F.R. § 96.41 (1984). The amount of funds made available to such tribes, like the funding made available to states under this program, was based on a formula under which all participating tribes like all participating states, were funded. OBRA of 1981 at § 674(c)(2), *codified at* 42 U.S.C. § 9911(b).

h. Preventive Health and Health Services Block Grants. Beginning in 1981, federally recognized Indian tribes were entitled to request and receive federal funds to establish health care programs and provide preventive health care services. Funding was authorized under Title IX, Subtitle A of the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35 § 901, 95 Stat. 535, *codified at* 42 U.S.C. §§ 300w, 300w-1(d). Under the 1981 statute and the regulations implementing it, the Secretary of the Department of Health and Human Services "determined that members of Indian tribes and tribal organizations would be better served by direct Federal funding than by funding through the States in every instance that the Indian tribe or tribal organization requests direct funding," 46 Fed. Reg. 48,582, 48,586 (Oct. 1, 1981), and accordingly, that Preventive Health and Health Service Block Grant funding would be provided to an Indian tribe upon the tribe's request. *Id.*, *see also* 45 C.F.R. § 96.41 (1984). The amount of funds made available to such tribes, like the funding made available to states under this program, was based on a formula under which all participating tribes, like all participating states, were funded. OBRA of 1981, § 901, *codified at* 42 U.S.C. § 300w-1(d)(3).

i. Alcohol and Drug Abuse and Mental Health Services Block Grants. Beginning in 1981, federally recognized Indian tribes were entitled to request and receive federal funds to address and combat substance abuse and mental health problems in a tribe's community. Funding was authorized under Title IX, Subtitle A of the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35 § 901, 95 Stat. 543, *codified as amended at* 42 U.S.C. §§

300x, 300x-33. Under the 1981 statute and the regulations implementing it, the Secretary of the Department of Health and Human Services "determined that members of Indian tribes and tribal organizations would be better served by direct Federal funding than by funding through the States in every instance that the Indian tribe or tribal organization requests direct funding," 46 Fed. Reg. 48,582, 48,586 (Oct. 1, 1981), and accordingly, that Alcohol and Drug Abuse and Mental Health Services Block Grant funding would be provided to an Indian tribe upon the tribe's request. *Id.; see also* 45 C.F.R. § 96.41 (1984). The amount of funds made available to such tribes, like the funding made available to the states under this program, was based on a formula under which all participating tribes like all participating states, were funded. OBRA of 1981 at § 901, *codified as amended at* 42 U.S.C. § 300x-33(d)(1) (now known as the Mental Health and Substance Abuse Block Grants).

j. Primary Care Health Block Grants. From 1981 until 1986, federally-recognized Indian tribes were entitled to request and receive federal funds to provide primary health care services. Funding was authorized under Title IX, Subtitle A of the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 901, 95 Stat. 552 *formerly codified* at 42 U.S.C. §§ 300y, 300y-4, until its repeal by the Health Services Amendment Act of 1986, Pub. L. No. 99-280, § 5, 100 Stat. 400. Under the 1981 statute and the regulations implementing it, the Secretary of the Department of Health and Human Services "determined that members of Indian tribes and tribal organizations would be better served by direct Federal funding than by funding through the States in every instance that the Indian tribe or

tribal organization requests direct funding," 46 Fed. Reg. 48,582, 48,586 (Oct. 1, 1981), and accordingly, that Primary Care Block Grant funding would be provided to an Indian tribe upon the tribe's request. *Id.; see also* 45 C.F.R. § 96.41 (1984). The amount of funds made available to such tribes, like the funding made available to states under this program, was based on a formula under which all participating tribes like all participating states, were funded. OBRA of 1981 at § 901, *formerly codified at* 42 U.S.C.§ 300y-4.

k. <u>The Low Income Home Energy Assistance Program (LIHEAP)</u>. Beginning in 1980, federally recognized Indian tribes were entitled to request and receive federal funds to provide low income home energy assistance to their members. Funding was authorized initially under the Home Energy Assistance Act of 1980, Pub. L. No. 96-223, tit. III, 94 Stat. 229, *formerly codified at* 42 U.S.C. §§ 8601-8612, and thereafter under Title XXVI of the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, §§ 2601-2611, 95 Stat. 893, *codified as amended,* 42 U.S.C. §§ 8621-8630. Under the statute and the regulations implementing it, the Secretary of the Department of Health and Human Services "determined that members of Indian tribes and tribal organizations would be better served by direct federal funding than by funding through the States in every instance that the Indian tribe or tribal organization requests direct funding," 46 Fed. Reg. 48,582, 48,586 (Oct. 1, 1981), and accordingly, that funding for the LIHEAP program would be provided to an Indian tribe upon the tribe's request it be authorized to administer the program. *Id.*; *see also* 45 C.F.R. § 96.41 (1983). The amount of funds made available to such tribes, like the funding made

available to the states under this program, was based on a formula based on the number of Indian households to be served by the program. OBRA of 1981 at § 2604(d)(2); 42 U.S.C. § 8623(d)(2).

l. Commodity Food Program. Throughout the period covered by this suit, federally recognized Indian tribes were entitled to receive from the federal government financial assistance and surplus federal foods and commodities for distribution to low income persons in need. The program, known as the Commodity Food Program, was authorized by the Agricultural Act of 1949, Pub. L. No. 81-439, tit. IV, ch. 792, § 416, 63 Stat. 1061. Under the Act and the regulations implementing, federally recognized Indian tribes were entitled to administer the program within the tribe's reservation or other area over which the tribe exercised jurisdiction upon the submission of an application to do so and showing that it is potentially capable of administering the program. *See* 7 C.F.R. §§ 253.2, 253.3, 253.4 (1984).

m. Food Stamp program. Beginning in 1977, federally recognized Indian tribes were entitled to receive from the federal government financial assistance to administer the Food Stamp program for their eligible low income members. Tribal administration of the Food Stamp program was authorized by title XIII of the Food and Agriculture Act of 1977, Pub. L. No. 95-113, 91 Stat. 913, *codified as amended at* 7 U.S.C. §§ 2011-2036. Under the Act and the regulations implementing it, federally recognized Indian tribes were entitled to administer the program within the tribe's reservation or other area over which the tribe

exercised jurisdiction upon the submission of an application to do so and showing that it is potentially capable of administering the program. *See* Pub. L. No. 95-113 at § 3(p); 7 C.F.R. pt. 281 (1984).

n. <u>Job Training – CETA and JTPA</u>. Since December 1973, federally- recognized Indian tribes have been entitled to federal funding to provide job training and employment opportunities to their members. The program was initially established by the Comprehensive Employment and Training Act of 1973 ("CETA"), Pub. L. No. 93-203, § 204 (2), 87 Stat. 839, *as amended by* the Youth Employment and Demonstration Act of 1977, Pub. L. No. 95-93, 91 Stat. 627, the Comprehensive Employment and Training Act Amendments of 1978, Pub. L. No. 95-524, §§ 201, 301, 302, 92 Stat. 1909, and then replaced in 1982 by the Job Training Partnership Act, Pub. L. No. 97-300, 96 Stat. 1322 ("JTPA"). In both CETA and JTPA, Congress sought to address the drastic underemployment and economic disadvantages that exist among Native Americans and established programs to assist tribes to do this. As Congress stated in CETA, and reaffirmed in the JTPA:

> The Congress finds that (1) serious unemployment and economic disadvantage exist among members of the Indian and Alaskan Native communities; (2) there is a compelling need for the establishment of comprehensive manpower training and employment programs for members of those communities; (3) such programs are essential to the reduction of economic disadvantage among individual members of those communities and to the advancement of economic and social development in these communities consistent with their goals and lifestyles.
>
> The Congress therefore declares that, because of the special relationship between the Federal Government and most of those to be served by the provisions of this section, . . . such programs shall be available to federally

> recognized Indian tribes, bands, and individuals and to other groups and individuals of Native American descent . . . .

CETA, Pub. L. No. 93-303, §§ 302(a) - (b); *accord* JTPA, Pub. L. No. 97-300, § 401(b). Under both acts, federal funding was provided to federally recognized tribes which had a substantial level of unemployment (measured by an unemployment rate equal to or greater then 6.5% during any three month period) and the ability to administer the various programs offered, CETA, Pub. L. No. 93-303, § 204(a)(2), 302; JTPA, Pub. L. No. 97-300, § 401, with the Secretary providing technical assistance to tribes seeking to administer the program. *See* CETA, Pub. L. No. 93-303, § 207(c); JTPA, Pub. L. No. 97-300, § 401(h)(2)(i).

o. From 1969 to November 1996, Congress enacted numerous money mandating federal statutes appropriating funds for the Department of the Interior and related agencies, and appropriating funds to all other federal departments and agencies, to fund programs and services for the benefit of Indians and all Indian tribes, including: Dep't of the Interior and Related Agencies Appropriations Act for FY 1969, Pub. L. No. 90-425, 82 Stat. 425, 427 (1968); Dep't of the Interior and Related Agencies Appropriations Act for FY 1970, Pub. L. No. 91-98, 83 Stat. 147, 148 (1969); Dep't of the Interior and Related Agencies Appropriations Act for FY 1971, Pub. L. No. 91-361, 84 Stat. 669, 670 (1970); Dep't of the Interior and Related Agencies Appropriations Act for FY 1972, Pub. L. No. 92-76, 85 Stat. 229, 230 (1971); Dep't of the Interior and Related Agencies Appropriations Act for FY 1973, Pub. L. No. 92-369, 86 Stat. 508 (1972); Dep't of the Interior and Related Agencies Appropriations Act for FY 1974, Pub. L. No. 93-120, 87 Stat. 429 (1973); Dep't of the

Interior and Related Agencies Appropriations Act for FY 1975, Pub. L. No. 93-404, 88 Stat. 803 (1974); Dep't of the Interior and Related Agencies Appropriations Act for FY 1976, Pub. L. No. 94-165, 89 Stat. 977 (1975); Dep't of the Interior and Related Agencies Appropriations Act for FY 1977, Pub. L. No. 94-373, 90 Stat. 1043 (1976); Dep't of the Interior and Related Agencies Appropriations Act for FY 1978, Pub. L. No. 95-74, 91 Stat. 285 (1977); Dep't of the Interior and Related Agencies Appropriations Act for FY 1979, Pub. L. No. 95-465, 92 Stat. 1279 (1978); Dep't of the Interior and Related Agencies Appropriations Act for FY 1980, Pub. L. No. 96-126, 93 Stat. 954 (1979); Dep't of the Interior and Related Agencies Appropriations Act for FY 1981, Pub. L. No. 96-514, 94 Stat. 2957 (1980); Dep't of the Interior and Related Agencies Appropriations Act for FY 1982, Pub. L. No. 97-100, 95 Stat. 1391 (1981); Dep't of the Interior and Related Agencies Appropriations Act for FY 1983, Pub. L. No. 97-394, 96 Stat. 1966 (1982); Dep't of the Interior and Related Agencies Appropriations Act for FY 1984, Pub. L. No. 98-146, 97 Stat. 919 (1983); Dep't of the Interior and Related Agencies Appropriations Act for FY 1985, as part of the Continuing Appropriations Bill for FY 1985, Pub. L. No. 98-473, 98 Stat. 1837 (1984); Dep't of the Interior and Related Agencies Appropriations Act for FY 1986, as part of the Continuing Appropriations Bill for FY 1986, Pub. L. No. 99-190, 99 Stat. 1185 (1985); Dep't of the Interior and Related Agencies Appropriations Act for FY 1987, as part of the Continuing Appropriations Bill for FY 1987, Pub. L. No. 99-500, 100 Stat. 1783 (1986); Dep't of the Interior and Related Agencies Appropriations Act for FY 1988, as part

of the Continuing Appropriations Bill for FY 1988, Pub. L. No. 100-202, 101 Stat. 1329 (1987); Dep't of the Interior and Related Agencies Appropriations Act for FY 1989, Pub. L. No. 100-446, 102 Stat. 1774 (1988); Dep't of the Interior and Related Agencies Appropriations Act for FY 1990, Pub. L. No. 101-121, 103 Stat. 701 (1989); Dep't of the Interior and Related Agencies Appropriations Act for FY 1991, Pub. L. No. 101-512, 104 Stat. 1915 (1990); Dep't of the Interior and Related Agencies Appropriations Act for FY 1992, Pub. L. No. 102-154, 105 Stat. 990 (1991); Dep't of the Interior and Related Agencies Appropriations Act for FY 1993, Pub. L. No. 102-381, 106 Stat. 1374 (1992); Dep't of the Interior and Related Agencies Appropriations Act for FY 1994, Pub. L. No. 103-138, 107 Stat. 1379 (1993); Dep't of the Interior and Related Agencies Appropriations Act for FY 1995, Pub. L. No. 103-332, 108 Stat. 2499 (1994); Dep't of the Interior and Related Agencies Appropriations Act for FY 1996, Pub. L. No. 104-134, 110 Stat. 1321; Dep't of the Interior and Related Agencies Appropriations Act for FY 1997, as part of the Omnibus Consolidated Appropriations Act for FY 1997, Pub. L. No. 104-208.

**PLAINTIFF'S FIRST CLAIM FOR RELIEF**
Violation of Federal Statutes that Mandate Funding to All Eligible
Federally recognized Indian Tribes and Their Members

31. Plaintiff re-alleges and incorporates paragraphs 1 through 30 by reference.

32. Pursuant to its trust responsibility, Congress has enacted a broad range of programs, services and benefits for the benefit of all Indian tribes and their members, including those described in paragraph 30. With respect to each such program, service or

benefit, the underlying legal framework – comprised of authorizing statutes, appropriations acts and agency regulations – establishes eligibility criteria for participation and inclusion in the program. In some instances – such as with the Tribal Priority Allocation funding provided by the Bureau of Indian Affairs – the only criterion for participation is federal recognition. For such programs, services or benefits, all federally recognized tribes benefit each year. In other instances – such as for example, the housing programs under the Housing Act of 1937, and the Preventive Health and Health Services Block Grant under the Omnibus Budget Reconciliation Act of 1981 – all federally recognized tribes are eligible, provided the tribe agrees to satisfy certain administrative criteria. With respect to each of the programs, services and benefits described in paragraph 30, the Samish Indian Nation and its members were eligible at all times relevant to this action.

33. For each of the programs, services and benefits set forth in paragraph 30, the underlying statutes are money-mandating because in each instance it provides clear standards for paying money to recipients, compels payment upon the satisfaction of pre-set conditions, and the amounts that each recipient will receive can be readily determined. In enacting the statutes establishing and funding the programs, services and benefits as set forth in paragraph 30, Congress provided that all federally recognized tribes (and their members) who are eligible are to receive a share of the funds provided by Congress. While Congress in some instances provides funding to federal agencies and authorizes the agency to use that funding to benefit some, but not all, eligible recipients (as in programs where funding is awarded on

a competitive basis), that is not the case with respect to the programs, services and benefits in paragraph 30. As to those programs, services or benefits, Congress provided funding for the purpose of benefitting all eligible tribes and their members.

34. During the period 1969 to 1996, the Samish Indian Nation received no programs, services or benefits from the federal government under any federal statute or program enacted by Congress for the benefit of all tribes and their members. The wrongful actions of the United States in refusing to treat the Samish Indian Nation as a federally recognized tribe prevented the Tribe from receiving the programs, services and benefits that would otherwise have been available to it under acts of Congress.

35. Under treaties, statutes and a course of dealings, the United States has assumed a trust responsibility towards Indian tribes. Among other things, the trust responsibility means that where Congress enacts statutes that provide programs and services for the benefit of tribes and tribal members, those statutes shall be construed to require the relevant federal agency to allocate the funds Congress provides in a reasonable, rational manner. The complete exclusion of the Samish Indian Nation from the programs, services and benefits available to tribes and tribal members under these statutes was unreasonable, arbitrary and capricious, not supported by law, and in violation of the federal trust responsibility to the Tribe.

36. The wrongful actions of the United States in refusing to treat the Samish Indian Nation as a federally recognized tribe prevented the Tribe and its members from

receiving programs, services and benefits available for the benefit of all tribes and Indians under federal statutes. This violation of its statutory rights damaged the Samish Indian Nation in an amount to be determined at trial

## PLAINTIFF'S SECOND CLAIM FOR RELIEF

Failure to Treat the Samish Indian Nation as a Federally Recognized Indian Tribe with Respect to Federal Funding

37. Plaintiff re-alleges and incorporates paragraphs 1 through 30 by reference.

38. Only Congress has the authority to terminate a federally recognized Tribe. Termination, in the context of federal-tribal relations, means the discontinuation of 1) the federal trust responsibility, and 2) the federal funding that is provided by virtue of the Tribe's status as a federally recognized tribe.

39. Absent express Congressional authorization, federal agencies have no authority to terminate a federally recognized tribe. Since withdrawal of all federal funding for a tribe is tantamount to termination, federal agencies have no authority to withdraw or deny all federal funding to a federally recognized tribe.

40. Congress never authorized the termination of the Samish Indian Nation, and never authorized the withdrawal or denial of all federal funding for the Samish Indian Nation and its members. As a result, the federal government's failure to provide any federal funds to the Samish Indian Nation from 1969 to 1996 was, in effect, an unlawful effort to terminate the Tribe.

41. All of the federal statutes providing federal funding for programs, services and benefits for federally recognized tribes and their members, including those statutes cited in paragraph 30, together comprise a network of statutes defining a fundamental aspect of the federal government's trust responsibility to tribes.

42. Whatever the scope of its authority with respect to particular statutes, the federal government can not simply stop treating one tribe as federally recognized by implementing the entire network of federal statutes that provides federal funding for tribes and tribal members in a manner that denies all such funding to that tribe. But that is precisely what the federal government did to the Samish Indian Nation from 1969 to 1996.

43. The network of statutes described in paragraph 30 is money-mandating for purposes of a claim that the federal government treated a tribe as through it was not federally recognized, where such treatment has been established to be wrongful. This is so because Congress, in enacting this network of statutes, intended the statutes to provide programs, services and benefits to all federally recognized tribes, and the refusal of the federal government to comply with that core purpose – by refusing to provide any funding to a particular tribe – can fairly be interpreted as a violation of the federal government's trust responsibility to that federally recognized tribe that gives rise to a claim for money damages.

44. The wrongful actions of the United States in failing to provide the Samish Indian Nation with any funding under the network of statutes set forth in paragraph 30 from

1969 to 1996 harmed the Samish Indian Nation and its members, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

1. That the Court enter a judgment for damages against the United States in an amount to be determined.

2. That the Court award the reasonable expenses of litigation, including attorneys fees, costs and disbursements.

3. For such other relief as is appropriate.

Dated: January 27, 2006

Respectfully submitted,

/s/ Craig J. Dorsay
Craig J. Dorsay, Esq.
Attorney at Law
2121 S.W. Broadway, Suite 100
Portland, Oregon 97201
Telephone: (503) 790-9060
Facsimile: (503) 242-9001
cdorsay@involved.com

*Counsel of Record for Plaintiff*
Samish Indian Nation

Of Counsel:
William R. Perry, Esq.
Anne D. Noto, Esq.
Sonosky, Chambers, Sachse, Endreson & Perry LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
Telephone: (202) 682-0240
Facsimile: (202) 682-0249
wperry@sonosky.com
anoto@sonosky.com