**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SAMISH INDIAN NATION, a federally recognized tribe,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA<br>Defendant. | Case No. 02-1383L<br>(Chief Judge Edward J. Damich)<br><br>Declaration of Debbie L. Clark |

I, Debbie L. Clark, do hereby state as follows:

1. I am employed by the Office of the Assistant Secretary - Indian Affairs ("AS-IA Office") within the United States Department of the Interior ("Interior"), which has responsibility for matters arising out of Indian relations with the United States. I hold the position of Deputy Assistant Secretary - Indian Affairs (Management). My primary responsibilities are formulation and execution of the budget for the Bureau of Indian Affairs ("BIA"), the Office of Indian Education Programs ("OIEP"), and the AS-IA Office, including the distribution of budget funds to BIA, OIEP, and AS-IA Office program officials. I oversee the calculation and distribution of Tribal Priority Allocation ("TPA") funds to the BIA Central and Regional Offices, OIEP, and Office of Self-Governance for ultimate distribution to Indian Tribes and Tribal entities or expenditure on their behalf for direct service Indian Tribes. I am familiar with the funding for the Operation of Indian Programs, Construction, Miscellaneous Claims and Settlements, and Guaranteed Loans.

2. Annually, Interior receives guidance from the Office of Management and Budget

("OMB") that identifies the Administration's priorities that are to be considered during the budget formulation process. Interior uses OMB's guidance to develop agency specific guidance that identifies and promotes the Administration's, as well as the agency's, strategic goals and objectives. The different Bureaus within Interior, such as the BIA, use this guidance in the formulation of their budget requests to the Secretary of the Interior.

3. The BIA uses TPA as a budgetary device or tool to categorize and describe how it plans to allocate certain funds to Indian Tribes, which it requests through the President's or Administration's budget and receives in a congressional lump sum appropriations. This internal budgetary tool is an agency creation, there is no statutory or regulatory authority for TPA.

4. The BIA must allocate the congressionally appropriated amount among the tribes. Congress does not specifically say how much each tribe is to receive. Tribal "base budgets" have, over time, been established for distributing recurring TPA funding. Non-recurring funding is awarded on a competitive, needs, or project basis. Funding distribution methodologies have been established for non-recurring programs.

5. The TPA funding category was developed to provide Indian Tribes greater flexibility in the use of non-earmarked funds. This greater flexibility gives each Indian Tribe a more direct way to individually allocate funds to requirements specific to their tribal situation and needs. It also provides continuity and greater long-term stability in the operation of tribal programs. Essentially, TPA identifies recurring funding to be provided to BIA

offices or Indian Tribes to run many of the programs that benefit individual Indians and Indian Tribes. It reflects the choices that Indian Tribes have made for the use of these funds. Using this budgetary device, Indian Tribes have the authority to reallocate funds to and from TPA programs.

6. Congress has not directed specific TPA amounts to any tribe. However in other non-TPA funding categories, Congress has "earmarked" funds to specific tribes for specific purposes. The TPA budgetary tool resulted from the recommendations of a Joint Tribal/BIA /DOI Advisory Task Force on Reorganization of the BIA. The TPA process was preceded by a Band Analysis process which allowed Tribes to group together individual programs.

7. The BIA TPA provides program funds for the following categories: a) Tribal Government; b) Human Services; c) Education; d) Public Safety and Justice; e) Community Development; f) Resources Management; g) Trust Services; and h) General Administration. Funds can be directly paid out to an Indian Tribe only if it performs one or more of those programs through a contract, Indian Self-Determination and Education Assistance Act ("ISDA") funding compacts (93-638), or grant (100-297 Education) agreement.

8. In formulating its budget, the BIA affords all Indian Tribes the opportunity to discuss and provide their recommendations for funding priorities, including the TPA portion of the BIA budget. Occasionally, individual Tribal base budget amounts have been identified

and included within the BIA budget request to Congress. TPA funding is included in Tribal base budgets. When Congress appropriates the BIA budget, the Tribal base budgets are adjusted accordingly. Congressional across the board cuts or rescissions are applied to Tribal base funding.

9. In the budget formulation process, the BIA submits its budget to Interior, which reviews the budget and can make changes. The BIA budget then goes to OMB as part of Interior's overall budget request. OMB reviews Interior's budget and can make changes. Interior's budget then becomes part of the President's budget, which is sent to Congress. Congress appropriates money to the BIA based in part on the aggregation of all base budget amounts included in the BIA budget requests to Congress. Once appropriated, the base funding is distributed to the Indian Tribes. The Indian Tribes have the authority to reallocate the TPA funding to and from TPA programs.

10. Once appropriated by Congress, the BIA allocates the money to various programs based on the TPA funding distribution methodology for base funding, any approved project funding requests and the Indian Tribes' identified tribal priorities. The Snyder Act and ISDA are the authorities for transferring the funds for the programs the Indian Tribes want to operate for their members, or in some cases, all eligible members of Indian Tribes within an established service area.

11. All federally recognized Indian Tribes are eligible to benefit from the appropriation of funds either by direct services provided by the BIA's staff or through negotiated

agreements (such as an ISDA contract or compact) for all or some programs. Once an agreement is completed, the Tribe may drawdown as cash from the United States Treasury, as approved by the BIA. Subject to appropriations, recurring funds (including those for TPA) are included in a Tribe's base. Section 106(b) of ISDA identifies the criteria that must be met to reduce recurring funding included in a Tribe's ISDA contract or compact.

12. The Secretary of the Interior ("Secretary") has the authority to realign up to 10 percent of any Indian tribe's TPA allocation for higher priority needs. The Secretary also may reprogram up to 10 percent or $500,000.00, whichever is less, of any program activity for higher priority needs. To exceed this limit, the Secretary must obtain Congress's approval.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on the 22nd day of March, 2006

DEBBIE L. CLARK
Deputy Assistant Secretary - Indian Affairs (Management)
Office of the Assistant Secretary - Indian Affairs
Department of the Interior