# In the United States Court of Federal Claims

No. 02-1383 L

(Filed: July 21, 2006)

| | |
|---|---|
| **SAMISH INDIAN NATION**, a federally recognized Indian Tribe, | * |
| Plaintiff, | * |
| v. | * |
| **THE UNITED STATES,** | * |
| Defendant. | * |

*Craig Jones Dorsay*, Portland, OR, counsel of record for plaintiff, with whom were *William R. Perry* and *Anne D. Noto*, Washington, DC.

*Devon Lehman McCune,* Environmental & Natural Resources Division, United States Department of Justice, Washington, DC, counsel of record for defendant, with whom were *Sue Ellen Woolridge*, Assistant Attorney General, and *Jason Roberts*, United States Department of the Interior.

## OPINION AND ORDER

**DAMICH**, Chief Judge.

## I. Introduction

Presently before the Court is Plaintiff Samish Indian Nation's, [hereinafter "the Tribe" or "Samish"], request to conduct limited discovery prior to responding to Defendant's motion to dismiss.[1] Plaintiff first requested limited discovery in the Joint Status Report, filed on November 23, 2005. Plaintiff subsequently filed, on May 8, 2006, a report setting forth its position on why discovery should be permitted prior to responding to Defendant's Motion to Dismiss. Defendant

[1]Defendant filed its motion to dismiss on March 22, 2006. On March 23, 2006, the Court terminated the deadline for Plaintiff to respond to Defendant's motion pending the Court's decision on Plaintiff's request for discovery.

had indicated its opposition to Plaintiff's request in the November 23, 2005 Joint Status Report. As explained below, the Court will allow Plaintiff to conduct limited discovery in accordance with the discovery requests attached to its May 8, 2006 Report.

## II. Background

Plaintiff seeks damages for federal funds that it did not receive from the Government during the period of 1969 to 1996, to which it claims that it was entitled, pursuant to a wide array of federal statutes and treaties that provide programs, services, and benefits to federally-recognized Indian tribes and their members.[2] Prior to 1969, Plaintiff allegedly received federal services and benefits available to Indian tribes and was included in a 1966 unofficial list of tribes recognized by Defendant. This list was superseded by a 1969 unofficial list. Plaintiff did not appear on that 1969 list due to an arbitrary omission made by Defendant.[3] Plaintiff contends that it was improperly omitted from the 1969 unofficial tribe list and, therefore, that it should have continued to be treated as a federally recognized tribe even before its 1996 recognition. Federal recognition or acknowledgment is a precondition to an Indian tribe's right to claim benefits under federal statutes. 25 C.F.R. § 83.2. Because Plaintiff was wrongfully omitted from the list of federally-recognized tribes, it could not have received benefits under any statute.

Previously, this Court ruled that Plaintiff's claims for damages for the period of 1969 through 1996 were barred under the statute of limitations. *Samish Indian Nation v. United States*, 58 Fed. Cl. 114 (2003). However, on appeal, the Court of Appeals for the Federal Circuit reversed this portion of the Court's decision. *Samish Indian Nation v. United States*, 419 F.3d 1355, 1358 (Fed. Cir. 2005).[4]

In its Complaint and its Report, Plaintiff provides two theories of damages or claims for relief which the Court simplifies for the purpose of this opinion. First, Plaintiff claims that each of the statutes and treaties at issue individually mandates the payment of at least some money to every federally-recognized tribe. Every federally-recognized tribe benefitted from these statutes, Plaintiff alleges, because the agencies administering these statutes or regulations understood them as mandating the payment of money to all federally-recognized Indian tribes. It appears from a review of Plaintiff's Complaint that its first claim for relief is predicated upon the Federal

---

[2]*See* Pl.'s Second Am. Compl. ¶ 30(a)-(o).

[3]The United States District Court for the Western District of Washington concluded that the omission of the Samish from the unofficial 1969 list was arbitrary. *Greene v. Babbitt*, 943 F. Supp. 1278, 1288 n.13 (W.D. Wash. 1996).

[4]The Federal Circuit, however, affirmed this Court's additional decision that Plaintiff's claims arising under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450 *et. seq.,* and the Snyder Act, 25 U.S.C. §§ 2, 13, are not money-mandating and are not within the Court's Tucker Act or Indian Tucker Act jurisdiction. It also affirmed the Court's dismissal, without prejudice, of Plaintiff's claims to post-1996 benefits. *Samish*, 419 F.3d at 1358.

Circuit's standard for determining whether a statute or regulation is money-mandating, that is, whether "the statutory text leaves the government no discretion over payment of claimed funds," and whether statutes or regulations underlying discretionary funding schemes "(1) provide 'clear standards for paying' money to recipients; (2) . . . state the 'precise amounts' that must be paid; *or* (3) as interpreted, compel payment on satisfaction of certain conditions." *Samish*, 419 F.3d at 1364 (quoting *Perri v. United States*. 340 F.3d 1337, 1342-43 (Fed. Cir. 2003) (emphasis added).

Second, Plaintiff claims that all of these statutes and regulations together comprise a "network" of programs and benefits for federally-recognized tribes. Plaintiff argues that this "network," when viewed as a whole, is money-mandating. This second legal theory or claim follows the Federal Circuit's holding that a "fiduciary duty can also give rise to a claim for damages within the Tucker Act or Indian Tucker Act."[5] Plaintiff argues that this network of statutes and regulations establishes the Government's specific trust responsibility to Plaintiff in its fundamental aspects, thereby entitling Plaintiff to money damages for the Government's breach of its fiduciary responsibility. The Court, of course, does not opine here as to the viability of Plaintiff's theories.

## III. Plaintiff's Request for Limited Discovery

Plaintiff's request for limited discovery is divided into two prongs. First, Plaintiff is requesting limited discovery regarding a Bureau of Indian Affairs ("BIA") funding mechanism, titled, "Tribal Priority Allocations"("TPA"), which allocates among federally-recognized tribes funds from a group of programs designed for their benefit.[6] According to the Declaration of Debbie Clark, the Deputy Assistant Secretary – Indian Affairs (Management), the TPA

---

[5]*Id.* at 1367 (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473-74 (2003); *United States v. Mitchell*, 463 U.S. 206, 224-26 (1983) ("*Mitchell II*"). In *Mitchell II,* a network of timber management statutes created a specific trust relationship – as opposed to a bare trust – because those statutes required the Government to assume elaborate control over tribal forests. *Mitchell II*, 463 U.S. at 225-226.

[6]Authorizing statutes that support programs within TPA include the following: Johnson-O'Malley Act, ch. 147, 48 Stat. 596 (1934), *codified as amended at* 25 U.S.C. §§ 452-457; the Indian Child Welfare Act of 1978, Pub. L. No. 95-608, 92 Stat. 3069, *codified at* 25 U.S.C. §§ 1901-1963; the Higher Education Tribal Grant Authorization Act, Pub. L .No. 102-325, pt. B, 106 Stat. 798 (1992), *codified at* 25 U.S.C. §§ 3301-3307; the Indian Alcohol and Substance Abuse Prevention and Treatment Act of 1986, Pub. L. No. 99-570, tit. IV, subtit. C, 100 Stat. 3207 *codified as amended at* 25 U.S.C. §§ 2401-2478; and the Indian Child Protection and Family Violence Prevention Act, Pub. L. No. 101-630, tit. IV, 104 Stat. 4544 (1990), *codified at* 25 U.S.C. §§ 3201-3211. Plaintiff contends that these authorizing statutes, as well as the annual Interior Appropriation Acts, constitute a money-mandating "network" of statutes "for the purpose of the claim by a federally-recognized tribe that it was wrongfully deprived of TPA funds." Pl.'s Second Am. Comp. at ¶ 30(a)(iv).

mechanism "provides funds for the following categories: a) Tribal Government; b) Human Services; c) Education; d) Public Safety and Justice; e) Community Development; f) Resource Management; g) Trust Services; and h) General Administration." Def.'s Dec. at ¶ 7. Plaintiff contends that the various statutes that underlie TPA are money-mandating based upon the BIA's own construction of those statutes. Plaintiff asserts that all federally-recognized tribes receive some TPA funds each year, but since Plaintiff was not a federally-recognized tribe, it did not receive any funding through TPA. To that end, Plaintiff argues that discovery would show that "by the government's own construction, the statutory and regulatory framework under which the TPA is provided reflects congressional intent that such funding must be provided to all federally-recognized tribes. This, in turn, is the predicate for establishing that the statutes and regulations underlying TPA are money-mandating." Pl.'s Rep. at 14.

Second, Plaintiff is seeking discovery regarding other federal statutes and regulations that provide funds for federally-recognized tribes.[7] Plaintiff cites several illustrative examples of the kinds of statutes and regulations that it argues are money-mandating. First, it cites block grants that Congress made available to all federally-recognized tribes in 1981. Omnibus Budget Reconciliation Act of 1981 ("OBRA"), Pub. L. No. 97-35, §§ 67, 674(c), 901, 2601-2611, 95 Stat. 172.[8] Plaintiff argues that the regulations promulgated under OBRA by the Secretary of Health and Human Services state that funding under OBRA would automatically be provided to every federally-recognized tribe. *See* 46 Fed. Reg. 48, 582, 48, 686 (Oct. 1, 1981) (announcing final rule 45 C.F.R. § 96.41 (1981)) ("Accordingly, where provided by statute, the Secretary will, upon request of an eligible Indian tribe or tribal organization, reserve a portion of a State's allotment and, upon receipt of the complete application and related submission that meets statutory requirements, grant it directly to the tribe or organization."). Because Defendant asserts in its Motion to Dismiss that the tribes "were not eligible for funding," Def.'s Mot. at 45, Plaintiff maintains that it is entitled to seek discovery to determine whether Defendant's assertion is correct. Plaintiff's second illustrative example consists of funds provided for job training programs under the Comprehensive Employment and Training Act ("CETA") and the Job Training Partnership Act ("JTPA").[9] Plaintiff's third illustrative example is that it is entitled to

---

[7]A complete list of all these statutes and regulations that Plaintiff claims provides funds (and mandates the payment of money) to federally-recognized tribes is contained in Pl.'s Second Am. Compl. ¶ 30(b)-(o).

[8]*See* OBRA, at § 674(c)(2) (codified at 42 U.S.C. § 9911(b)) (Community Services Block Grant); *id.* § 901, (codified at 42 U.S.C. § 300w-1) (Preventative Health and Health Services Block Grant); *id.* § 901 (codified at 42 U.S.C. § 300x-33(d)(1)) (Alcohol and Drug Abuse and Mental Health Services Block Grant); *id.* § 901 (formerly codified at 42 U.S.C. § 300y-4) (Primary Care Block Grant); *id.* § 2406(d)(2) (codified at 42 U.S.C. § 8623(d)) (LIHEAP grant funding).

[9]*See* CETA, Pub. L. No. 93-203, § 204(2), 87 Stat. 839, as amended by the Youth Employment and Demonstration Act of 1977, Pub. L. No. 95-93, 91 Stat. 627; the Comprehensive Employment and Training Act Amendments of 1978, Pub. L. No. 95-524, §§

financial assistance provided to federally-recognized tribes pursuant to the Housing Act of 1937 and its amendments.[10] Plaintiff maintains that discovery would confirm that *all* federally-recognized tribes received assistance under these statutes and would refute Defendant's assertion that funding under these programs is discretionary. To that end, Plaintiff contends discovery would demonstrate that any eligibility requirements, *e.g.*, that the tribes possess or develop administrative capabilities to administer those programs, "were construed and implemented by the relevant agencies so that [such requirements were] not a barrier to receiving assistance." Pl.'s Rep. at 20.

## IV. Argument and Analysis

### A. Parties' Arguments

The legal basis for Plaintiff's request is twofold. First, Plaintiff argues that, in the Motion to Dismiss, Defendant challenges jurisdictional facts alleged in the Complaint and that, therefore, Plaintiff is entitled to conduct discovery to inquire into the jurisdictional facts asserted by Defendant. Plaintiff specifically cites Ms. Clark's Declaration, which describes how the BIA calculates and distributes TPA funds, as an example of jurisdictional facts that Defendant placed into dispute. Second, Plaintiff seeks discovery to prove that the relevant agencies interpreted the laws and regulations at issue in this case to be money-mandating – whether through TPA or some other mechanism. That interpretation, according to Plaintiff, indicates that Congress intended to undertake substantive obligations with respect such tribes, thereby mandating the payment of monies to federally-recognized tribes.[11]

With respect to all of the statutes subject to Plaintiff's request, the Court is ultimately required to conduct an assessment of whether the statutes can "fairly be interpreted as mandating compensation." *Mitchell II*, 463 U.S. at 217 (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 607; 372 F.2d 1002, 1009 (1967). "It is enough, then, that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred, ...' a fair inference will do." *White Mountain Apache*, 537 U.S. at 473 (quoting *Mitchell II*, 463 U.S. at 218). Plaintiff

---

201, 301, 302, 92 Stat. 1901. *See also* JTPA, Pub. L. No. 97-300, 96 Stat. 1322.

[10] *See* Housing Act of 1937, ch. 896, 50 Stat. 888, as amended by the Housing and Community Development Act of 1974, Pub. L. No. 93-383, §§ 102(1)(a), 201, 210, 88 Stat. 633; Housing and Community Development Act of 1977, Pub. L. No. 95-128, §§ 102(a)(16), 103(a), 901, 91 Stat. 111; Indian Housing Act of 1988, Pub. L. No. 100-358, 102 Stat. 676.

[11] In its Report, Plaintiff also argues that, by denying federal funds to which it was entitled had it been properly recognized by the federal government, it was deprived of equal protection of the laws and had its privileges and immunities with respect to other tribes diminished, in contravention of 25 U.S.C. §§ 476(f), (g). *See* Pl.'s Rep. at 8. For purposes of this opinion, however, the Court need not address this argument.

maintains that "[i]t is a 'fair inference' that Congress intended that when it provided funding to benefit all federally recognized tribes, the federal agencies not undermine that intent by totally excluding one tribe – as they did with Samish." Pl.'s Rep. at 7 (emphasis in original). Although its argument could have been more clearly made, it seems that Plaintiff is arguing that the Court might "fairly infer" that the identified statutes or regulations – either individually or in a "network"– establish that Congress imposed a specific fiduciary duty on the United States as a trustee, thereby mandating compensation through money damages if the Government failed in its responsibilities as a trustee.[12] The Court can, so the argument goes, make this "fair inference" by reviewing evidence that the responsible agencies, either through the TPA mechanism or some other means, understood that they were required by the statutes or regulations at issue to pay at least some money to federally-recognized tribes. Plaintiff argues that the Government breached its fiduciary responsibilities to the Tribe by wrongfully excluding the Tribe from a list of federally-recognized tribes from 1969 to 1996.

Plaintiff submitted to the Court proposed admissions and interrogatories/requests for documents that it seeks to serve upon Defendant, if the Court allows discovery. Pl.'s Rep. Apps. 2, 3.

Defendant indicated in the November 23, 2005 Joint Status Report its opposition to Plaintiff's request for discovery. It maintained that the issue of whether the statutes and regulations cited in Plaintiff's Complaint are money-mandating is a pure matter of law and does not require any factual findings. Defendant further stated that it desired an opportunity to file a motion to suspend discovery.

B. Analysis

Rule 26(b)(1) of the Court of Federal Claims ("RCFC") provides that, in general, "[p]arties may obtain discovery regarding any matter, not privileged, that is *relevant* to the claim or defense of any party" (emphasis added). The same rule also provides that "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* "Relevant" information is defined as discovery "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The Court finds that Plaintiff has provided good cause for allowing limited discovery, and that the discovery it seeks consists of "relevant" information.

The Court views the operation of the TPA funding program to be strongly "relevant" to Plaintiff's argument that the Government itself understood that all federally-recognized tribes were entitled to payments under the statutes and regulations at issue. There is little information on the record as to how the TPA mechanism determined the criteria by which eligibility for payments to tribes was determined and how the BIA calculated the amount paid to each eligible tribe. Conceivably, discovery might permit the Court to "fairly infer" that the relevant agencies

---

[12] *Samish,* 419 F.3d at 1368. In contrast, if the Government has a "bare" or "limited" trust relationship with a party on whose behalf it undertook no responsibility, no claim for money damages within the Tucker Act or Indian Tucker act lies. *Id.*

understood the statutes or regulations underlying TPA to be money-mandating.

Moreover, it is well established that when a motion to dismiss challenges a jurisdictional fact alleged in a complaint, a court may allow discovery in order to resolve the factual dispute. "[W]here issues arise as to jurisdiction or venue, discovery is [also] available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (citations omitted). This Court has opined that there are occasions when it is appropriate to conduct discovery when jurisdictional facts are in dispute.

> But there are exceptions to the usual Rule 12(b)(1) requirement that the allegations of the complaint be accepted as true. Such exceptions, referred to under the collective rubric of *factual attacks*, exist in cases where a jurisdictional determination on the pleadings alone would be unfair. Such cases might arise where the merits of a case are inextricably interwoven with the facts necessary to establish jurisdiction, or where the truth of the jurisdictional facts is disputed, or where only additional discovery can uncover necessary jurisdictional facts, or where the jurisdictional attack is based on matters outside the pleadings.

*E. Trans-Waste of Md., Inc. v. United States*, 27 Fed. Cl. 146, 148 n.1 (1992) (emphasis in original). *See also Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) ("If the district court concludes that the existing record is insufficient to support personal jurisdiction, [plaintiff] is entitled to jurisdictional discovery. Such discovery is appropriate where the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'") (citations omitted); *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) ("We have previously required that plaintiffs be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion."). At the very least, by placing Ms. Clark's declaration on the record in its Motion to Dismiss, Defendant has, in effect, opened the door for Plaintiff to make further factual inquiries into the BIA's interpretation and construction of the statutes underlying the TPA mechanism. More significantly, the declaration itself is strongly suggestive that the BIA may very well have considered that the statutes and regulations underlying TPA, in fact, mandate the payment of money to federally-recognized tribes. For instance, the declaration states "[t]he BIA must allocate the congressionally appropriated amount among the tribes. . . . Def. Dec. ¶ 4." The Declaration also states that "all federally-recognized tribes are eligible to benefit from the appropriation of funds." Id. at ¶ 11.

Plaintiff's argument on behalf of its request for discovery related to the non-TPA programs is not as strong as its argument in favor of its discovery request regarding the operation of the TPA mechanism. Nevertheless, the requested information remains "reasonably calculated to lead to the discovery of admissible evidence" and, therefore, "relevant" discoverable information, pursuant to RCFC 26. Funding under CETA, JTPA, the Housing Act of 1937, and OBRA block grants arguably relates to fundamental human needs of housing, health care, and

job training. As the Court understands Plaintiff's argument, it, first, seeks to show that the agencies administering these programs understood that they had specifically undertaken a responsibility to provide for such fundamental human needs to federally-recognized Indian tribes. Second, Plaintiff seeks to show that the Government understood the statutes and regulations to mean that all federally-recognized tribes were eligible for these benefits. These two showings would, according to Plaintiff, prove that a fiduciary relationship existed between Plaintiff and the Government, which was subsequently breached when Plaintiff was removed from the 1969 list. Whether this argument is ultimately sustainable is subject to debate, but given the history of Plaintiff's relationship with the Government, the Court is not prepared to hold that there are no facts that could support Plaintiff's money-mandating arguments. The Court finds that Plaintiff has adequately demonstrated that certain jurisdictional facts with respect to non-TPA programs are, in fact, disputed, *e.g.*, that all federally-recognized tribes received some funding under these statutes, and that the administering agencies, in fact, did not interpret any eligibility requirements as providing them discretionary authority. Because discovery could uncover facts necessary for Plaintiff to prove jurisdiction and because the discovery sought by Plaintiff is probative of its money-mandating arguments, the Court is of the opinion that the prudent course is to allow Plaintiff to conduct the limited discovery it seeks as set forth in its proposed discovery requests contained in Appendix 2 and 3 of Plaintiff's May 8, 2006 Report.

Defendant argues that discovery is unnecessary because the determination of whether any of these statutes and regulations mandate the payment of money can be resolved by the facial language of the statutes and regulations. However, Plaintiff correctly points out that this Court has, in the past, held that a regulation, though not money-mandating on its face, nevertheless, mandated the payment of money based upon agency interpretation. *Reidell v. United States*, 43 Fed. Cl. 770, 771-72 (1999). Specifically, *Reidell* held that certain claimants were entitled to retroactive payments of "prevailing wages" under the Davis-Bacon Act, despite the fact that neither the text of the Davis-Bacon Act nor the regulations implementing the Davis-Bacon Act clearly mandates the payment of money, because the Department of Labor issued a ruling interpreting its regulations as requiring such retroactive payments. *Id*. Unlike *Reidell*, the record does not currently show that Plaintiff has received a ruling from any relevant agency entitling it to receive payment under any statute or regulation. Nor does the record show that any relevant agency has taken any action that is functionally similar to that of the Department of Labor in *Reidell*. However, the Plaintiff believes that if it obtains the discovery it seeks, the Court could, as it did in *Reidell,* "fairly infer" that the relevant Government agencies interpreted the statutes or regulations, either individually or as network, as creating a fiduciary duty toward Indian tribes, thereby mandating monetary payments to them. While the record does not indicate whether the agencies interpreted the statutes and regulations in the manner in which Plaintiff asserts; nevertheless, given the unique set of circumstances that brought Plaintiff before the Court, particularly the finding in *Greene* that the omission of the Tribe from the 1969 unofficial list was arbitrary, Plaintiff should have the opportunity to make this argument once all the relevant jurisdictional facts are known. Therefore, limited discovery is warranted to establish the

requisite jurisdictional facts.[13]

Defendant also argues that Plaintiff's discovery requests are potentially burdensome to it. However, the Court has reviewed Plaintiff's discovery requests and does not find them so to be. Nevertheless, the Court will entertain good-faith arguments by motion that a particular discovery request is overly burdensome to Defendant if, upon careful review and inquiry, it finds that it is unable to comply with the discovery request.

## IV. Conclusion

The Court hereby allows limited discovery to take place in accordance with Plaintiff's proposed discovery requests in Appendix 2 and 3 of its May 8, 2006 Report. The Court hereby ORDERS the establishment of the following discovery schedule. Plaintiff shall serve its discovery requests upon Defendant no later than 30 days from the date of this order. Defendant shall respond to Plaintiff's discovery requests no later than 60 days from the date of this order. The parties shall file a joint status report no later than 90 days after the date of this order informing the court how they propose to proceed.

**IT IS SO ORDERED**.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

[13]Counsel for Plaintiff is reminded to make sure that, when citing either binding precedent or decisional history of this Court as support for a particular proposition, the case, in fact, supports the proposition in its entirety. Like a carpenter's board that was cut too short, a few cited cases have frustratingly stood for most, though not enough, of a stated proposition. It is not sufficient for a party to cite cases that, while broadly favorable to certain propositions, do not fully support them.