# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No. 02-1383L |
| | ) | (Chief Judge Edward J. Damich) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## Parties' Joint Status Report

Pursuant to this Court's Order of November 27, 2006, the parties respectfully submit this joint status report to advise the Court of their respective positions on the discovery disputes that remain and their recommendations on further proceedings.

### Plaintiff's Position

While the parties have not resolved their disputes regarding discovery, the Plaintiff has a proposal on how to move forward with proceedings in the case

Following the Court's opinion and order of July 21, 2006 authorizing Plaintiff to proceed with discovery, Plaintiff served its discovery request on Defendant on July 26, 2006. Plaintiff's discovery consisted of requests for admission, interrogatories and requests for production of

documents. The interrogatories and requests for production of documents applied only to the extent that Defendant denied a request for admission and called upon Defendant to provide information explaining the basis for the denial.

On October 19 and November 1, Defendant served its responses to those discovery requests. Defendant's responses consist of the interposition of numerous objections to every one of Plaintiff's requests.[1] A copy of Defendant's responses is Exhibit 1. Defendant's approach to Plaintiff's discovery is best illustrated by Defendant's decision to dispute or profess ignorance of the meaning of the most commonly-used words and phases contained in each discovery request. For example, Defendant refused to admit that the lists of Indian tribes it periodically publishes in the Federal Register identify the tribes that were federally-recognized at the time of publication, claiming confusion about the definition of the terms "tribe" and "Indian tribe" and asserting that other terms, such as "lists published" and "accurately identify" are so "vague and ambiguous" that Defendant could not respond. *See* Exhibit 1, Defendant's Combined Objections and Responses to Plaintiff's Discovery Requests at 10-11. Defendant made similar objections to all of the other discovery requests, claiming an inability to understand the meaning of words and phrases including "some amount," "federal funds," "federal assistance," and "allocation." *See e.g.*, *id.* at 11, 13, 14, 21, 36-37. Defendant made no effort to seek to respond to the requests for

---

[1]While Defendant did produce a box of records, only a portion of the documents produced were responsive to Plaintiff's discovery. Plaintiff believes that the Defendant has other records which are responsive to Plaintiff's discovery requests, and which can be accessed without undue burden. However, as described below, while Plaintiff proposed that the parties engage in informal discussions with government agency staff for purposes of identifying such additional records, Defendant declined to have such discussions.

admission in a manner that would result in an admission of some part of the request or a clarification of its understanding of the terms in a manner that would serve to narrow any factual issue.

Defendant's other objections are similar in approach. For example, Defendant objected to many discovery requests asserting that the information sought was not relevant – despite this Court' opinion and order of July 21, 2006 which specifically considered the discovery being requested and found it to be relevant to determining whether the United States through "the responsible agencies . . . understood that they were required by statutes or regulations at issue to pay at least some money to federally-recognized tribes." Opinion at 6. As this Court stated, focusing in particular on Tribal Priority Allocations (TPA) administered by the Bureau of Indian Affairs – discovery on these issues was "strongly 'relevant'" to Plaintiff's claims. *Id.*

By letter dated November 13, 2006, Plaintiff advised Defendant of its views on Defendant's objections. Exhibit 2. In that letter and by a telephone conference on November 15, Plaintiff proposed to Defendant that the parties undertake to try and resolve those discovery disputes informally. Specifically Plaintiff proposed that the parties focus on discovery relating to only two of the programs that serve Indian tribes – (1) Tribal Priority Allocations (TPA) administered by the Bureau of Indian Affairs and (2) funding provided through the Indian Health Service (IHS) – and defer discovery relating to other federal programs. Plaintiff also proposed that the Plaintiff's attorneys meet with the Government's attorneys and officials from the BIA and IHS familiar with these programs. This discussion was proposed by plaintiff for two

reasons. First, plaintiff wanted to clarify any questions or confusion defendant agencies might have about what information and documents would be responsive to plaintiff's discovery requests. Second, plaintiff wanted to explore whether federal employees or officials could stipulate to some basic facts relevant to plaintiff's claims and to the governments pending dismissal motion.

Although counsel for Defendant, on November 15 and in the Parties' Joint Report of November 20, expressed a willingness to explore this proposal and an intent to confer with her client, Plaintiff heard nothing substantive from Defendant for another month. On December 15, Plaintiff sent a letter to counsel for Defendant asking about the status of Defendant's consideration of the matter. Exhibit 3. On December 19, Defendant responded by letter stating that the Defendant no longer believed that meetings with agency officials "would be productive." Exhibit 4. Instead, Defendant announced its intent to determine unilaterally what additional information about TPA and IHS funding would be provided to Plaintiff *Id.* By letters dated December 20 and December 28 Defendant sent to Plaintiff some additional documents regarding TPA – all of which Plaintiff had already obtained through its own research efforts which Plaintiff initiated after receiving Defendant's numerous objections to Plaintiff's discovery. On Friday evening, January 5, 2007, Defendant delivered to Plaintiff: 1) supplemental responses to Plaintiff's discovery requests relating to TPA and IHS funding which largely reiterate Defendant's objections to those discovery requests; and 2) cd-roms which Defendant states contain additional documents regarding TPA, but of most of which Plaintiff has not been able to review because of the format in which the documents were recorded. Counsel are now working

to try and resolve that data problem.

Given Defendant's unwillingness to meet and confer about the discovery disputes, Plaintiff believes that further informal efforts to resolve those disputes will not be productive.

Plaintiff further believes that Defendant's objections to Plaintiff's discovery requests are without merit and contrary to both the text and intent of the rules governing discovery, and this Court's discovery Order. Without waiving Plaintiff's objections, and in the interests of seeking to advance resolution of some of the issues in this case, Plaintiff is willing to respond to the Government's motion to dismiss regarding TPA, relying on its own submissions and the limited information the government has grudgingly produced in discovery to date. Accordingly, Plaintiff proposes that the Court set a briefing schedule to address the Government's motion to dismiss as it relates only to TPA, and defer briefing on the other programs covered by the Government's motion. Plaintiff recommends that Plaintiff's response to the Defendant's motion to dismiss on claims relating to TPA be due within thirty days of the Court's order, with Defendant's reply due fourteen days thereafter.

Plaintiff also intends to file a motion to compel discovery, but would urge the Court to defer proceedings on that motion. A motion to compel would further serve to preserve Plaintiff's right to recover costs and fees under RUSCFC 37(c)(2) to the extent Defendant refused to admit facts which Plaintiff ultimately proves. Plaintiff proposes to file its motion to compel within sixty days from the date of the Court's order.

Defendant's Position

This Court authorized Plaintiff to take limited discovery. Defendant United States has at all times carried out its responsibility to respond to Plaintiff's discovery requests in good faith. Plaintiff now unjustifiably belittles the United States' efforts, and Plaintiff's proposal for going forward would only further delay ultimate resolution of this case.

This Court allowed Plaintiff to take limited discovery on certain programs that Plaintiff alleges are money-mandating. In response to Plaintiff's request for discovery, the United States answered Plaintiff's requests to the best of its ability and provided as much specific, relevant information as it could in light of the confusing nature of Plaintiff's requests. *See, e.g.,* Exh. 1 (providing over 48 pages of information as well as numerous documents) at 9 (noting that "Commodity Food Program" Plaintiffs referred to does not exist, but interpreting the request to pertain to "Food Distribution Program on Indian Reservations" and answering on that basis).

While the United States preserved its objections to certain aspects of Plaintiff's request, the United States also answered the discovery requests to the best of its ability, in spite of its objections. *See*, *e.g.*, Exh. 1 at 18–21 (providing Plaintiff with published lists despite objections that Plaintiff misconstrued lists), 26–27 (providing documents despite objections), 32–36 (same). Nowhere in the United States' responses did the government refuse to provide information because of its objections to the request, except where a greater effort would require significant time and resources, making the request unduly burdensome. *See, e.g.,* Exh. 1 at 14 (answering request for admission despite objections); 20 (providing lists despite objection); 26 (producing

Department of Health and Human Services' reports to Congress that describe how Department awarded funds to tribes, despite objections).

In some cases, Defendant simply did not have information sufficient to answer Plaintiff's request for admission. In these cases, Defendant explained that it made a reasonable inquiry and the information known or readily obtainable was not sufficient to allow Defendant to admit or deny the request. In response to further inquiry from Plaintiff, Defendant supplemented its response (in the case of IHS) to describe more thoroughly Defendant's inquiry, or located and provided additional documentation (in the case of the BIA).

After the United States provided its initial objections and responses, it twice supplemented its responses and has provided a number of additional documents to Plaintiff. After the United States' initial responses, Plaintiff narrowed its discovery requests to focus on funding provided by (1) the BIA through the TPA program and (2) the IHS. After this narrowing and pursuant to communications with Plaintiff, the United States provided additional documents and supplemented its responses. In particular, Plaintiff's communication about the TPA program clarified certain issues for the BIA and the BIA therefore was better able to provide a response to Plaintiff's request.

In terms of Plaintiff's request for a meeting, the United States explored this possibility with the two agencies Plaintiff requested (the BIA and the IHS) and the agencies determined such meetings would not be productive. These agencies produced all information they had available

and explained why, particularly in the case of IHS, the documents Plaintiff requested do not exist or would take significant time and energy to compile and be an undue burden on the agency. In addition, the agencies perceived Plaintiff's attempts to force meetings between Plaintiff and agency officials as being beyond the scope of the limited discovery the Court allowed.

Notably, while Plaintiff has stated its belief that additional responsive documents exist, Plaintiff has not named or described such documents or otherwise made it possible for the United States to address Plaintiff's statement with any specificity.

The United States' position is that Plaintiff's proposal that it respond to the United States' motion to dismiss based solely on the TPA program would delay further resolution of this case. Plaintiff's complaint raises claims based on at least fourteen programs. *See Pl.'s Report on Discovery* at 7. Plaintiff sought, and this Court allowed, Plaintiff to take discovery based upon some, but not all, of the programs alleged in Plaintiff's complaint. In the course of the discovery proceedings, Plaintiff informed Defendant that it wished to focus on discovery related to the TPA program and the IHS. Now Plaintiff proposes to go forward with briefing on only the TPA program.

The United States moved to dismiss all of Plaintiff's claims. It is the United States' position that this Court can resolve all of Plaintiff's claims at this point, without any further

discovery.[2] Plaintiff's approach leaves a wide variety of issues unresolved, with no plan for their resolution. Notably, they do not state that if the United States prevails on the motion to dismiss with regard to the TPA program, Plaintiff will dismiss the rest of its case. Accordingly, resolution of the motion to dismiss based solely on TPA may have absolutely no effect on the rest of the case.

Further, Plaintiff did not seek discovery with regard to some programs (for example, the Housing Improvement Act and the Block Grant programs), and presumably should be able to respond to the motion to dismiss on those programs. Likewise, Plaintiff should be able to respond to the motion to dismiss on the programs it informed Defendant it would not focus on in the course of discovery. This is especially true in light of the Court's determination on discovery, which, as Plaintiff notes, focused strongly on Plaintiff's TPA claim. Plaintiff now apparently believes it has information sufficient to move forward on the TPA claim. Because the Court granted Plaintiff limited discovery with an emphasis on the TPA program, the case would be best resolved by addressing all issues now instead of by piecemealing the United States' motion to dismiss.

Allowing Plaintiff to break apart its case and proceed on a piecemeal basis in response to the United States' motion to dismiss significantly disadvantages the United States because

---

[2]As just one example, no further discovery should be permitted on the Indian Health Service programs because the statutes under which the IHS distributes its funding — the Snyder Act, the Indian Health Care Improvement Act, and the Indian Self-Determination Act — have already been held not to be money-mandating. *See Lincoln v. Vigil*, 508 U.S. 182, 185, 192 (1993); *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (2005).

Plaintiff would be able to tailor each portion of its case to the Court's previous rulings. Further, because (as demonstrated in the United States' motion to dismiss) the legal issues with regard to all of Plaintiff's claims overlap to a great extent, Plaintiff's piecemealing suggestion would result in significantly more effort and expense by both the parties and the Court. *See, e.g., Marriott PLP Corp. v. Tuschman,* 904 F.Supp. 461, 468 n7 (D. Md. 1995) (noting "the perils of deciding motions to dismiss piecemeal").

Accordingly, having complied with Plaintiff's discovery requests to the best of its ability, the United States requests that the Court order Plaintiff to respond to the United States' motion to dismiss the case.

Dated: January 8, 2007

Respectfully submitted,

Craig J. Dorsay, Esq. by Anne D. Noto
Attorney at Law
1 S.W. Columbia, Suite 440
Portland, Oregon 97258
Telephone: (503) 790-9060
Facsimile: (503) 790-9068

*Counsel of Record for Plaintiff*
*Samish Indian Nation*

Devon Lehman McCune, by Anne D. Noto
United States Department of Justice
Natural Resources Section
1961 Stout Street, 8th Floor
Denver CO 80294
Telephone: (303) 844-1487
Facsimile: (303) 844-1350

*Counsel of Record for Defendant*

Of Counsel to the Samish Indian Nation:

William R. Perry, Esq.
Anne D. Noto, Esq.
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
1425 K Street, N.W. Suite 600
Washington, D.C. 20005
Telephone: (202) 682-0240
Facsimile: (202) 682-0249

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No. 02-1383L (Chief Judge Edward J. Damich) |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

EXHIBIT 1 TO

PARTIES' JOINT STATUS REPORT

January 8, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | ) | Case No. 02-1383L<br>Chief Judge Edward J. Damich |

**DEFENDANT'S COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFF SAMISH INDIAN NATION'S FIRST SET OF REQUESTS FOR ADMISSIONS AND FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 33, 34, and 36 of the Rules of the United States Court of Federal Claims ("RCFC"), Defendant United States hereby presents a combined responses to Plaintiff Samish Indian Nation's First Set of Requests for Admissions and Plaintiff Samish Indian Nation's First Set of Interrogatories and Request for Production of Documents, dated July 26, 2006.[1]

**STATEMENT OF NON-WAIVER AND RESERVATION OF RIGHTS**

By providing answers to Plaintiff's Discovery Requests, Defendant is not waiving and is hereby expressly reserving: (a) all questions regarding competence, relevance, materiality, privilege and admissibility of the responses, and the subject matter thereof, as evidence for any

[1] On September 18, 2006, this Court granted Defendant's motion for an extension of time in which to respond to Plaintiff's discovery requests.

purpose in any proceeding in this action; and (b) the right to object to the use of any response, or the subject matter thereof, on any ground and in any proceeding in this action.

Defendant's answers to Plaintiff's Discovery Requests are complete and accurate to the best of the knowledge and belief of the persons who worked on this response. Nevertheless, Defendant reserves the right to supplement these answers if additional information is later discovered or identified.

The following objections apply to each discovery request and are to be read as forming a part of the response to each of the individual requests.

## GENERAL OBJECTIONS

1. Defendant objects to the requests to the extent that they seek information on statutes and programs already dismissed by this Court.

2. Defendant objects to the requests to the extent that they seek information that is beyond the scope of litigation and not reasonably calculated to lead to the discovery of relevant evidence.

3. Defendant objects to the requests as unduly burdensome and oppressive to the extent that they seek to require Defendant to search for and identify documents, particularly documents that have been archived or destroyed, according to criteria Defendant and its component agencies and departments do not use in maintaining or organizing files or records for storage or retrieval.

4. Defendant objects to requests seeking identification of "all" records or "any and all documents," "indicating or relating to" a particular topic or document on the grounds that such requests are overbroad, vague, ambiguous, and impose an undue burden and expense.

5. Defendant objects to all the descriptive terms that, due to being under-defined, are open to multiple interpretations, vague and/or too broad, and do not provide a reasonable and objective measure by which: (a) to ascertain the scope of and/or subject matters encompassed by, a Request for Admission; and/or (b) to discern compliance with the response to a Request for Admission or a sub-part therein.

6. Defendant objects to Plaintiff's definitions of "federally-recognized Tribe," "Indian Tribes," and "Tribes" as provided in the instructions to the Discovery Requests and used in the request for admissions and interrogatories. Plaintiff attempts to exclude "tribes, villages, corporations, or other groups of Native people located within the State of Alaska." Plaintiff's Second Amended Complaint did not distinguish the geographic location of any "federally-recognized Tribes," "Indian Tribes," and/or "Tribes" (*i.e.*, differentiating Indian Tribes located in the Lower 48 States, Contiguous 48 states or the Continental United States from those in the State of Alaska). Defendant also objects to Plaintiff's definitions because they are in conflict with the discovery requests and some of the attachments Plaintiff provided. In particular, they conflict with the first request for admissions, which refers to a list that would include all federally-recognized Tribes, including those in Alaska. In addition, Defendant's records do not distinguish between federally-recognized Tribes in Alaska as opposed to other geographic localities. Defendant, therefore, will make objections and provide answers as if the Discovery Requests are requesting information as to all "federally-recognized Tribes," "Indian Tribes," and/or "Tribes" regardless of their geographic location.

7. Defendant objects to the requests as oppressive or unduly burdensome to the extent that they require Defendant to compile, summarize, research, or otherwise analyze

voluminous historical information.

8. The answers contained in this response are made subject to all objections as to competence, relevance, materiality, and admissibility. These answers are subject to all objections that would require the exclusion of any statement, material, or information herein provided if such requests were asked of, or any statement, material, or information provided were made by witnesses present and testifying in court. All such objections are reserved and may be interposed at any time.

9. The production of a document shall not constitute or be interpreted as an express or implied admission as to the truth of the contents contained in that document. This is especially the case with respect to documents prepared by entities other than a federal agency, including State, local, and tribal governmental entities. Rather, documents are produced as they exist in agency files.

10. Defendant objects to the requests to the extent that they seek contentions and information that Defendant has not yet had the opportunity to develop fully, and, to the extent research into some of the issues is not yet complete, all responses made herein are to be considered preliminary in nature and subject to revision as Defendant has the opportunity to conduct further research and discovery. Defendant will make a good faith effort to respond to all of Plaintiff's discovery requests based on the discoverable information presently available to it with the understanding that its responses are not necessarily complete and further research may require revision or supplementation of some responses in accordance with applicable sections of the RCFC.

11. Defendant objects to the definitions and instructions to the extent that they require overly broad discovery responses beyond that required by the RCFC. Although in some cases, as a matter of comity and cooperation, Defendant has or will volunteer information which may go beyond that strictly required under those rules, by doing so Defendant does not waive this

objection. Defendant's responses are provided in accordance with the RCFC irrespective of any definitions and instructions that may accompany the Discovery Requests.

12. Defendant generally objects to Plaintiff's Discovery Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, the deliberative process privilege, and any other applicable privileges recognized in the RCFC. This objection is intended to apply to the requests that seek such information and will not be repeated specifically for each request to which it applies. Defendant, to the extent applicable and possible, has construed each request as requesting only information and/or documents not subject to any applicable protection.

13. No incidental or implied admissions are intended. The fact that Defendant has responded to Plaintiff's discovery requests, or part thereof, should not be taken as an admission that it accepts the discovery requests or that the response or objection thereto constitutes admissible evidence. Similarly, the fact that Defendant has responded to all or part of a request is not intended to and shall not be construed to be a waiver of all or part of any objection to other requests. Defendant's answer(s) to any request(s) herein do not constitute a waiver of its right to object to future additional or supplemental requests regarding the same or similar matters. Should Defendant mistakenly produce otherwise privileged or protected information, it does not thereby waive the privileges or protections applicable to that information.

14. Defendant objects to Plaintiff's requests for discovery on the ground that the requests misconstrue the appropriations Congress makes available to the Department of the Interior ("Interior") to operate Indian programs, including the Snyder Act of November 2, 1921 (25 U.S.C. § 13), the Indian Self-Determination and Education Assistance Act of 1975 ("ISDA") (25 U.S.C. § 450 *et seq.*), as amended by the Education Amendments of 1978 (25 U.S.C. §§ 2001-2019), and the Tribally Controlled Schools Act of 1998 ("TCSA") (25 U.S.C. § 2501 *et seq.*). As a result, the requests ultimately require the production of information that is not

relevant to the case and is not reasonably calculated to lead to admissible evidence. Interior receives, allocates, and spends its appropriated funds under the authority of the Snyder Act, ISDA, and the TCSA. The Snyder Act authorizes the expenditure of appropriations for the "benefit, care, and assistance of the Indians throughout the United States." 25 U.S.C. § 13. The ISDA and TCSA provide further explanation of these purposes and authorize Interior to carry out programs consistent with those functions. The ISDA, for instance, authorizes the Secretary of the Interior to contract with Indian Tribes to transfer the operation of programs for Indians to the Indian Tribes, in promotion of self-determination. 25 U.S.C. § 450f.

Interior receives a single lump-sum appropriation for the operation of Indian programs. *See* Dep't of the Interior, Environment, and Related Agencies Appropriations Act of 2006, Pub. L. 109-54, 119 Stat. 499 (HR 2361). From this appropriation, Interior administers the direct operation of Indian programs and its functions under the Snyder Act, as well as the self-determination contracts under ISDA and the Tribal Priority Allocations ("TPA"). *See* The U.S. Dep't of the Interior Budget Justifications and Performance Information Fiscal Year 2006, Bureau of Indian Affairs, BIA-SUM-1 - BIA-SUM-37, BIA-OIP-1 -BIA-OIP-9, BIA-TPA-1 - BIA-TPA-58. The term TPA refers to an budgetary tool that the Bureau of Indian Affairs uses to categorize and describe how it plans to allocate certain funds from the lump-sum appropriation to provide Indian Tribes for the operation of Indian programs. The Snyder Act and ISDA are the authorities for transferring the TPA designated funds to the Indian Tribes. The funding vehicle the Bureau of Indian Affairs often uses to transfer TPA funds to Indian Tribes is ISDA contracts.

Despite the Court's dismissal of all claims under both the Snyder Act and ISDA on the ground that such claims are not money-mandating, the nature of Interior's lump-sum appropriations will require the agency to answer Plaintiff's request for discovery in a way that encompasses the dismissed claims. *Samish Indian Nation v. United States*, 58 Fed. Cl. 114, 118-19, 120 n.12 (2003), *aff'd*, 419 F.3d 1355 (2005). In this regard, much of the information

encompassed in the request is no longer relevant to the remaining claim and therefore is not reasonably calculated to lead to admissible evidence. Defendant objects to the requests on this ground.

15. Defendant objects to Plaintiff's requests for discovery on the ground that the requests misconstrue Indian Health Service ("IHS") appropriations under the Indian Health Care Improvement Act ("IHCIA"), 25 U.S.C. § 1601 *et seq.*, and as a result, ultimately require production of information no longer relevant in the case and not reasonably calculated to lead to admissible evidence. IHS receives, allocates, and spends its appropriated funds under the authority of both the Snyder Act, 25 U.S.C. § 13, and IHCIA. The Snyder Act authorizes the expenditure of appropriations for the "relief of distress and conservation of health" of American Indians, and IHCIA provides further explanation of these purposes and authorizes IHS to carry out programs consistent with those functions. In addition to these two statutes, the ISDA authorizes IHS to contract with Tribes to transfer the operation of health care programs to the Tribes, in promotion of self-determination.

IHS receives two annual lump-sum appropriations, from which it administers the direct care operations and its functions under IHCIA and the Snyder Act, as well as the self-determination contracts under ISDA. The first lump-sum appropriation, for "Indian Health Services," provides funding for the delivery of health care services to American Indians and Alaska Natives.[2] The second lump-sum appropriation, for "Indian Health Facilities," provides funds for construction and maintenance of primary care and sanitation facilities.[3] Due to both the nature of its authority under the Snyder Act and IHCIA and the lump-sum appropriations it receives, IHS cannot differentiate funds expended under IHCIA from those expended under the

[2] *See, e.g.*, Dep't of the Interior, Environment, and Related Agencies Appropriations Act of 2006, Pub.L. 109-54, 119 Stat. 499 (HR 2361).

[3] *Id.*

Snyder Act. Despite the Court's dismissal of all claims under both the Snyder Act and ISDA on the ground that such claims are not money-mandating,[4] the nature of IHS' lump-sum appropriations will require it to answer Plaintiff's request for discovery in a way that encompasses the dismissed claims. In this regard, much of the information encompassed in the request is no longer relevant to the remaining claim. IHS objects to the requests on this ground.

16. Defendant further objects to Plaintiff's requests for discovery on the ground that the misconstrual of IHS' appropriations under the IHCIA incorrectly assumes IHS administers its appropriations for IHCIA programs on a strictly Tribe-by-Tribe or per capita basis to all federally recognized Tribes and their members. Instead, IHS utilizes many different funding methodologies to administer the numerous programs it operates in furtherance of its statutory functions under the Snyder Act and IHCIA. For example, the Division of Grants Operations and Grants Policy obligates funds for grantees, who use those funds to carry out specified, approved activities. These grants are usually awarded on a competitive basis, a process that by its very nature results in fewer than all Tribes receiving a grant, and therefore, the funds are not allocated per capita to each federally recognized Tribe.

Similarly, the Urban Indian Health Program ("UIHP") consists of programs in select urban areas nationwide, and these programs benefit individual American Indians who may not otherwise be eligible for direct services from IHS or who reside outside of any IHS or Tribal service area. Thus, due to the nature of the UIHP, an Urban program may not be serving American Indians from all federally recognized Tribes, but instead, would be serving only those individual American Indians with access to the programs.

As a final example, the Division of Health Professions Support administers programs through which IHS provides scholarship and loan repayment awards to health professionals in

---

[4] *Samish Indian Nation v. United States*, 58 Fed. Cl. 114, 118–19, 120 n.12 (2003), *aff'd Samish Indian Nation v. United States*, 419 F.3d 1355 (2005).

exchange for their agreement to serve with IHS for a specified period of time. Both programs are competitive, and applicants are accepted into the programs based on their individual applications and their discipline. The benefits of the programs are directed toward the health professions and Indian health programs, including IHS, Tribal, and Urban programs, rather than specific Tribes. Although a Tribe or its members may receive an indirect benefit when they are treated by a participating healthcare provider, the awards are not granted to Tribes because of their status as Tribes.

Therefore, Defendant objects to the requests on the ground that the requests mischaracterize the nature of IHS' appropriations, which are administered through numerous programs, often on a basis other than a per capita allotment to each federally recognized Tribe. The requests, therefore, are not reasonably calculated or likely to lead to admissible evidence.

17. Defendant objects to Plaintiff's discovery requests to the extent they request information regarding the program referred to by Plaintiffs throughout as the "Commodity Food Program" does not exist. No such program is authorized or administered by Defendant. Subject to and without waiving this objection, Defendant interprets this request as referring to the United States Department of Agriculture's ("USDA") Food Distribution Program on Indian Reservations ("FDPIR"), authorized pursuant to Section 4(b) of the Food Stamp Act of 1977, 7 U.S.C. § 2013(b) and administered by USDA pursuant to 7 C.F.R. Part 253. As a result, in reviewing and responding to Plaintiff's requests for admissions and interrogatories, Defendant substituted "FDPIR" each time "Commodity Food Program" appeared.

18. Defendant objects to the discovery requests on the ground that they are unduly burdensome and overly broad to the extent that they are intended to prove a negative question. The agencies do not maintain all potentially responsive documents in any one location as a

single unit or units that are readily accessible. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition.

19. Defendant objects to the requests to the extent that they seek documents and information that is public information. To the extent that the requests seek documents that have been transferred to the National Archives or other repositories open to the public, and Defendant objects because those documents are no longer within the possession, custody, and control of the agencies administering the programs referenced in Plaintiff's Complaint and discovery requests.

**SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSIONS**

**Request for Admission No. 1**. Admit that the lists published in the Federal Register in 1980, 1985, 1988, 1993, and 1996 of Indian entities that were recognized and eligible to receive services from the United States, copies of which are attachments 1–5, hereto, accurately identify the Indian Tribes that were federally-recognized by the United States at the time of each list's publication.

**Response to Request for Admission No. 1**. Defendant objects to Plaintiff's definitions of "federally-recognized Tribe," "Indian Tribes," and "Tribes," as stated in general objection 6. In particular, the definitions conflict with this request for admission, which refers to a list of federally-recognized Tribes, including those in Alaska. In addition, Defendant's records do not necessarily distinguish between federally-recognized Tribes in Alaska as opposed to other geographic localities.

Defendant objects to the phrases "lists published" and "accurately identify the Indian Tribes that were federally-recognized" as so vague and ambiguous that Defendant can neither

admit nor deny the request.

Subject to and without waiving the foregoing objections, denied.

**Request for Admission No. 2**. Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time during the period 1969 through 1996 by virtue of being a federally-recognized Tribe.

**Response to Request for Admission No. 2**. Defendant objects to the phrases "receive," "some amount," "federal funds," "federal assistance," and "at some time" as so vague and ambiguous that Defendant can neither admit nor deny the request. Defendant further objects to "the period 1969 through 1996" as not wholly applicable to all statutes under which Plaintiff seeks discovery because certain statutes were not enacted until after 1969.

Defendant objects to this request because no Tribe received federal funds or federal assistant solely by virtue of being a federally-recognized Tribe.

In addition, Defendant objects to this request as being overly broad and burdensome. For some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records. For example, the Low Income Home Energy Assistance Program and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the

list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant incorporates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996. It would be impossible for Defendant to determine whether every federally-recognized Tribe has ever received any kind of federal funding or assistance during that twenty-seven year period. In addition, Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the Request for Admission based only on the basis of the United States Department of the Interior Bureau of Indian Affairs, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, and the Department of Labor's Comprehensive Employment and Training Act of 1973 and Job Training Partnership Act.

Subject to and without waiving the foregoing objections, deny.

**Request for Admission No. 3**. Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time following the Tribe's federal recognition through 1996 under one or more of the statutes identified in paragraph 30 of the

Complaint.

**Response to Request for Admission No. 3**. Defendant objects to the phrases "received," "some amount," "federal funds," "federal assistance," and "at some time" as so vague and ambiguous that Defendant can neither admit nor deny the request.

Defendant restates its objections that this request is unduly burdensome and overly broad. Defendant objects to this request for admission on the basis that, for some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission pose an undue burden and expense to conduct a search to identify responsive records. For example, the Low Income Home Energy Assistance Program and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant restates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996 for all statutes listed in Plaintiff's complaint. Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to

Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the Request for Admission based only on the basis of the United States Department of the Interior Bureau of Indian Affairs, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, the Comprehensive Employment and Training Act of 1973, and the Job Training Partnership Act.

For the Tribal Priority Allocation program, Defendant objects to this interrogatory because it addresses "the statutes identified in paragraph 30 of the Complaint." The Tribal Priority Allocation is not provided by for statute, but is the Bureau of Indian Affairs' means of distributing its congressional allocations. Defendant restates its general objections numbers 14 and 15 on the basis that this request is not reasonably calculated to lead to admissible evidence.

Subject to and without waiving the foregoing objections, deny.

**Request for Admission No. 4**. Admit that every federally-recognized Tribe received some amount of federal funds at some time after the Tribe's federal recognition through 1996 under the Tribal Priority Allocation program (TPA), described in paragraph 30.a of the Complaint.

**Response to Request for Admission No. 4**. Defendant objects to the phrases "received," "some amount," "federal funds," "federal assistance," "at some time," and "after the Tribe's federal recognition" as so vague and ambiguous that Defendant can neither admit nor deny the request.

Defendant restates its general objection number 14 and reiterates that this request is not reasonably calculated to lead to admissible evidence.

Defendant restates its objection that this request is unduly burdensome and overly broad. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Defendant does not retain its files by individual Tribe throughout the country and, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Subject to and without waiving the foregoing objections, Defendant states that a reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to admit or deny this Request for Admission.

**Request for Admission No. 5**. Admit that all Housing Authorities established by federally-recognized Tribes that were recognized as of 1980 and that requested financial assistance under the Housing Act of 1937 as amended as described in paragraph 30.b. of the Complaint, received some amount of federal funds under that Act at some time during the period after such request through 1996.

**Response to Request for Admission No. 5**. Defendant objects to the phrases "requested," "received," "some amount," "federal funds," and "some time" as being as so vague and ambiguous that Defendant can neither admit nor deny the request. Defendant restates its objections that this request is unduly burdensome and overly broad because the United States Housing Act of 1937 covers a variety of federal funds and programs. Subject to and without waiving the foregoing objections, Defendant is unable at this time to admit or deny this request for admission. Defendant will attempt to supplement this response with additional information,

which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

**Request for Admission No. 6**. Admit that during the period 1976 through 1996, the Indian Health Service allocated its federal Indian health care funds to benefit and serve all federally-recognized Tribes and their members.

**Response to Request for Admission No. 6**. Defendant objects to the phrases "allocated," "federal Indian health care funds," and "to benefit and serve" as so vague and ambiguous that IHS can neither admit nor deny the request. Defendant restates its genearl objections number 15 and 16, reiterating that this request is unduly burdensome and overly broad, that it requires the production of information no longer relevant to the case because it relates to the dismissed ISDA claim, and that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act.

Subject to and without waiving the foregoing objections, deny.

**Request for Admission No. 7**. Admit that every federally-recognized Tribe that requested financial assistance under the Low Income Home Energy Assistance Program ("LIHEAP") described in Paragraph 30.k. of the Complaint, received some amount of federal assistance under that program at some time after such request.

**Response to Request for Admission No. 7**. Defendant objects to the phrases "requested," "some amount," "federal assistance," and "some time" as being as so vague and ambiguous that Defendant can neither admit nor deny the request. Defendant restates its objections that this request is unduly burdensome and overly broad because Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income

Americans and not just to federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information. Consequently, Defendant does not organize its records or files according to whether a Tribe is federally-recognized.

Subject to and without waiving the foregoing objections, and subject to the requirement that the Tribes properly applied for financial assistance and met all of the various requirements under the regulations and application requirements, admit.

**Request for Admission No. 8**. Admit that every federally-recognized Tribe that sought federal assistance under the Commodity Food Program described in paragraph 30.1 of the Complaint, received some amount of federal assistance under that program.

**Response to Request for Admission No. 8**. Defendant objects to the phrases "sought," "federal assistance," and "some amount," as being as so vague and ambiguous that Defendant can neither admit nor deny the request. In addition, Defendant restates its general objection number 17, reiterating that this request for admission is not reasonably calculated to lead to admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that participation in FDPIR is not compulsory for eligible Tribes nor is it the only method for tribal households to receive benefits. Pursuant to 7 C.F.R. §§ 253.2(i)(2) and 253.4(e), the USDA must determine that an applicant Tribe is "capable of effectively administering" FDPIR on all or part of a reservation prior to participation approval. Defendant admits that Defendant is unaware

of any Tribe that applied for and was denied FDPIR participation since the program's inception.

**Request for Admission No. 9**. Admit that all federally-recognized Tribes that sought federal assistance under one or both job training programs established by the Comprehensive Employment and Training Act of 1973 ("CETA"), and the Job Training Partnership Act ("JTPA"), described in paragraph 30.n. of the Complaint, received some amount of federal funds or federal assistance under those programs.

**Response to Request for Admission No. 9**. Defendant objects to the phrases "sought," "federal assistance," "some amount," and "federal funds" as being as so vague and ambiguous that Defendant can neither admit nor deny the request. Subject to and without waiving the foregoing objections, deny.

**SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

**Interrogatory No. 1**. If your response to Request for Admission No 1 is a denial,

(a) Explain the reason for your denial;

(b) Produce copies of the lists by which the United States identified the Indian Tribes that were recognized by the United States as eligible to receive services provided by the United States to Indians because of their status as Indians, in the years 1980, 1985, 1990, 1993 and 1996.

**Response to Interrogatory No. 1**.

(a) The lists of Indian entities published in the *Federal Register* Plaintiff refers to in its Request for Admissions No. 1 represent the best efforts of the Department of the Interior to identify federally recognized Indian Tribes at the time the lists were created. The various lists

that the Department developed over time represent a long, evolving process and did not always include every federally recognized Indian Tribe. For instance, the Department did not include any of the federally recognized Alaskan entities in the first list that it published as a notice in the *Federal Register*. Rather, the notice stated that the Alaskan entities would be published at a latter date. 44 Fed. Reg. 7,235 (Feb. 6, 1979). The Alaskan entities also were not included in the 1980 and 1981 lists the Department published. 45 Fed. Reg. 27,828 (Apr. 24, 1980) and 46 Fed. Reg. 35,361 (July 8, 1981). The federally recognized Alaskan entities were first included on a published list in 1982. 47 Fed. Reg. 53,130 (Nov. 24, 1982). For a discussion of the Alaskan entities tribal status, see the Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers Solicitor's Opinion. Sol. Op. M-36975, at 46-48 (Jan. 11, 1993). In addition to the lists not always being conclusive, mistakes were occasionally made and corrections were necessary. For a discussion of mistakes made on the list, see Improvements Needed in Tribal Recognition Process, GAO-02-49 at 23 (Nov. 2001).

Lists of federally recognized Indian Tribes did not necessarily take on the significance associated with them today until Congress confirmed the authority and responsibility of the Secretary of the Interior to establish a list of Indian Tribes and mandated that such lists be published annually through passage of the Federally Recognized Indian Tribe List Act of 1994 (List Act) (codified at 25 U.S.C. § 479a *et seq.*). Prior to 1994, numerous lists were created and used over time by the Department and other divisions of the Federal Government to identify tribal entities. These tribal lists comprise public and internal memorandums, which often also included non-federally recognized Indian groups. Some of the early tribal lists include: 1) Charles J. Kappler, Indian Affairs: Laws and Treaties Vol. 1, at 1021-1046 (1904); 2) Felix S. Cohen, Handbook of Federal Indian Law, at 457-484 (1942); 3) Theodore H. Hass, Ten Years of Tribal Government Under I.R.A., at 21-34 (1947); 4) H.R. Rep. No. 2503, at 722-1042 (1953); 5) Department of the Interior, Bureau of Indian Affairs Memorandum "Tribal Organizations:

Indian Reorganization Act; Oklahoma Indian Welfare Act; Other Organization; Unorganized" (July 21, 1966); 6) Department of the Interior, Bureau of Indian Affairs Memorandum "Organizational Status of Federally Recognized Indian Entities" (Dec. 5, 1969); 7) American Indians And Their Federal Relationship: Plus a Partial Listing of Other United States Indian Groups, United States Department of the Interior, Bureau of Indian Affairs (March 1972); and 8) Governing Bodies of Federally Recognized Indian Groups (Excluding Alaska), United States Department of the Interior, Bureau of Indian Affairs (March 1978).

(b) Defendant objects to this request for production because any lists produced by United States pertain solely to eligibility for services and do not entitle Tribes to services or assistance based solely on tribal status.

Despite this objection, Defendant is in possession of the following documents that may be responsive and has provided copies of those documents to Plaintiff:

I. Department *Federal Register* Notices of Federally Recognized Indian Entities. The Department published the following notices of federally recognized Indian entities in the *Federal Register*:

1. 44 Fed. Reg. 7,235 (Feb. 6, 1979);
2. 45 Fed. Reg. 27,828 (Apr. 24, 1980);
3. 46 Fed. Reg. 35,361 (July 8, 1981);
4. 47 Fed. Reg. 53,130 (Nov. 24, 1982);
5. 48 Fed. Reg. 56,862 (Dec. 23, 1983);
6. 50 Fed. Reg. 6,055 (Feb. 13, 1985);
7. 51 Fed. Reg. 25,115 (July 10, 1986);
8. 53 Fed. Reg. 52,829 (Dec. 29, 1988);
9. 58 Fed. Reg. 54,364 (Oct. 21, 1993);
10. 60 Fed. Reg. 9,250 (Feb. 16, 1995);
11. 61 Fed. Reg. 58,211 (Nov. 13, 1996);
12. 62 Fed. Reg. 55,270 (Oct. 23, 1997);
13. 63 Fed. Reg. 71,941 (Dec. 30, 1998);
14. 65 Fed. Reg. 13,298 (Mar. 12, 2000);
15. 67 Fed. Reg. 46,328 (July 12, 2002);
16. 68 Fed. Reg. 68,180 (Dec. 5, 2003); and
17. 70 Fed. Reg. 71,194 (Nov. 25, 2005).

The Department did not publish a notice of federally recognized Indian entities in 1990.

II. Early Department Publish Lists of Indian Entities and Groups

1. Charles J. Kappler, Indian Affairs: Laws and Treaties Vol. 1, at 1021-1046 (1904) (copy of relevant section);
2. Felix S. Cohen, Handbook of Federal Indian Law, at 457-484 (1942) (copy of relevant section);
3. Theodore H. Hass, Ten Years of Tribal Government Under I.R.A., at 21-34 (1947)(copy of relevant section);
4. H.R. Rep. No. 2503, at 722-1042 (1953)(copy of relevant section);
5. Department of the Interior, Bureau of Indian Affairs Memorandum "Tribal Organizations: Indian Reorganization Act; Oklahoma Indian Welfare Act; Other Organization; Unorganized" (July 21, 1966);
6. Department of the Interior, Bureau of Indian Affairs Memorandum "Organizational Status of Federally Recognized Indian Entities" (Dec. 5, 1969);
7. American Indians And Their Federal Relationship: Plus a Partial Listing of Other United States Indian Groups, United States Department of the Interior, Bureau of Indian Affairs (March 1972); and
8. Governing Bodies of Federally Recognized Indian Groups (Excluding Alaska), United States Department of the Interior, Bureau of Indian Affairs (March 1978).

**Interrogatory No. 2**. If your response to Request for Admission No. 2 is a denial, identify each federally-recognized Tribe that did not receive any federal funds or federal assistance at any time during the period 1969 through 1996 and state the reason why each such Tribe did not receive any such funds or assistance.

**Response to Interrogatory No. 2**. Defendant objects to the phrases "federal funds" and "federal assistance" as so vague and ambiguous that Defendant can not properly respond to the request.

Defendant objects to this request because no Tribe receives federal funds or federal assistance solely by virtue of being a federally-recognized Tribe.

Defendant objects to this request as being overly broad and burdensome. For some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden

and expense to conduct a search to identify responsive records. For example, the LIHEAP and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant restates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996. It would be impossible for Defendant to determine whether every federally-recognized Tribe has ever received any kind of federal funding or assistance during that twenty-seven year period. In addition, Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the interrogatory and request for production based only on the basis of the United States Department of the Interior Bureau of Indian Affairs, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, the United States' Department of Labor's Comprehensive Employment and Training Act of 1973 and Job Training Partnership Act.

For the Tribal Priority Allocation program and other Indian programs administered by

Interior, Defendant objects to this interrogatory because no Tribe receives funding through the programs by virtue of being a federally-recognized Indian Tribe. Defendant restates its objections that this request is unduly burdensome and overly broad. The request for documents is overly broad and burdensome in that it seeks responsive materials to prove a negative question. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Any responsive documents are not maintained in any one location as a single unit or units that are readily accessible. Responding to this interrogatory and request for production would require Defendant to search all of its documents for every Tribe, including a document storage facility in Lenexa, Kansas, where potentially responsive documents may have been sent for storage alongside thousands of non-related documents. Such responsive documents, however, are not retained in a single filing system. Defendant would have to compile all of these records for every federally-recognized Tribe over the entire time period in order to develop a list of all federally-recognized Tribes and their level of funding to determine whether any Tribe has not received any funding. Doing so would require great time, effort, and expense. In addition, because of the nature and variety of Indian Tribes and programs, compilation of a single list would be exceedingly difficult, if not impossible. A reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to respond to this interrogatory. Responsive documents are not available. Interior does, however, make public the total distribution of TPA funds per year at a macro level. These figures are contained in the publically available Budget Justifications for the Bureau of Indian Affairs.

For the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that, at this time, Defendant is unable to provide a list of

Tribes that did not receive funding pursuant to these programs because the Department of Housing and Urban Development disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. Defendant is, however, investigating whether some list of Tribes that did receive funding or assistance under the United States Housing Act of 1937 could be provided. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory and request for documents. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

With regard to the IHCIA, Defendant objects to this interrogatory on the ground that it is unduly burdensome and overly broad, and on the grounds states in general objections numbers 15 and 16. To comply with this interrogatory and request for production would require several steps: (1) each IHS program that operates under IHCIA, such as the Division of Grants Operations and Grants Policy, must identify the federally recognized Tribes that received funding through that program for each of the twenty years during 1976–1996,[5] which in and of itself presents a large burden due to the age of the documentation, which would most likely be archived in the Federal Records Center if it has not been destroyed; (2) to the extent each of the programs operating pursuant to IHCIA are able to generate such a list, IHS must consolidate the lists from those programs; (3) IHS must then compare the consolidated list with the Bureau of Indian Affair's list of federally recognized Tribes for each of the twenty years to determine which federally recognized Tribes did not receive any funding at any time during the period of 1976–1996; and finally, (4) for each of the Tribes that did not receive funding for 1976–1996,

---

[5] As discussed above, generating such lists presents a special problem for programs such as the UIHP and the Scholarship and Loan Repayment Programs that do not provide funding directly to Tribes or on a Tribe-by-Tribe basis.

IHS must then determine if the reasons discussed above, such as the competitive nature of the grants program, sufficiently explains the lack of funding to those Tribes, or whether any of the Tribes did not receive funding for other reasons specific to that Tribe. The number of years involved, as well as the nature of IHS appropriations, make compliance with this request unduly burdensome and overly broad. In addition, IHS has been undergoing procedures to close out FY 2006 and open FY 2007, and removing employees from this necessary task to collect the information and documents requested would impair the IHS' ability to perform these crucial tasks.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant will produce a list of "Expired Grants" for the period of 1990–1996. This list was generated using the database maintained by the Division of Grants Operations and Grants Policy. However, the database only contains information dating back to 1990. Since the computer database does not contain information prior to 1990, generating a list of grants from years 1976–1989 would require a review of the actual grant files, which are currently stored at the Federal Records Center. The list shows grantees, including Tribes, Tribal organizations, and other entities such as colleges and universities, that were awarded grants during each of the fiscal years from 1990–1996 and that have since expired. This list shows the award of 6 grants in 1990, 18 in 1991, 98 in 1992, 186 in 1993, 277 in 1994, 333 in 1995, and 234 in 1996, demonstrating that fewer than all Tribes received funding from IHS in those years.

Furthermore, pursuant to IHS policy for newly-recognized Tribes, these Tribes will not receive funding from IHS until after Congress specifically appropriates monies for the benefit of these Tribes and their members.

For LIHEAP, Defendant is unable to provide a list of federally-recognized Tribes that did not receive funding because Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income Americans and not just to

federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information. Consequently, Defendant does not organize its records or files according to whether a Tribe is federally-recognized. Subject to and without waiving the foregoing objections, Defendant will produce the relevant portions of the Department of Health and Human Services' LIHEAP Reports to Congress for the fiscal years 1982–1996. These reports contain, *inter alia*, an introduction that explains how the Department awarded funds to direct-grant Indian Tribes through either Decennial Census data or Tribal-State agreements, and the amount of LIHEAP funds awarded to direct-grantee Indian Tribes, by Indian Tribe or tribal organization, by State.

As to the Commodity Food Program, Defendant restates its general objection number 17 and reiterates that this interrogatory is not reasonably calculated to lead to admissible evidence. Subject to and without waiving the foregoing objections, Defendant states that FDPIR may be made available through approved Tribes acting as State agencies to enable low income households on or near reservations and in the State of Oklahoma to receive USDA donated commodities in lieu of and as an alternative to household participation in the Food Stamp Program, authorized pursuant to the Food Stamp Act of 1977, 7 U.S.C. § 2011, *et. seq.* Defendant states that FDPIR was statutorily established in 1977, with federal enabling regulations codified in 1979. Defendant is not aware of any eligible Tribe which applied for and was denied participation in FDPIR participation since the Program's authorization. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of eligible Tribes that might have been denied FDPIR participation. The Food and Nutrition Service ("FNS"),the USDA agency which administers FDPIR, requires

retention of records which might include such information for a maximum period of ten (10) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, 37 Food Distribution Division Subject Files. Subject to and without waiving the foregoing objections, Defendant will produce a list of eligible Tribes which applied for and were approved to participate in FDPIR beginning in October 1988 to the present.

Subject to and without waiving the foregoing objections, Defendant states that participation in WIC as a State agency is not compulsory for eligible Tribes. Tribes seeking to act as State agencies in delivering WIC benefits to eligible tribal members, must submit and receive approval for a State plan of operation. 7 C.F.R. § 246.4. Eligible tribal members may apply for and be certified for participation in WIC as administered by the respective State and local agencies pursuant to 7 C.F.R. § 246.7. Defendant is not aware of any eligible Tribe which applied for and was denied WIC participation since 1973 at which time eligible Tribes were permitted statutorily to participate in WIC as State agencies. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of all eligible Tribes that were denied WIC participation. The FNS, the USDA agency which administers WIC, requires retention of records which might include such information for a maximum period of fifteen (15) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, Special Nutrition Programs, Supplemental Food Programs Division - Policy and Program Development Branch Subject Files. Thus, Defendant will produce a list of eligible Tribes which applied for and have been approved to participate in WIC from 1975 to the present.

Subject to and without waiving the foregoing objections, Defendant states with respect to the Food Stamp Program on Indian Reservations, authorized pursuant to Section 4(b) of the Food

Stamp Program of 1977 U.S.C. § 2013(b) and administered by USDA pursuant to 7 C.F.R. Part 281. Defendant has neither received nor denied an application for participation in this Program since its 1977 statutory authorization and 1979 regulatory codification. As a result, the Program is non-operational.

For the CETA and JTPA programs, eligibility for grants was not conditioned upon federal recognition of the applicant Tribes. Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Labor does not maintain records of unfunded grant applications received under the CETA or the JTPA. According to the applicable federal system of records disposition schedule, General Records Schedule 3, "Procurement, Supply and Grant Records," Item 13, Unsuccessful Grant Application Files, these records are retained for a period of three years then destroyed. (*See* http://www.archives.gov/records-mgmt/ardor/records-schedules.html). Defendant has been able to locate a partial list of Tribes which received financial assistance under these programs in 1984 and 1996–1997, and these lists are being produced. The list includes federally recognized and non-federally-recognized Tribes. Defendant is continuing to search its files and records and if other such lists or other data is located, Defendant will provide them to Plaintiff.

Subject to and without waiving the foregoing objections, Defendant states that CETA funds for job training grants to Indian Tribes were allocated among State and federal reservations according to a formula based upon unemployment data. To qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer a program. *See* 29 C.F.R. §§ 96.42(b)&(c) (1976). Similarly, JTPA funds for Native American training programs were made available to Tribes on federal or State reservations. JTPA, 29 U.S.C. § 1671(c)(1)(A) (1988). JTPA funds were allocated among geographic service areas according to a formula based on unemployment and poverty data. 20 C.F.R. § 632.171 (1986). Designation of grantees for these

funds were not dependent upon status as a federally recognized Tribe. Tribes were required to meet minimum population and grant size requirements and to demonstrate their capability to administer a program. 20 C.F.R. §§ 632.10(b)&(c); 632.11(a)(4) (1986).

**Interrogatory No. 3**. If your response to Request for Admission No. 3 is a denial, identify each federally-recognized Tribe that received no federal funds or federal assistance under the statutes listed in paragraph 30 of the Complaint following federal recognition through 1996, and state the reason why each such Tribe did not received any such funds or assistance.

**Response to Interrogatory No. 3**. Defendant objects to the phrases "federal funds" and "federal assistance" as so vague and ambiguous that Defendant can not properly respond to the request.

In addition, Defendant objects to this request as being overly broad and burdensome. For some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records. For example, the Low Income Home Energy Assistance Program and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant restates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers

to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996. It would be impossible for Defendant to determine whether every federally-recognized Tribe has ever received any kind of federal funding or assistance from any government agency or department during that twenty-seven year period. In addition, Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the interrogatory and request for production based only on the basis of the United States Department of the Interior Bureau of Indian Affairs' TPA program, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, and the Department of Labor's Comprehensive Employment and Training Act of 1973 and Job Training Partnership Act.

For the Tribal Priority Allocation program, Defendant objects to this interrogatory because no Tribe receives funding through the TPA program by virtue of being a federally-recognized Indian Tribe. Defendant restates its objections that this request is unduly burdensome and overly broad. The request for documents is overly broad and burdensome in that it seeks responsive materials to prove a negative question. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Any responsive documents are not maintained in any one location as a single unit or units that are readily accessible. Responding to this interrogatory and request for production would require Defendant to search all of its documents for every Tribe, including a document storage facility in Lenexa,

Kansas, where potentially responsive documents may have been sent for storage alongside thousands of non-related documents. Such responsive documents, however, are not retained in a single filing system. Defendant would have to compile all of these records for every federally recognized Tribe over the entire time period in order to develop a list of all federally-recognized Tribes and their level of funding to determine whether any Tribe has not received any funding. Doing so would require great time, effort, and expense. In addition, because of the nature and variety of Indian Tribes and programs, compilation of a single list would be exceedingly difficult, if not impossible. A reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to respond to this interrogatory. Responsive documents are not available. Interior does, however, make public the total distribution of TPA funds per year at a macro level. These figures are contained in the publically available Budget Justifications for the Bureau of Indian Affairs.

For the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that, at this time, Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Housing and Urban Development disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. Defendant is, however, investigating whether some list of Tribes that did receive funding or assistance under the United States Housing Act of 1937 could be provided. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory and request for documents. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

With regard to the Indian Health Care Improvement Act ("IHCIA"), Defendant further objects to this interrogatory on the ground that it is unduly burdensome and overly broad and on

the grounds stated in general objections 15 and 16. To comply with this Interrogatory and Request for Production would require several steps: (1) each IHS program that operates under IHCIA, such as the Division of Grants Operations and Grants Policy, must identify the federally recognized Tribes that received funding through that program for each of the twenty years during 1976–1996,[6] the applicable period under IHCIA, which in and of itself presents a large burden due to the age of the documentation, which would most likely be archived in the Federal Records Center if it has not been destroyed; (2) to the extent each of the programs operating pursuant to IHCIA is able to generate such a list, IHS must consolidate the lists from those programs; (3) IHS must then compare the consolidated list with the Bureau of Indian Affair's list of federally-recognized Tribes for each of the twenty years to determine which federally recognized Tribes did not receive any funding at any time during the period of 1976–1996; and finally, (4) for each of the Tribes that did not receive funding for 1976–1996, IHS must then determine if the reasons discussed above, such as the competitive nature of the grants program, sufficiently explains the lack of funding to those Tribes, or whether any of the Tribes did not receive funding for other reasons specific to that Tribe. The number of years involved, as well as the nature of IHS appropriations, make compliance with this request unduly burdensome and overly broad. In addition, IHS has been undergoing procedures to close out FY 2006 and open FY 2007, and removing employees from this necessary task to collect the information and documents requested would impair the Agency's ability to perform these crucial tasks.

Subject to and without waiving the foregoing objections, IHS responds as follows: IHS will produce a list of "Expired Grants" for the period of 1990–1996. This list was generated using the database maintained by the Division of Grants Operations and Grants Policy.

---

[6] As discussed above, generating such lists presents a special problem for programs such as the UIHP and the Scholarship and Loan Repayment Programs that do not provide funding directly to Tribes or on a Tribe-by-Tribe basis.

However, the database only contains information dating back to 1990. Since the computer database does not contain information prior to 1990, generating a list of grants from years 1976–1989 would require a review of the actual grant files, which are currently stored at the Federal Records Center. The list shows grantees, including Tribes, Tribal organizations, and other entities such as colleges and universities, that were awarded grants during each of the fiscal years from 1990–1996 and that have since expired. This list shows the award of 6 grants in 1990, 18 in 1991, 98 in 1992, 186 in 1993, 277 in 1994, 333 in 1995, and 234 in 1996, demonstrating that less than all Tribes received funding from IHS in those years.

Furthermore, pursuant to IHS policy for newly-recognized Tribes, these Tribes will not receive funding from IHS until after Congress specifically appropriates monies for the benefit of these Tribes and their members.

For LIHEAP, Defendant is unable to provide a list of federally-recognized Tribes that did not receive funding because Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income Americans and not just to federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information. Consequently, Defendant does not organize its records or files according to whether a Tribe is federally-recognized. Subject to and without waiving the foregoing objections, Defendant is producing relevant portions of the Department of Health and Human Services' LIHEAP Reports to Congress for the fiscal years 1982–1996. These reports contain, *inter alia*, an introduction that explains how the Department awarded funds to direct-grant Indian Tribes through either Decennial Census data or Tribal-State agreements, and the amount of LIHEAP funds awarded to direct-grantee Indian Tribes, by Indian Tribe or tribal organization,

by State.

As to the Commodity Food Program, Defendant restates its general objection number 17. Subject to and without waiving the foregoing objections, Defendant states that participation in FDPIR is not compulsory for eligible Tribes nor is it the only method for tribal households to receive benefits. Eligible tribal households may apply for and participate in the Food Stamp Program, authorized pursuant to the Food Stamp Act of 1977, 7 U.S.C. § 2011, *et seq.* and administered by the respective State agency. No household may participate in both FDPIR and the Food Stamp Program administered by the State agency. Pursuant to 7 C.F.R. §§ 253.2(i)(2) and 253.4(e), Defendant must determine that an applicant Tribe is "capable of effectively administering" FDPIR on all or part of a reservation or in the State of Oklahoma prior to participation approval. Defendant is not aware of any eligible Tribe which applied for and was denied FDPIR participation. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of eligible Tribes that might have been denied FDPIR participation. FDPIR was not statutorily established until 1977, with federal enabling regulations codified in 1979. The FNS,the USDA agency which administers FDPIR, requires retention of records which might include such information for a maximum period of ten (10) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, 37 Food Distribution Division Subject Files. Thus, Defendant will produce a list of eligible Tribes which applied for and were approved to participate in FDPIR beginning in October 1988 to the present.

Subject to and without waiving the foregoing objections, Defendant states that with respect to the Special Supplemental Nutrition Program for Women, Infants and Children ("WIC"), authorized pursuant to Section 17 of the Child Nutrition Act of 1966, 42 U.S.C. § 1786, and administered by USDA pursuant to 7 C.F.R. Part 246. Participation in WIC as a State

agency is not compulsory for eligible Tribes. Tribes seeking to act as State agencies in delivering WIC benefits to eligible tribal members, must submit and receive approval for a State plan of operation. 7 C.F.R. § 246.4. Eligible tribal members may apply for and be certified for participation in WIC as administered by the respective State and local agencies pursuant to 7 C.F.R. § 246.7. Defendant is not aware of any eligible Tribe which applied for and was denied WIC participation since 1973 at which time eligible Tribes were permitted statutorily to participate in WIC as State agencies. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of all eligible Tribes that were denied WIC participation. The FNS, the USDA agency which administers WIC, requires retention of records which might include such information for a maximum period of fifteen (15) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, Special Nutrition Programs, Supplemental Food Programs Division - Policy and Program Development Branch Subject Files. Thus, Defendant will produce a list of eligible Tribes which applied for and have been approved to participate in WIC from 1975 to the present.

Subject to and without waiving the foregoing objections, Defendant states with respect to the Food Stamp Program on Indian Reservations, authorized pursuant to Section 4(b) of the Food Stamp Program of 1977 U.S.C. § 2013(b) and administered by USDA pursuant to 7 C.F.R. Part 281. Defendant has neither received nor denied an application for participation in this Program since its 1977 statutory authorization and 1979 regulatory codification. As a result, the Program is non-operational.

For the CETA and JTPA programs, eligibility for grants was not conditioned upon federal recognition of the applicant Tribes. Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Labor does not maintain records of unfunded grant applications received under the CETA or the JTPA.

According to the applicable federal system of records disposition schedule, General Records Schedule 3, "Procurement, Supply and Grant Records," Item 13, Unsuccessful Grant Application Files, these records are retained for a period of three years then destroyed. (*See* http://www.archives.gov/records-mgmt/ardor/records-schedules.html). Defendant has been able to locate a partial list of Tribes which received financial assistance under these programs in 1984 and 1996–1997, and these lists are being produced. The list includes federally recognized and State recognized Tribes. Defendant is continuing to search its files and records and if other such lists or other data is located, Defendant will make them available.

Subject to and without waiving the foregoing objections, Defendant states that CETA funds for job training grants to Indian Tribes were allocated among State and federal reservations according to a formula based upon unemployment data. To qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer a program. *See* 29 C.F.R. 96.42(b)&(c) (1976). Similarly, JTPA funds for Native American training programs were made available to Tribes on federal or State reservations. JTPA, 29 U.S.C. § 1671(c)(1)(A) (1988). JTPA funds were allocated among geographic service areas according to a formula based on unemployment and poverty data. 20 C.F.R. § 632.171 (1986). Designation of grantees for these funds were not dependent upon status as a federally recognized Tribe. Tribes were required to meet minimum population and grant size requirements and to demonstrate their capability to administer a program. 20 C.F.R. §§ 632.10(b)&(c); 632.11(a)(4) (1986).

**Interrogatory No. 4**. If your response to Request for Admission No. 4 is a denial, identify each federally-recognized Tribe that did not receive such funding and state the reason why each such Tribe did not receive such funding.

**Response to Interrogatory No. 4**. Defendant objects to the terms "funding" and "receive" as being so vague and ambiguous that Defendant can not properly respond to the

request.

Responsive documents for every federally recognized Indian Tribe are not available. The request for documents is overly broad and burdensome in that it seeks responsive materials to prove a negative question. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Any responsive documents are not maintained in any one location as a single unit or units that are readily accessible. Responding to this interrogatory and request for production would require Defendant to search all of its documents for every Tribe, including a document storage facility in Lenexa, Kansas, where potentially responsive documents may have been sent for storage alongside thousands of non-related documents. Such responsive documents, however, are not retained in a single filing system. Defendant would have to compile all of these records for every federally recognized Tribe over the entire time period in order to develop a list of all federally-recognized Tribes and their level of funding to determine whether any Tribe has not received any funding. Doing so would require great time, effort, and expense. In addition, because of the nature and variety of Indian Tribes and programs, compilation of a single list would be exceedingly difficult, if not impossible. A reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to respond to this interrogatory. Responsive documents are not available. Interior does, however, make public the total distribution of TPA funds per year at a macro level. These figures are contained in the publically available Budget Justifications for the Bureau of Indian Affairs. Subject to and without waiving these objections, Defendant will provide copies of the following documents, which describe the TPA process in general terms and may contain some tribal specific information concerning this budget tool:

1) Tribal Priority Allocations Do Not Target the Neediest Tribes, GAO/RCED-98-

181 (July 1998);

2) BIA's Distribution of Tribal Priority Allocations, GAO/T-RCED-98-168 (Apr. 21, 1998);

3) Report on Tribal Priority Allocations, Department of the Interior, Bureau of Indian Affairs (July 1999);

4) Empowerment of Tribal Governments: Final Workgroup Report, Tribal Workgroup on Tribal Needs Assessments, Related to: Bureau of Indian Affairs Tribal Priority Allocations (May 1999);

5) Report of the Joint Tribal/BIA/DOI Advisory Task Force on Reorganization of the Bureau of Indian Affairs (August 1994); and

6) The Tribal Budget System: Preliminary Assessment of Most Needy Small Tribes (Apr. 1994).

**Interrogatory No. 5**. Produce copies of those documents that show, for each fiscal year from 1993 through 1996, how funds for the TPA program were allocated among the federally-recognized Tribes within the Portland Area Office of the Bureau of Indian Affairs.

**Response to Interrogatory No. 5**. Defendant will provide copies of the FY 1994 through 1996 Distribution of Tribal Priority Allocation for the Portland Area Office of the Bureau of Indian Affairs. The FY 1993 Distribution could not be located, but if the Bureau of Indian Affairs is able to locate this document, a copy will be provided.

**Interrogatory No. 6**. (a) When the Bureau of Indian Affairs sought funding from Congress for the TPA program, did the agency ever inform Congress that the program would serve a group that is narrower than all federally-recognized Tribes?

(b) If the answer to Interrogatory 6(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 6**. Defendant objects because this inquiry is not

reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Subject to and without waiving the foregoing objections, Defendant states that it has produced in connection with Interrogatory No. 4 several GAO reports indicating that Congress is well aware of the differences in TPA funding levels in connection with the GAO findings. Defendant is unaware that the BIA has otherwise "ever inform[ed] Congress that the program would serve a group that is narrower than all federally-recognized Tribes."

**Interrogatory No. 7**. If your response to Request for Admission No. 5 is a denial, identify the Housing Authority of each federally-recognized Tribe that was recognized as of 1980 and that requested but did not receive any financial assistance at any time following such request through 1996, and for each state the reason why the Housing Authority did not receive such financial assistance.

**Response to Interrogatory No. 7**. Defendant incorporates its objections to Request for Admission No. 5. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

**Interrogatory No. 8.**

(a) When the Department of Housing and Urban Development sought funding from Congress for the programs that served Indians under the Housing Act of 1937, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes?

(b) If your answer to Interrogatory No. 8(a) is yes, provide copies of all documents

relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 8**. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

**Interrogatory No. 9**. If your response to Request for Admission No. 6 is a denial, identify each federally recognized Tribe that was excluded from IHS' allocation of funds, and the reason for such exclusion.

**Response to Interrogatory No. 9**. Defendant objects to the words "allocation" and "funds" as so vague and ambiguous that Defendant can not properly respond to the request. Defendant restates its previous objections that "the period 1969 through 1996" is not wholly applicable to the Agency under IHCIA, which was enacted in 1976. Defendant also restates its General Objections, that, by misconstruing the nature of IHS' appropriations under IHCIA, the interrogatory requires the production of information no longer relevant to the case because it relates to the dismissed ISDA and Snyder Act claims, and that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act. Accordingly, this interrogatory is not reasonably calculated to lead to the production of admissible evidence.

Defendant objects to this interrogatory on the ground that it is unduly burdensome and overly broad. To comply with this Interrogatory and Request for Production would require several steps: (1) each IHS program that operates under IHCIA, such as the Division of Grants Operations and Grants Policy, must identify the federally recognized Tribes that received funding through that program for each of the twenty years during 1976–1996,[7] the applicable

[7] As discussed above, generating such lists presents a special problem for programs such as the UIHP and the Scholarship and Loan Repayment Programs that do not provide funding directly to

period under IHCIA, which in and of itself presents a large burden due to the age of the documentation, which would most likely be archived in the Federal Records Center if it has not been destroyed; (2) to the extent each of the programs operating pursuant to IHCIA are able to generate such a list, IHS must consolidate the lists from those programs; (3) IHS must then compare the consolidated list with the Bureau of Indian Affair's list of federally recognized Tribes for each of the twenty years to determine which federally recognized Tribes did not receive any funding at any time during the period of 1976–1996; and finally, (4) for each of the Tribes that did not receive funding for 1976–1996, IHS must then determine if the reasons discussed above, such as the competitive nature of the grants program, sufficiently explains the lack of funding to those Tribes, or whether any of the Tribes did not receive funding for other reasons specific to that Tribe. The number of years involved, as well as the nature of IHS appropriations, make compliance with this request unduly burdensome and overly broad. In addition, IHS has been undergoing procedures to close out FY 2006 and open FY 2007, and removing employees from this necessary task to collect the information and documents requested would impair the Agency's ability to perform these crucial tasks.

Subject to, and without waiving the foregoing objections, Defendant responds as follows: IHS will produce a list of "Expired Grants" for the period of 1990-1996. This list was generated using the database maintained by the Division of Grants Operations and Grants Policy. However, the database only contains information dating back to 1990. Since the computer database does not contain information prior to 1990, generating a list of grants from years 1976–1989 would require a review of the actual grant files, which are currently stored at the Federal Records Center. The list shows grantees, including Tribes, Tribal organizations, and other entities such as colleges and universities, that were awarded grants during each of the fiscal

---

Tribes or on a Tribe-by-Tribe basis.

years from 1990–1996 and that have since expired. This list shows the award of 6 grants in 1990, 18 in 1991, 98 in 1992, 186 in 1993, 277 in 1994, 333 in 1995, and 234 in 1996, demonstrating that fewer than all Tribes received funding from IHS in those years.

Furthermore, pursuant to IHS policy for newly-recognized Tribes, these Tribes will not receive funding from IHS until after Congress specifically appropriates monies for the benefit of these Tribes and their members.

**Interrogatory No. 10**. Produce copies of those documents that show, for fiscal years 1976, 1980, 1985, 1990, and 1995 how funds for direct and contract health care provided by the United States to Indians were allocated among the federally-recognized Tribes within the Puget Sound Service Area of the Indian Health Service.

**Response to Interrogatory No. 10**. Defendant objects to the words "funds" and "Puget Sound Service Area" as so vague and ambiguous that Defendant can not properly respond to the request. Defendant restates its general objections 15 and 16, that, by misconstruing the nature of IHS' appropriations under IHCIA, the interrogatory requests information no longer relevant to the case because it relates to the dismissed ISDA claim, that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act, and that the request is unduly burdensome and overly broad. Accordingly, this interrogatory is not reasonably calculated to lead to the production of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant will produce documents from fiscal years 1993–1995 in relation to the "Puget Sound Service Unit" and the Portland Area of IHS. This documentation reflects the distribution of funds by the Portland Area of the Indian Health Service to the Puget Sound Service Unit, as distributed among the Tribes for fiscal years 1993–1994. However, this documentation reflects the distribution of appropriations for self-governance under ISDA, part of the dismissed claims, rather than distribution of IHCIA program funds. (See general objections 15 and 16 for further explanation of appropriations

under IHCIA.) Documentation from the Portland Area Office for FY 1995, reflecting the contract health services (CHS) expenditures by Tribe, is also included. This documentation was contained in a file related to the downsizing of the Puget Sound Service Unit, which closed in 1994. IHS has determined that similar reports for the other years requested (Fiscal Years 1976, 1980, 1985, and 1990), as those files are normally maintained, were destroyed pursuant to standard retention policies.

**Interrogatory No. 11**.

(a) When the Indian Health Service of the Department of Health and Human Services (or its predecessor) sought funding from Congress for direct and contract health care for Indians, did the agency ever inform Congress that the program would serve a group that is narrower than all federally-recognized Tribes and members of federally-recognized Tribes?

(b) If the answer to Interrogatory No. 1 l(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 11.** Defendant restates its general objections 15 and 16, that, by misconstruing the nature of IHS' appropriations under IHCIA, the request requires the production of information no longer relevant to the case because it relates to the dismissed ISDA claim, that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act, and that the request is unduly burdensome and overly broad. Defendant also objects because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Subject to and without waiving the foregoing objections, Defendant states that it is unaware that such a representation was made to Congress.

**Interrogatory No. 12.** If your response to Request for Admission No. 7 is a denial,

identify each federally-recognized Tribe that requested but did not receive any financial assistance at any time under the Low Income Home Energy Program (LIHEAP), and for each such Tribe, state the reason why the Tribe did not receive such financial assistance.

**<u>Response to Interrogatory No. 12</u>.** Defendant's answer to Request for Admission No. 7 renders this question inapplicable, provided that the Tribes properly applied for financial assistance and met all of the various requirements under the regulations and application requirements.

**<u>Interrogatory No. 13</u>.**

(a) When the Department of Health and Human Services sought funding from Congress for the LIHEAP program, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program?

(b) If the answer to Interrogatory No. 13(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**<u>Response to Interrogatory No. 13</u>.** Defendant objects to this interrogatory on the basis that Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income Americans and not just to federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information.

Defendant also objects because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as

money-mandating.

Subject to and without waiving the foregoing objections, Defendant states that it has been unable to locate any documents containing such a representation to Congress.

**Interrogatory No. 14.** If your response to Request for Admission No. 8 is a denial, identify each federally-recognized Tribe that requested but did not receive federal assistance under the Commodity Food Program described in paragraph 30.l of the Complaint, and for each such Tribe, the reason why the Tribe did not receive such assistance.

**Response to Interrogatory No. 14.** Defendant incorporates its general objection number 17. Subject to and without saving the foregoing objections, Defendant's answer to Request for Admission No. 8 renders this question inapplicable, as Defendant is unaware of any Tribe that applied for and was denied FDPIR participation since the program's inception.

**Interrogatory No. 15.**

(a) When the Department of Agriculture sought funding from Congress for the Commodity Food Program, did the agency express to Congress that the program was to serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program?

(b) If the answer to Interrogatory No. 15(a) is yes, provide all documents relevant to your answers to that Interrogatory, including all documents presented to Congress.

**Response to Interrogatory No. 15.** Defendant incorporates its general objection number 17. Defendant objects because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Subject to and without waiving the foregoing objections, Defendant states that it has been unable to locate any documents containing the USDA's representation "to

Congress that the program was to serve a group of Tribes that is narrower than the federally-recognized Tribes that requested participation in the program."

**Interrogatory No. 16.** If your response to Request for Admission No. 9 is a denial, identify each federally-recognized Tribe that requested but did not receive financial assistance under one or both job training programs established by the Comprehensive Employment and Training Act of 1973 ("CETA"), and the Job Training Partnership Act ("JTPA"), described in paragraph 30.n. of the Complaint, and for each such Tribe, state the reason why the Tribe did not receive such financial assistance.

**Response to Interrogatory No. 16.** Defendant objects to this interrogatory because records are not available to identify all federally recognized Tribes that requested but did not receive financial assistance. Defendant does not maintain records of unfunded grant applications received under the CETA or the JTPA. According to the applicable federal system of records disposition schedule, General Records Schedule 3, "Procurement, Supply and Grant Records", Item 13, Unsuccessful Grant Application Files, these records are retained for a period of three years then destroyed. (See http://www.archives.gov/records-mgmt/ardor/records-schedules.html).

A search of Defendant's records has resulted in a partial list of Tribes which received financial assistance under these programs in 1984 and 1996–1997. The list, which is being produced, includes federally recognized and State recognized Tribes. Eligibility for grants under CETA and JTPA was not conditioned upon federal recognition of the applicant Tribes. Indian Tribes on Federal or State reservations were eligible to apply for CETA and JTPA employment and training grants. CETA sec. 204(a)(2) [29 U.S.C. § 844(a)(2) (1976), JTPA § 401(c)(1)(A) [29 U.S.C. § 1671(c)(1)(A) (1988)]; 29 C.F.R. § 96.42(a) (1976), 20 C.F.R. § 632.10(d) (1984). Defendant is continuing to search its files and records and if other such lists or other data is located, Defendant will make them available.

CETA funds for job training grants to Indian Tribes were allocated among State and federal reservations according to a formula based upon unemployment data. To qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer a program. See 29 C.F.R. § 96.42(b)&(c) (1976).

Similarly, JTPA funds for Native American training programs were made available to Tribes on federal or State reservations. JTPA § 401(c)(1)(A) [29 U.S.C. § 1671(c)(1)(A) (1988)]. JTPA funds were allocated among geographic service areas according to a formula based on unemployment and poverty data. 20 C.F.R. § 632.171 (1986). Designation of grantees for these funds were not dependent upon status as a federally recognized Tribe. Tribes were required to meet minimum population and grant size requirements and to demonstrate their capability to administer a program. 20 C.F.R. §§ 632.10(b)&(c); 632.11(a)(4) (1986).

**Interrogatory No. 17.**

(a) When the Department of Labor sought funding from Congress for either the CETA or JTPA programs, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program?

(b) If the answer to Interrogatory No. 17(a) is yes, provide all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 17.** Defendant objects to this interrogatory on the basis that federal recognition is not a dispositive eligibility criterion for either CETA or JTPA. Under both programs, to qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer the program.

Defendant objects because this inquiry is not reasonably calculated to lead to the

discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating.

Subject to and without waiving the foregoing objections, Defendant states that it has been unable to locate any documents indicating that the United States Department of Labor "ever inform[ed] Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program."

Submitted this 12th day of September, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

s/ *Devon Lehman McCune*
Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov

OF COUNSEL:

Rachel Bishop
Office of General Counsel
United States Department of Agriculture

Catherine Hess
Office of the General Counsel
Children, Families and Aging Division
United States Department of Health and Human Services

Robert Hines
Office of the Solicitor
United States Department of Labor

Melissa A. Jamison
Office of General Counsel
United States Department of Health and Human Services

Jason Roberts
Office of the Solicitor
United States Department of the Interior

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SAMISH INDIAN NATION, a federally recognized tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | Case No. 02-1383L<br>Chief Judge Edward J. Damich |

**DEFENDANT'S SUPPLEMENT TO COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFF SAMISH INDIAN NATION'S FIRST SET OF REQUESTS FOR ADMISSIONS AND FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 33, 34, and 36 of the Rules of the United States Court of Federal Claims ("RCFC"), Defendant United States hereby supplements its Combined Objections and Responses to Plaintiff Samish Indian Nation's First Set of Requests for Admissions and Plaintiff Samish Indian Nation's First Set of Interrogatories and Request for Production of Documents, dated October 19, 2006. All objections stated in the United States' previous response are hereby incorporated and reaffirmed.

**Request for Admission No. 2**. Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time during the period 1969 through 1996 by virtue of being a federally-recognized Tribe.

**Supplemental Response to Request for Admission No. 2**. Defendant incorporates in full its previously provided answer and objections, and adds that this request is overly broad and

burdensome because the Public and Indian Housing Development Program administered by the United States Department of Housing and Urban Development ("HUD") does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, HUD does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records.

**Request for Admission No. 3.** Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time following the Tribe's federal recognition through 1996 under one or more of the statutes identified in paragraph 30 of the Complaint.

**Supplemental Response to Request for Admission No. 3**. Defendant incorporates in full its previously provided answer and objections, and adds that this request is overly broad and burdensome because the Public and Indian Housing Development Program does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, HUD does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records.

**Request for Admission No. 5**. Admit that all Housing Authorities established by federally-recognized Tribes that were recognized as of 1980 and that requested financial assistance under the Housing Act of 1937 as amended as described in paragraph 30.b. of the Complaint, received some amount of federal funds under that Act at some time during the period after such request through 1996.

**<u>Supplemental Response to Request for Admission No. 5</u>**. Defendant incorporates in full its previously provided objections. Defendant supplements its previous answer by objecting to this request on the basis that it is unduly burdensome and overly broad because the United States Housing Act of 1937 covers a variety of federal funds and programs. For example, HUD administered programs for both low-income housing development and for modernization of existing housing developed with HUD funds. Subject to and without waiving the foregoing objections, Defendant states that a reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to admit or deny this Request for Admission.

## SUPPLEMENT TO DEFENDANT'S SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

**<u>Interrogatory No. 2</u>**. If your response to Request for Admission No. 2 is a denial, identify each federally-recognized Tribe that did not receive any federal funds or federal assistance at any time during the period 1969 through 1996 and state the reason why each such Tribe did not receive any such funds or assistance.

**<u>Supplemental Response to Interrogatory No. 2</u>**. Defendant incorporates in full its previously provided objections and answer. Defendant supplements its answer by stating that this request is overly broad and burdensome because the Public and Indian Housing Development Program does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, HUD does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records.

Defendant also supplements its answer by stating that, for the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because HUD disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. In addition, a list of Tribes that received funds would not be reasonably calculated to lead to admissible evidence because one would be unable to tell from the list whether Tribes not listed did not receive funds because they did not apply for the programs or whether they were denied for other reasons. Subject to and without waiving the foregoing objections, Defendant states that under the United States Housing Act of 1937, there is no requirement that a Tribe be federally recognized to be eligible for HUD grant funds. In fact, HUD has served both non-federally recognized Tribes and federally recognized Tribes. Defendant further states that there are several reasons an Indian Housing Authority ("IHA") could have been denied HUD funds for the time period of 1969 to 1996. The Public and Indian Housing Development Program required that an IHA be established under State, local or tribal law in compliance with HUD's regulatory criteria. An IHA could apply to HUD for development funds to build low-income housing, provided all notice of funding criteria were met. However, if an IHA applied for funds to modernize pre-existing housing, it would only be eligible if it already had HUD-funded housing and met all notice of funding criteria. Funding under most HUD programs was competitive. However, the Comprehensive Grant Program was non-competitive and provided funds to modernize housing previously built with HUD funds. Thus, even for the non-competitive program, all applicants must have competed successfully for development funds to build housing

units prior to receiving modernization funding.

**Interrogatory No. 3**. If your response to Request for Admission No. 3 is a denial, identify each federally-recognized Tribe that received no federal funds or federal assistance under the statutes listed in paragraph 30 of the Complaint following federal recognition through 1996, and state the reason why each such Tribe did not received any such funds or assistance.

**Supplemental Response to Interrogatory No. 3**. Defendant incorporates in full its previously provided objections and answer. Defendant supplements its answer by stating that this request is overly broad and burdensome because the Public and Indian Housing Development Program does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, the agency does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records. and expense to conduct a search to identify responsive records.

Defendant also supplements its answer by stating that, for the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Housing and Urban Development disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. In addition, a list of Tribes that received funds would not be reasonably calculated to lead to admissible evidence because one would be unable to tell from the list whether Tribes not listed did not receive funds because they did not apply for the programs or were denied for other reasons. Subject to and without waiving the foregoing

objections, Defendant states that under the United States Housing Act of 1937, there is no requirement that a Tribe be federally recognized to be eligible for HUD grant funds. In fact, HUD has served both non-federally recognized Tribes and federally recognized Tribes. Defendant further states that there are several reasons an IHA could have been denied HUD funds for the time period of 1969 to 1996. The Public and Indian Housing Development Program required that an IHA be established under State, local or tribal law in compliance with HUD's regulatory criteria. An IHA could apply to HUD for development funds to build low-income housing, provided all notice of funding criteria were met. However, if an IHA applied for funds to modernize pre-existing housing, it would only be eligible if it already had HUD-funded housing and met all notice of funding criteria. Funding under most HUD programs was competitive. However, the Comprehensive Grant Program was non-competitive and provided funds to modernize housing previously built with HUD funds. Thus, even for the non-competitive program, all applicants must have competed successfully for development funds to build housing units prior to receiving modernization funding.

**Interrogatory No. 7.** If your response to Request for Admission No. 5 is a denial, identify the Housing Authority of each federally-recognized Tribe that was recognized as of 1980 and that requested but did not receive any financial assistance at any time following such request through 1996, and for each state the reason why the Housing Authority did not receive such financial assistance.

**Supplemental Response to Interrogatory No. 7**. Defendant incorporates in full its previously provided objections and answer. Defendant incorporates its objections to Request for Admission No. 5. Subject to and without waiving the foregoing objections, Defendant's answer to Request for Admission No. 5 states that Defendant made a reasonable inquiry and the

information known or readily obtainable by Defendant is insufficient to allow Defendant to admit or deny this Request for Admission. See also Defendant's answer to Interrogatory No. 2 and 3.

**Interrogatory No. 8.**

(a) When the Department of Housing and Urban Development sought funding from Congress for the programs that served Indians under the Housing Act of 1937, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes?

(b) If your answer to Interrogatory No. 8(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Supplemental Response to Interrogatory No. 8**. Defendant incorporates in full its previously provided objections and answer. Defendant objects to this Interrogatory because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Defendant further objects to this interrogatory because federal recognition is not a necessary condition for Tribes to participate in HUD programs. Subject to and without waiving the foregoing objections, Defendant states that it has not located any documents indicating that such a representation was made to Congress.

This 1st day of November, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov

OF COUNSEL:
Batina Wills Washington
United States Department of Housing & Urban Development
Office of General Counsel

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No. 02-1383L |
| | ) | (Chief Judge Edward J. Damich) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

EXHIBIT 2 TO

PARTIES' JOINT STATUS REPORT

January 8, 2007

LAW OFFICES
**SONOSKY, CHAMBERS, SACHSE, ENDRESON & PERRY, LLP**
1425 K STREET, NW, SUITE 600
WASHINGTON, DC 20005
TEL (202) 682-0240 | FAX (202) 682-0249
WWW.SONOSKY.COM

MARVIN J. SONOSKY (1909-1997)
HARRY R. SACHSE
REID PEYTON CHAMBERS
WILLIAM R. PERRY
LLOYD BENTON MILLER
DOUGLAS B. L. ENDRESON
DONALD J. SIMON
MYRA M. MUNSON (AK)*
ANNE D. NOTO
MARY J. PAVEL
DAVID C. MIELKE
JAMES E. GLAZE
GARY F. BROWNELL (NM)*
COLIN C. HAMPSON
JAMES T. MEGGESTO
DOUGLAS W. WOLF

MARISSA K. FLANNERY (AK)*
MELANIE B. OSBORNE (AK)*
VANESSA L. RAY-HODGE
WILLIAM F. STEPHENS
ADDIE C. ROLNICK
JENNIFER J. THOMAS (CA)*
KATHERINE E. MORGAN (NE)*
ALEX CLEGHORN (CA)*

OF COUNSEL
ARTHUR LAZARUS, JR.
ROGER W. DUBROCK (AK)*
KAY E. MAASEN GOUWENS (AK)*
MATTHEW S. JAFFE
RICHARD D. MONKMAN (AK)*
AARON M. SCHUTT (AK)*

*NOT ADMITTED IN DC

November 13, 2006

By Email - Original by Mail

Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout Street, 8th Floor
Denver, CO 80294

Re: *Samish Indian Nation v. United States*, No. 02-1383 (Fed. Cl.)

Dear Ms. McCune:

We were disappointed to see the Government's response to Plaintiff's discovery requests. The purpose of these discovery requests was to try to narrow the issues in the case. The Government's responses and its interposition of numerous objections to every request are contrary to both the text and intent of the rules governing discovery and serve only to obfuscate rather than narrow the factual questions at issue at this phase of the case. In our view, the issues and the information sought by the discovery are neither complex nor confusing. The parties should be able to agree on certain fundamental facts and the production of certain basic records. We hope that this can be done by candid discussions with you and agency officials who are familiar with the programs that are the subject of the discovery.

In the interests of trying to resolve these issues, we address here the principal objections raised by the Government.

First, we were frankly surprised that, in response to requests for admission and interrogatories the Government repeatedly asserted that commonly understood words, such as

"some amount," "federal funds," "federal assistance," and "allocation," are "so vague and ambiguous" that Defendant cannot respond. Such an objection likewise has no merit when the request for admission specifically defined the term being used (*e.g.* "received"[1]). Courts have routinely rejected objections made on such grounds and admonished parties "to focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *U.S. ex rel Englund v. Los Angeles County*, 235 F.R.D. 675, 684, 685-86 (E.D. Cal. 2006); *see also Keh v. Americus-Sumter County Hospital Authority,* 2006 WL 1431531 (M.D.Ga. 2006). "The purpose of requests for admission under Rule 36 is to 'reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of the case to the trier of fact.'" *Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 44 (D.Conn. 2004) (citations omitted). "It is not ground for objection that the request is 'ambiguous' . . . Parties should 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.'" *U.S. ex rel Englund*, 235 F.R.D. at 685 (citations omitted). To the extent that the Government has a genuine basis for believing that a particular word or phrase is ambiguous, the Government has an obligation to seek to reach agreement on alternative language that resolves the claimed ambiguity and provides a substantive response. *See U.S. ex rel Englund*, 235 F.R.D. at 685.

Second, there is no merit to the Government's objection that the discovery seeks information that is not relevant to the case. While the Court of Appeals for the Federal Circuit held that the Snyder Act and Indian Self-Determination Act are not, standing alone, money mandating statutes, the claims in this case arise under many other statutes identified in paragraph 30 of the Second Amended Complaint. That the Government may rely on more than one statute to make federal funds available to federally-recognized tribes does not render irrelevant Plaintiff's request for information about the manner in which the Government administered these statutes. Further, the Government's objection that the Plaintiff has "misconstrued" the manner in which the agencies, like the Bureau of Indian Affairs or Indian Health Service, administer the funds appropriated to them, is simply a disagreement on the legal issues in the case. It is not grounds for refusing to respond to discovery requests that seek to determine the manner in which these agencies, in fact, administered the funds provided to them.

More fundamentally, the question of relevance has already been addressed by the Court. In its opinion and order of July 21, 2006, the Court – which had before it the specific discovery now at issue – specifically found that discovery about the manner in which the Government implemented all of these statutes to be relevant to determining whether the United States through "the responsible agencies . . . understood that they were required by statutes or regulations at

---

[1]Indeed, the General Accounting Office in testimony before Congress on the BIA's Distribution of Tribal Priority Allocations, used the term "received" in the same way as we defined that term in Plaintiff's discovery requests. *See BIA's Distribution of Tribal Priority Allocations*, GAO/T-RCED-98-168 at 1 n.1 (Apr. 21, 1998).

issue to pay at least some money to federally-recognized tribes." Opinion at 6. Indeed, the Court stated that discovery on these issues – focusing in particular on TPA – was "strongly 'relevant'" to Plaintiff's claims. *Id.* Given the Court's July 21 decision, Defendant is now obligated to provide substantive responses to those discovery requests and cannot object based on a claim of irrelevance.

Third, the Government cannot refuse to admit or deny a request for admission simply by a bare assertion that it has made a reasonable inquiry for the information and the information known is insufficient to allow it to admit or deny the request. The Government is required to describe what inquiry was in fact made. *See Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1246-47 (9th Cir. 1982); *A Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 254, 256 (C.D.Cal. 2006); *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 3191541 at *2 (N.D. Ill 2006)); *U.S. ex rel Englund v. Los Angeles County*, 235 F.R.D. 675, 685 (E.D. Cal. 2006); *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003). This should include the names and positions of the individuals from whom information was sought, the steps taken to search for and gather information to respond to the request, and the records reviewed in that process.

Fourth, the Government's objections that the discovery requests are "unduly burdensome and overly broad" are also without merit. These objections appear to be predicated on assertions that because the Government did not maintain records in one particular form (such as, for example, by individual tribe for TPA, or by reference to federally-recognized tribes for other programs), the Government cannot respond without reviewing every federal record relating to each such program for each federally-recognized tribe. It is unfathomable that the federal government allocated federal money to and for the benefit of tribes without ever preparing any summary reports or tables showing the allocations made. The Government's burdensomeness objections suggest that the Government may not have asked the right question of agency officials. But a party cannot claim burdensomeness and avoid looking for responsive information that may be readily available by describing the most complex and elaborate process possible for obtaining that information. We believe that if the Government intends to cooperate, with further discussion it should be possible to identify information that is responsive to Plaintiff's requests and which does not impose the burden that Defendant describes.

One thing that would go a long way would be to stipulate on certain basic facts. As an example, the parties should be able to stipulate that all federally-recognized tribes have been allocated some amount of TPA each year. We understand that the Government's legal position is that this is neither relevant nor sufficient under the money-mandating test, but that ultimate question is for the Court to decide. Resolution of these kinds of fact issues would reduce, if not eliminate, the need for discovery.

In short, the discovery requested does not raise the complex, ambiguous or burdensome inquiry contended by the Defendant. We are interested in talking with you about reasonable ways in which responsive information can be provided, and hope that our discussion on November 15 can start that process. If, however, the Government is unwilling to do this, we will have no alternative but to pursue the remedies available under the Rules.

Sincerely,

Anne D Noto for Craig Dorsay

Craig Dorsay
William R, Perry
Anne D. Noto

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No. 02-1383L |
| | ) | (Chief Judge Edward J. Damich) |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

EXHIBIT 3 TO

PARTIES' JOINT STATUS REPORT

January 8, 2007

LAW OFFICES
SONOSKY, CHAMBERS, SACHSE,
ENDRESON & PERRY, LLP
1425 K STREET, NW, SUITE 600
WASHINGTON, DC 20005
TEL (202) 682-0240 | FAX (202) 682-0249
WWW.SONOSKY.COM

MARVIN J. SONOSKY (1909-1997)
HARRY R. SACHSE
REID PEYTON CHAMBERS
WILLIAM R. PERRY
LLOYD BENTON MILLER
DOUGLAS B. L. ENDRESON
DONALD J. SIMON
MYRA M. MUNSON (AK)*
ANNE D. NOTO
MARY J. PAVEL
DAVID C. MIELKE
JAMES E. GLAZE
GARY F. BROWNELL (NM)*
COLIN C. HAMPSON
JAMES T. MEGGESTO
DOUGLAS W. WOLF

MARISSA K. FLANNERY (AK)*
MELANIE B. OSBORNE (AK)*
VANESSA L. RAY-HODGE
WILLIAM F. STEPHENS
ADDIE C. ROLNICK
JENNIFER J. THOMAS (CA)*
KATHERINE E. MORGAN (NE)*
CAROLE A. HOLLEY (AK)*

OF COUNSEL
ARTHUR LAZARUS, JR.
ROGER W. DUBROCK (AK)*
KAY E. MAASEN GOUWENS (AK)*
MATTHEW S. JAFFE
RICHARD D. MONKMAN (AK)*
AARON M. SCHUTT (AK)*

*NOT ADMITTED IN DC

December 15, 2006

**By Email - Original by Mail**

Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout Street, 8th Floor
Denver, CO 80294

Re: *Samish Indian Nation v. United States*, No. 02-1383 (Fed. Cl.)

Dear Ms. McCune:

On November 15, we discussed with you our proposal that the parties undertake to try and resolve discovery disputes informally by scheduling times when we could meet with you and the appropriate government officials to talk about our discovery requests. We further proposed that, in the interests of facilitating resolution of these issues, we focus on only TPA and IHS funding, and defer matters relating to all other programs. At that time, you expressed a willingness to explore this and said you would confer with your clients.

A month has now passed and we have not heard from you – other than your email of December 8 reporting only that you have been having discussions with your clients and hoped to have more information for us this week.

This week has come and gone with no further response from you. Given the Court's order, if we are going to make any progress towards resolving our disputes on the discovery, the Government needs to act. Is the Government willing to schedule meetings or conference calls at

which we can talk with you and appropriate Government officials about our discovery requests regarding TPA and IHS funding? If so, the Government needs to advise us as soon as possible of the names of the officials who would be available for such discussions, as well as possible dates when these discussions or meetings might occur.

Sincerely,

William R. Perry
Anne D. Noto

cc: Craig Dorsay, Esq.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 02-1383L<br>(Chief Judge Edward J. Damich) |

EXHIBIT 4 TO

PARTIES' JOINT STATUS REPORT

January 8, 2007

**U.S. Department of Justice**

Environment and Natural Resources Division

*Devon Lehman McCune*
*Natural Resources Section*
*1961 Stout St., 8th Floor*
*Denver, Colorado 80294*

*devon.mccune@usdoj.gov*
*Telephone (303) 844-1487*
*Facsimile (303) 844-1350*

December 19, 2006

VIA E-MAIL and U.S. POSTAL SERVICE

Anne D. Noto
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
1425 K Street, NW, Suite 600
Washington, DC 20005

Re: *Samish Indian Nation v. United States*, Case No. 02-1383 (Fed. Cl.)

Dear Ms. Noto,

This letter regards our telephone conversation of November 15, 2006, and your letters of November 13, 2006, and December 15, 2006. I have conferred several times with agency counsel with both the Department of the Interior and the Indian Health Service about your proposal that agency officials meet with you to discuss your discovery requests. At this time, the agencies do not believe such meetings would be productive. Interior will provide additional information, in light of your correspondence and believes this information will make such a meeting unnecessary. IHS will also be supplementing its discovery responses to further detail its search for responsive documents, as well as its record-keeping policies, and, therefore, does not believe a meeting or a stipulation regarding IHS funds would be necessary or appropriate.

Your letters clarified some aspects of your discovery requests for Interior. Based on this clarification, Interior has located a number of documents that it believes, coupled with the corresponding congressional appropriations, answer your discovery request with regard to the Bureau of Indian Affairs' ("BIA") Tribal Priority Allocation ("TPA") program. Interior publishes the BIA's budget justifications in a report format every year. These reports contain the President's budget requests for TPA distribution by, among other categories, tribe. As you are aware, the TPA program came into existence in the early 1990s. Interior has copied for you the relevant portions of the BIA's budget justifications from 1993 to the present, and I will mail these documents to you by December 21, 2006. If you should find after reviewing these documents that you would like to see the entire budget justifications, Interior can make the books available at its office. In addition, I note that these are publically available documents and can be found at the Library of Congress and may also be available at other libraries with government holdings.

In your November 13, 2006, letter, you stated that the Government cannot state that it can neither admit nor deny a request for admission based on a lack of information after a reasonable inquiry has been made, but must describe the inquiry made. In our view, the cases you have cited do

not, in fact, stand for that proposition. However, in the interest of trying to resolve our disputes, IHS will provide a more thorough description of its inquiry. We hope to provide this by December 29, 2006. However, as I have mentioned to you previously, many federal employees are on leave at this time of year and, consequently, it is possible there may be some delay. I will keep you informed of any delay. IHS is also continuing to search for responsive documents and I am continuing to consult with the agency to determine if other information that may address some of Plaintiff's concerns is available. If anything further is found, I will provide it as soon as possible.

I hope these responses, in combination with the information the agencies have already provided, will address your concerns so that we may continue to move forward with this case.

Sincerely,

Devon Lehman McCune

cc William R. Perry
Craig J. Dorsay