**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No. 02-1383L |
| | ) | (Chief Judge Edward J. Damich) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

EXHIBIT 1 TO

PARTIES' JOINT STATUS REPORT

January 8, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized tribe, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 02-1383L<br>Chief Judge Edward J. Damich |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**DEFENDANT'S COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFF SAMISH INDIAN NATION'S FIRST SET OF REQUESTS FOR ADMISSIONS AND FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 33, 34, and 36 of the Rules of the United States Court of Federal Claims ("RCFC"), Defendant United States hereby presents a combined responses to Plaintiff Samish Indian Nation's First Set of Requests for Admissions and Plaintiff Samish Indian Nation's First Set of Interrogatories and Request for Production of Documents, dated July 26, 2006.[1]

**STATEMENT OF NON-WAIVER AND RESERVATION OF RIGHTS**

By providing answers to Plaintiff's Discovery Requests, Defendant is not waiving and is hereby expressly reserving: (a) all questions regarding competence, relevance, materiality, privilege and admissibility of the responses, and the subject matter thereof, as evidence for any

[1] On September 18, 2006, this Court granted Defendant's motion for an extension of time in which to respond to Plaintiff's discovery requests.

purpose in any proceeding in this action; and (b) the right to object to the use of any response, or the subject matter thereof, on any ground and in any proceeding in this action.

Defendant's answers to Plaintiff's Discovery Requests are complete and accurate to the best of the knowledge and belief of the persons who worked on this response. Nevertheless, Defendant reserves the right to supplement these answers if additional information is later discovered or identified.

The following objections apply to each discovery request and are to be read as forming a part of the response to each of the individual requests.

## GENERAL OBJECTIONS

1. Defendant objects to the requests to the extent that they seek information on statutes and programs already dismissed by this Court.

2. Defendant objects to the requests to the extent that they seek information that is beyond the scope of litigation and not reasonably calculated to lead to the discovery of relevant evidence.

3. Defendant objects to the requests as unduly burdensome and oppressive to the extent that they seek to require Defendant to search for and identify documents, particularly documents that have been archived or destroyed, according to criteria Defendant and its component agencies and departments do not use in maintaining or organizing files or records for storage or retrieval.

4. Defendant objects to requests seeking identification of "all" records or "any and all documents," "indicating or relating to" a particular topic or document on the grounds that such requests are overbroad, vague, ambiguous, and impose an undue burden and expense.

5. Defendant objects to all the descriptive terms that, due to being under-defined, are open to multiple interpretations, vague and/or too broad, and do not provide a reasonable and objective measure by which: (a) to ascertain the scope of and/or subject matters encompassed by, a Request for Admission; and/or (b) to discern compliance with the response to a Request for Admission or a sub-part therein.

6. Defendant objects to Plaintiff's definitions of "federally-recognized Tribe," "Indian Tribes," and "Tribes" as provided in the instructions to the Discovery Requests and used in the request for admissions and interrogatories. Plaintiff attempts to exclude "tribes, villages, corporations, or other groups of Native people located within the State of Alaska." Plaintiff's Second Amended Complaint did not distinguish the geographic location of any "federally-recognized Tribes," "Indian Tribes," and/or "Tribes" (*i.e.*, differentiating Indian Tribes located in the Lower 48 States, Contiguous 48 states or the Continental United States from those in the State of Alaska). Defendant also objects to Plaintiff's definitions because they are in conflict with the discovery requests and some of the attachments Plaintiff provided. In particular, they conflict with the first request for admissions, which refers to a list that would include all federally-recognized Tribes, including those in Alaska. In addition, Defendant's records do not distinguish between federally-recognized Tribes in Alaska as opposed to other geographic localities. Defendant, therefore, will make objections and provide answers as if the Discovery Requests are requesting information as to all "federally-recognized Tribes," "Indian Tribes," and/or "Tribes" regardless of their geographic location.

7. Defendant objects to the requests as oppressive or unduly burdensome to the extent that they require Defendant to compile, summarize, research, or otherwise analyze

voluminous historical information.

8. The answers contained in this response are made subject to all objections as to competence, relevance, materiality, and admissibility. These answers are subject to all objections that would require the exclusion of any statement, material, or information herein provided if such requests were asked of, or any statement, material, or information provided were made by witnesses present and testifying in court. All such objections are reserved and may be interposed at any time.

9. The production of a document shall not constitute or be interpreted as an express or implied admission as to the truth of the contents contained in that document. This is especially the case with respect to documents prepared by entities other than a federal agency, including State, local, and tribal governmental entities. Rather, documents are produced as they exist in agency files.

10. Defendant objects to the requests to the extent that they seek contentions and information that Defendant has not yet had the opportunity to develop fully, and, to the extent research into some of the issues is not yet complete, all responses made herein are to be considered preliminary in nature and subject to revision as Defendant has the opportunity to conduct further research and discovery. Defendant will make a good faith effort to respond to all of Plaintiff's discovery requests based on the discoverable information presently available to it with the understanding that its responses are not necessarily complete and further research may require revision or supplementation of some responses in accordance with applicable sections of the RCFC.

11. Defendant objects to the definitions and instructions to the extent that they require overly broad discovery responses beyond that required by the RCFC. Although in some cases, as a matter of comity and cooperation, Defendant has or will volunteer information which may go beyond that strictly required under those rules, by doing so Defendant does not waive this

objection. Defendant's responses are provided in accordance with the RCFC irrespective of any definitions and instructions that may accompany the Discovery Requests.

12. Defendant generally objects to Plaintiff's Discovery Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, the deliberative process privilege, and any other applicable privileges recognized in the RCFC. This objection is intended to apply to the requests that seek such information and will not be repeated specifically for each request to which it applies. Defendant, to the extent applicable and possible, has construed each request as requesting only information and/or documents not subject to any applicable protection.

13. No incidental or implied admissions are intended. The fact that Defendant has responded to Plaintiff's discovery requests, or part thereof, should not be taken as an admission that it accepts the discovery requests or that the response or objection thereto constitutes admissible evidence. Similarly, the fact that Defendant has responded to all or part of a request is not intended to and shall not be construed to be a waiver of all or part of any objection to other requests. Defendant's answer(s) to any request(s) herein do not constitute a waiver of its right to object to future additional or supplemental requests regarding the same or similar matters. Should Defendant mistakenly produce otherwise privileged or protected information, it does not thereby waive the privileges or protections applicable to that information.

14. Defendant objects to Plaintiff's requests for discovery on the ground that the requests misconstrue the appropriations Congress makes available to the Department of the Interior ("Interior") to operate Indian programs, including the Snyder Act of November 2, 1921 (25 U.S.C. § 13), the Indian Self-Determination and Education Assistance Act of 1975 ("ISDA") (25 U.S.C. § 450 *et seq.*), as amended by the Education Amendments of 1978 (25 U.S.C. §§ 2001-2019), and the Tribally Controlled Schools Act of 1998 ("TCSA") (25 U.S.C. § 2501 *et seq.*). As a result, the requests ultimately require the production of information that is not

relevant to the case and is not reasonably calculated to lead to admissible evidence. Interior receives, allocates, and spends its appropriated funds under the authority of the Snyder Act, ISDA, and the TCSA. The Snyder Act authorizes the expenditure of appropriations for the "benefit, care, and assistance of the Indians throughout the United States." 25 U.S.C. § 13. The ISDA and TCSA provide further explanation of these purposes and authorize Interior to carry out programs consistent with those functions. The ISDA, for instance, authorizes the Secretary of the Interior to contract with Indian Tribes to transfer the operation of programs for Indians to the Indian Tribes, in promotion of self-determination. 25 U.S.C. § 450f.

Interior receives a single lump-sum appropriation for the operation of Indian programs. *See* Dep't of the Interior, Environment, and Related Agencies Appropriations Act of 2006, Pub. L. 109-54, 119 Stat. 499 (HR 2361). From this appropriation, Interior administers the direct operation of Indian programs and its functions under the Snyder Act, as well as the self-determination contracts under ISDA and the Tribal Priority Allocations ("TPA"). *See* The U.S. Dep't of the Interior Budget Justifications and Performance Information Fiscal Year 2006, Bureau of Indian Affairs, BIA-SUM-1 - BIA-SUM-37, BIA-OIP-1 -BIA-OIP-9, BIA-TPA-1 - BIA-TPA-58. The term TPA refers to an budgetary tool that the Bureau of Indian Affairs uses to categorize and describe how it plans to allocate certain funds from the lump-sum appropriation to provide Indian Tribes for the operation of Indian programs. The Snyder Act and ISDA are the authorities for transferring the TPA designated funds to the Indian Tribes. The funding vehicle the Bureau of Indian Affairs often uses to transfer TPA funds to Indian Tribes is ISDA contracts.

Despite the Court's dismissal of all claims under both the Snyder Act and ISDA on the ground that such claims are not money-mandating, the nature of Interior's lump-sum appropriations will require the agency to answer Plaintiff's request for discovery in a way that encompasses the dismissed claims. *Samish Indian Nation v. United States*, 58 Fed. Cl. 114, 118-19, 120 n.12 (2003), *aff'd*, 419 F.3d 1355 (2005). In this regard, much of the information

encompassed in the request is no longer relevant to the remaining claim and therefore is not reasonably calculated to lead to admissible evidence. Defendant objects to the requests on this ground.

15. Defendant objects to Plaintiff's requests for discovery on the ground that the requests misconstrue Indian Health Service ("IHS") appropriations under the Indian Health Care Improvement Act ("IHCIA"), 25 U.S.C. § 1601 *et seq.*, and as a result, ultimately require production of information no longer relevant in the case and not reasonably calculated to lead to admissible evidence. IHS receives, allocates, and spends its appropriated funds under the authority of both the Snyder Act, 25 U.S.C. § 13, and IHCIA. The Snyder Act authorizes the expenditure of appropriations for the "relief of distress and conservation of health" of American Indians, and IHCIA provides further explanation of these purposes and authorizes IHS to carry out programs consistent with those functions. In addition to these two statutes, the ISDA authorizes IHS to contract with Tribes to transfer the operation of health care programs to the Tribes, in promotion of self-determination.

IHS receives two annual lump-sum appropriations, from which it administers the direct care operations and its functions under IHCIA and the Snyder Act, as well as the self-determination contracts under ISDA. The first lump-sum appropriation, for "Indian Health Services," provides funding for the delivery of health care services to American Indians and Alaska Natives.[2] The second lump-sum appropriation, for "Indian Health Facilities," provides funds for construction and maintenance of primary care and sanitation facilities.[3] Due to both the nature of its authority under the Snyder Act and IHCIA and the lump-sum appropriations it receives, IHS cannot differentiate funds expended under IHCIA from those expended under the

---

[2] *See, e.g.*, Dep't of the Interior, Environment, and Related Agencies Appropriations Act of 2006, Pub.L. 109-54, 119 Stat. 499 (HR 2361).

[3] *Id.*

Snyder Act. Despite the Court's dismissal of all claims under both the Snyder Act and ISDA on the ground that such claims are not money-mandating,[4] the nature of IHS' lump-sum appropriations will require it to answer Plaintiff's request for discovery in a way that encompasses the dismissed claims. In this regard, much of the information encompassed in the request is no longer relevant to the remaining claim. IHS objects to the requests on this ground.

16. Defendant further objects to Plaintiff's requests for discovery on the ground that the misconstrual of IHS' appropriations under the IHCIA incorrectly assumes IHS administers its appropriations for IHCIA programs on a strictly Tribe-by-Tribe or per capita basis to all federally recognized Tribes and their members. Instead, IHS utilizes many different funding methodologies to administer the numerous programs it operates in furtherance of its statutory functions under the Snyder Act and IHCIA. For example, the Division of Grants Operations and Grants Policy obligates funds for grantees, who use those funds to carry out specified, approved activities. These grants are usually awarded on a competitive basis, a process that by its very nature results in fewer than all Tribes receiving a grant, and therefore, the funds are not allocated per capita to each federally recognized Tribe.

Similarly, the Urban Indian Health Program ("UIHP") consists of programs in select urban areas nationwide, and these programs benefit individual American Indians who may not otherwise be eligible for direct services from IHS or who reside outside of any IHS or Tribal service area. Thus, due to the nature of the UIHP, an Urban program may not be serving American Indians from all federally recognized Tribes, but instead, would be serving only those individual American Indians with access to the programs.

As a final example, the Division of Health Professions Support administers programs through which IHS provides scholarship and loan repayment awards to health professionals in

---

[4] *Samish Indian Nation v. United States*, 58 Fed. Cl. 114, 118–19, 120 n.12 (2003), *aff'd Samish Indian Nation v. United States*, 419 F.3d 1355 (2005).

exchange for their agreement to serve with IHS for a specified period of time. Both programs are competitive, and applicants are accepted into the programs based on their individual applications and their discipline. The benefits of the programs are directed toward the health professions and Indian health programs, including IHS, Tribal, and Urban programs, rather than specific Tribes. Although a Tribe or its members may receive an indirect benefit when they are treated by a participating healthcare provider, the awards are not granted to Tribes because of their status as Tribes.

Therefore, Defendant objects to the requests on the ground that the requests mischaracterize the nature of IHS' appropriations, which are administered through numerous programs, often on a basis other than a per capita allotment to each federally recognized Tribe. The requests, therefore, are not reasonably calculated or likely to lead to admissible evidence.

17. Defendant objects to Plaintiff's discovery requests to the extent they request information regarding the program referred to by Plaintiffs throughout as the "Commodity Food Program" does not exist. No such program is authorized or administered by Defendant. Subject to and without waiving this objection, Defendant interprets this request as referring to the United States Department of Agriculture's ("USDA") Food Distribution Program on Indian Reservations ("FDPIR"), authorized pursuant to Section 4(b) of the Food Stamp Act of 1977, 7 U.S.C. § 2013(b) and administered by USDA pursuant to 7 C.F.R. Part 253. As a result, in reviewing and responding to Plaintiff's requests for admissions and interrogatories, Defendant substituted "FDPIR" each time "Commodity Food Program" appeared.

18. Defendant objects to the discovery requests on the ground that they are unduly burdensome and overly broad to the extent that they are intended to prove a negative question. The agencies do not maintain all potentially responsive documents in any one location as a

single unit or units that are readily accessible. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition.

19. Defendant objects to the requests to the extent that they seek documents and information that is public information. To the extent that the requests seek documents that have been transferred to the National Archives or other repositories open to the public, and Defendant objects because those documents are no longer within the possession, custody, and control of the agencies administering the programs referenced in Plaintiff's Complaint and discovery requests.

**SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSIONS**

**Request for Admission No. 1**. Admit that the lists published in the Federal Register in 1980, 1985, 1988, 1993, and 1996 of Indian entities that were recognized and eligible to receive services from the United States, copies of which are attachments 1–5, hereto, accurately identify the Indian Tribes that were federally-recognized by the United States at the time of each list's publication.

**Response to Request for Admission No. 1**. Defendant objects to Plaintiff's definitions of "federally-recognized Tribe," "Indian Tribes," and "Tribes," as stated in general objection 6. In particular, the definitions conflict with this request for admission, which refers to a list of federally-recognized Tribes, including those in Alaska. In addition, Defendant's records do not necessarily distinguish between federally-recognized Tribes in Alaska as opposed to other geographic localities.

Defendant objects to the phrases "lists published" and "accurately identify the Indian Tribes that were federally-recognized" as so vague and ambiguous that Defendant can neither

admit nor deny the request.

Subject to and without waiving the foregoing objections, denied.

**Request for Admission No. 2**. Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time during the period 1969 through 1996 by virtue of being a federally-recognized Tribe.

**Response to Request for Admission No. 2**. Defendant objects to the phrases "receive," "some amount," "federal funds," "federal assistance," and "at some time" as so vague and ambiguous that Defendant can neither admit nor deny the request. Defendant further objects to "the period 1969 through 1996" as not wholly applicable to all statutes under which Plaintiff seeks discovery because certain statutes were not enacted until after 1969.

Defendant objects to this request because no Tribe received federal funds or federal assistant solely by virtue of being a federally-recognized Tribe.

In addition, Defendant objects to this request as being overly broad and burdensome. For some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records. For example, the Low Income Home Energy Assistance Program and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the

list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant incorporates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996. It would be impossible for Defendant to determine whether every federally-recognized Tribe has ever received any kind of federal funding or assistance during that twenty-seven year period. In addition, Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the Request for Admission based only on the basis of the United States Department of the Interior Bureau of Indian Affairs, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, and the Department of Labor's Comprehensive Employment and Training Act of 1973 and Job Training Partnership Act.

Subject to and without waiving the foregoing objections, deny.

**Request for Admission No. 3.** Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time following the Tribe's federal recognition through 1996 under one or more of the statutes identified in paragraph 30 of the

Complaint.

**Response to Request for Admission No. 3**. Defendant objects to the phrases "received," "some amount," "federal funds," "federal assistance," and "at some time" as so vague and ambiguous that Defendant can neither admit nor deny the request.

Defendant restates its objections that this request is unduly burdensome and overly broad. Defendant objects to this request for admission on the basis that, for some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission pose an undue burden and expense to conduct a search to identify responsive records. For example, the Low Income Home Energy Assistance Program and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant restates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996 for all statutes listed in Plaintiff's complaint. Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to

Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the Request for Admission based only on the basis of the United States Department of the Interior Bureau of Indian Affairs, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, the Comprehensive Employment and Training Act of 1973, and the Job Training Partnership Act.

For the Tribal Priority Allocation program, Defendant objects to this interrogatory because it addresses "the statutes identified in paragraph 30 of the Complaint." The Tribal Priority Allocation is not provided by for statute, but is the Bureau of Indian Affairs' means of distributing its congressional allocations. Defendant restates its general objections numbers 14 and 15 on the basis that this request is not reasonably calculated to lead to admissible evidence.

Subject to and without waiving the foregoing objections, deny.

**Request for Admission No. 4.** Admit that every federally-recognized Tribe received some amount of federal funds at some time after the Tribe's federal recognition through 1996 under the Tribal Priority Allocation program (TPA), described in paragraph 30.a of the Complaint.

**Response to Request for Admission No. 4.** Defendant objects to the phrases "received," "some amount," "federal funds," "federal assistance," "at some time," and "after the Tribe's federal recognition" as so vague and ambiguous that Defendant can neither admit nor deny the request.

Defendant restates its general objection number 14 and reiterates that this request is not reasonably calculated to lead to admissible evidence.

Defendant restates its objection that this request is unduly burdensome and overly broad. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Defendant does not retain its files by individual Tribe throughout the country and, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Subject to and without waiving the foregoing objections, Defendant states that a reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to admit or deny this Request for Admission.

**Request for Admission No. 5**. Admit that all Housing Authorities established by federally-recognized Tribes that were recognized as of 1980 and that requested financial assistance under the Housing Act of 1937 as amended as described in paragraph 30.b. of the Complaint, received some amount of federal funds under that Act at some time during the period after such request through 1996.

**Response to Request for Admission No. 5**. Defendant objects to the phrases "requested," "received," "some amount," "federal funds," and "some time" as being as so vague and ambiguous that Defendant can neither admit nor deny the request. Defendant restates its objections that this request is unduly burdensome and overly broad because the United States Housing Act of 1937 covers a variety of federal funds and programs. Subject to and without waiving the foregoing objections, Defendant is unable at this time to admit or deny this request for admission. Defendant will attempt to supplement this response with additional information,

which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

**Request for Admission No. 6**. Admit that during the period 1976 through 1996, the Indian Health Service allocated its federal Indian health care funds to benefit and serve all federally-recognized Tribes and their members.

**Response to Request for Admission No. 6**. Defendant objects to the phrases "allocated," "federal Indian health care funds," and "to benefit and serve" as so vague and ambiguous that IHS can neither admit nor deny the request. Defendant restates its genearl objections number 15 and 16, reiterating that this request is unduly burdensome and overly broad, that it requires the production of information no longer relevant to the case because it relates to the dismissed ISDA claim, and that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act.

Subject to and without waiving the foregoing objections, deny.

**Request for Admission No. 7**. Admit that every federally-recognized Tribe that requested financial assistance under the Low Income Home Energy Assistance Program ("LIHEAP") described in Paragraph 30.k. of the Complaint, received some amount of federal assistance under that program at some time after such request.

**Response to Request for Admission No. 7**. Defendant objects to the phrases "requested," "some amount," "federal assistance," and "some time" as being as so vague and ambiguous that Defendant can neither admit nor deny the request. Defendant restates its objections that this request is unduly burdensome and overly broad because Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income

Americans and not just to federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information. Consequently, Defendant does not organize its records or files according to whether a Tribe is federally-recognized.

Subject to and without waiving the foregoing objections, and subject to the requirement that the Tribes properly applied for financial assistance and met all of the various requirements under the regulations and application requirements, admit.

**Request for Admission No. 8**. Admit that every federally-recognized Tribe that sought federal assistance under the Commodity Food Program described in paragraph 30.1 of the Complaint, received some amount of federal assistance under that program.

**Response to Request for Admission No. 8**. Defendant objects to the phrases "sought," "federal assistance," and "some amount," as being as so vague and ambiguous that Defendant can neither admit nor deny the request. In addition, Defendant restates its general objection number 17, reiterating that this request for admission is not reasonably calculated to lead to admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that participation in FDPIR is not compulsory for eligible Tribes nor is it the only method for tribal households to receive benefits. Pursuant to 7 C.F.R. §§ 253.2(i)(2) and 253.4(e), the USDA must determine that an applicant Tribe is "capable of effectively administering" FDPIR on all or part of a reservation prior to participation approval. Defendant admits that Defendant is unaware

of any Tribe that applied for and was denied FDPIR participation since the program's inception.

**Request for Admission No. 9**. Admit that all federally-recognized Tribes that sought federal assistance under one or both job training programs established by the Comprehensive Employment and Training Act of 1973 ("CETA"), and the Job Training Partnership Act ("JTPA"), described in paragraph 30.n. of the Complaint, received some amount of federal funds or federal assistance under those programs.

**Response to Request for Admission No. 9**. Defendant objects to the phrases "sought," "federal assistance," "some amount," and "federal funds" as being as so vague and ambiguous that Defendant can neither admit nor deny the request. Subject to and without waiving the foregoing objections, deny.

**SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

**Interrogatory No. 1**. If your response to Request for Admission No 1 is a denial,

(a) Explain the reason for your denial;

(b) Produce copies of the lists by which the United States identified the Indian Tribes that were recognized by the United States as eligible to receive services provided by the United States to Indians because of their status as Indians, in the years 1980, 1985, 1990, 1993 and 1996.

**Response to Interrogatory No. 1**.

(a) The lists of Indian entities published in the *Federal Register* Plaintiff refers to in its Request for Admissions No. 1 represent the best efforts of the Department of the Interior to identify federally recognized Indian Tribes at the time the lists were created. The various lists

that the Department developed over time represent a long, evolving process and did not always include every federally recognized Indian Tribe. For instance, the Department did not include any of the federally recognized Alaskan entities in the first list that it published as a notice in the *Federal Register*. Rather, the notice stated that the Alaskan entities would be published at a latter date. 44 Fed. Reg. 7,235 (Feb. 6, 1979). The Alaskan entities also were not included in the 1980 and 1981 lists the Department published. 45 Fed. Reg. 27,828 (Apr. 24, 1980) and 46 Fed. Reg. 35,361 (July 8, 1981). The federally recognized Alaskan entities were first included on a published list in 1982. 47 Fed. Reg. 53,130 (Nov. 24, 1982). For a discussion of the Alaskan entities tribal status, see the Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers Solicitor's Opinion. Sol. Op. M-36975, at 46-48 (Jan. 11, 1993). In addition to the lists not always being conclusive, mistakes were occasionally made and corrections were necessary. For a discussion of mistakes made on the list, see Improvements Needed in Tribal Recognition Process, GAO-02-49 at 23 (Nov. 2001).

Lists of federally recognized Indian Tribes did not necessarily take on the significance associated with them today until Congress confirmed the authority and responsibility of the Secretary of the Interior to establish a list of Indian Tribes and mandated that such lists be published annually through passage of the Federally Recognized Indian Tribe List Act of 1994 (List Act) (codified at 25 U.S.C. § 479a *et seq.*). Prior to 1994, numerous lists were created and used over time by the Department and other divisions of the Federal Government to identify tribal entities. These tribal lists comprise public and internal memorandums, which often also included non-federally recognized Indian groups. Some of the early tribal lists include: 1) Charles J. Kappler, Indian Affairs: Laws and Treaties Vol. 1, at 1021-1046 (1904); 2) Felix S. Cohen, Handbook of Federal Indian Law, at 457-484 (1942); 3) Theodore H. Hass, Ten Years of Tribal Government Under I.R.A., at 21-34 (1947); 4) H.R. Rep. No. 2503, at 722-1042 (1953); 5) Department of the Interior, Bureau of Indian Affairs Memorandum "Tribal Organizations:

Indian Reorganization Act; Oklahoma Indian Welfare Act; Other Organization; Unorganized" (July 21, 1966); 6) Department of the Interior, Bureau of Indian Affairs Memorandum "Organizational Status of Federally Recognized Indian Entities" (Dec. 5, 1969); 7) American Indians And Their Federal Relationship: Plus a Partial Listing of Other United States Indian Groups, United States Department of the Interior, Bureau of Indian Affairs (March 1972); and 8) Governing Bodies of Federally Recognized Indian Groups (Excluding Alaska), United States Department of the Interior, Bureau of Indian Affairs (March 1978).

(b) Defendant objects to this request for production because any lists produced by United States pertain solely to eligibility for services and do not entitle Tribes to services or assistance based solely on tribal status.

Despite this objection, Defendant is in possession of the following documents that may be responsive and has provided copies of those documents to Plaintiff:

I. Department *Federal Register* Notices of Federally Recognized Indian Entities. The Department published the following notices of federally recognized Indian entities in the *Federal Register*:

1. 44 Fed. Reg. 7,235 (Feb. 6, 1979);
2. 45 Fed. Reg. 27,828 (Apr. 24, 1980);
3. 46 Fed. Reg. 35,361 (July 8, 1981);
4. 47 Fed. Reg. 53,130 (Nov. 24, 1982);
5. 48 Fed. Reg. 56,862 (Dec. 23, 1983);
6. 50 Fed. Reg. 6,055 (Feb. 13, 1985);
7. 51 Fed. Reg. 25,115 (July 10, 1986);
8. 53 Fed. Reg. 52,829 (Dec. 29, 1988);
9. 58 Fed. Reg. 54,364 (Oct. 21, 1993);
10. 60 Fed. Reg. 9,250 (Feb. 16, 1995);
11. 61 Fed. Reg. 58,211 (Nov. 13, 1996);
12. 62 Fed. Reg. 55,270 (Oct. 23, 1997);
13. 63 Fed. Reg. 71,941 (Dec. 30, 1998);
14. 65 Fed. Reg. 13,298 (Mar. 12, 2000);
15. 67 Fed. Reg. 46,328 (July 12, 2002);
16. 68 Fed. Reg. 68,180 (Dec. 5, 2003); and
17. 70 Fed. Reg. 71,194 (Nov. 25, 2005).

The Department did not publish a notice of federally recognized Indian entities in 1990.

II. Early Department Publish Lists of Indian Entities and Groups

1. Charles J. Kappler, Indian Affairs: Laws and Treaties Vol. 1, at 1021-1046 (1904) (copy of relevant section);
2. Felix S. Cohen, Handbook of Federal Indian Law, at 457-484 (1942) (copy of relevant section);
3. Theodore H. Hass, Ten Years of Tribal Government Under I.R.A., at 21-34 (1947)(copy of relevant section);
4. H.R. Rep. No. 2503, at 722-1042 (1953)(copy of relevant section);
5. Department of the Interior, Bureau of Indian Affairs Memorandum "Tribal Organizations: Indian Reorganization Act; Oklahoma Indian Welfare Act; Other Organization; Unorganized" (July 21, 1966);
6. Department of the Interior, Bureau of Indian Affairs Memorandum "Organizational Status of Federally Recognized Indian Entities" (Dec. 5, 1969);
7. American Indians And Their Federal Relationship: Plus a Partial Listing of Other United States Indian Groups, United States Department of the Interior, Bureau of Indian Affairs (March 1972); and
8. Governing Bodies of Federally Recognized Indian Groups (Excluding Alaska), United States Department of the Interior, Bureau of Indian Affairs (March 1978).

**Interrogatory No. 2**. If your response to Request for Admission No. 2 is a denial, identify each federally-recognized Tribe that did not receive any federal funds or federal assistance at any time during the period 1969 through 1996 and state the reason why each such Tribe did not receive any such funds or assistance.

**Response to Interrogatory No. 2**. Defendant objects to the phrases "federal funds" and "federal assistance" as so vague and ambiguous that Defendant can not properly respond to the request.

Defendant objects to this request because no Tribe receives federal funds or federal assistance solely by virtue of being a federally-recognized Tribe.

Defendant objects to this request as being overly broad and burdensome. For some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden

and expense to conduct a search to identify responsive records. For example, the LIHEAP and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant restates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996. It would be impossible for Defendant to determine whether every federally-recognized Tribe has ever received any kind of federal funding or assistance during that twenty-seven year period. In addition, Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the interrogatory and request for production based only on the basis of the United States Department of the Interior Bureau of Indian Affairs, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, the United States' Department of Labor's Comprehensive Employment and Training Act of 1973 and Job Training Partnership Act.

For the Tribal Priority Allocation program and other Indian programs administered by

Interior, Defendant objects to this interrogatory because no Tribe receives funding through the programs by virtue of being a federally-recognized Indian Tribe. Defendant restates its objections that this request is unduly burdensome and overly broad. The request for documents is overly broad and burdensome in that it seeks responsive materials to prove a negative question. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Any responsive documents are not maintained in any one location as a single unit or units that are readily accessible. Responding to this interrogatory and request for production would require Defendant to search all of its documents for every Tribe, including a document storage facility in Lenexa, Kansas, where potentially responsive documents may have been sent for storage alongside thousands of non-related documents. Such responsive documents, however, are not retained in a single filing system. Defendant would have to compile all of these records for every federally-recognized Tribe over the entire time period in order to develop a list of all federally-recognized Tribes and their level of funding to determine whether any Tribe has not received any funding. Doing so would require great time, effort, and expense. In addition, because of the nature and variety of Indian Tribes and programs, compilation of a single list would be exceedingly difficult, if not impossible. A reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to respond to this interrogatory. Responsive documents are not available. Interior does, however, make public the total distribution of TPA funds per year at a macro level. These figures are contained in the publically available Budget Justifications for the Bureau of Indian Affairs.

For the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that, at this time, Defendant is unable to provide a list of

Tribes that did not receive funding pursuant to these programs because the Department of Housing and Urban Development disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. Defendant is, however, investigating whether some list of Tribes that did receive funding or assistance under the United States Housing Act of 1937 could be provided. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory and request for documents. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

With regard to the IHCIA, Defendant objects to this interrogatory on the ground that it is unduly burdensome and overly broad, and on the grounds states in general objections numbers 15 and 16. To comply with this interrogatory and request for production would require several steps: (1) each IHS program that operates under IHCIA, such as the Division of Grants Operations and Grants Policy, must identify the federally recognized Tribes that received funding through that program for each of the twenty years during 1976–1996,[5] which in and of itself presents a large burden due to the age of the documentation, which would most likely be archived in the Federal Records Center if it has not been destroyed; (2) to the extent each of the programs operating pursuant to IHCIA are able to generate such a list, IHS must consolidate the lists from those programs; (3) IHS must then compare the consolidated list with the Bureau of Indian Affair's list of federally recognized Tribes for each of the twenty years to determine which federally recognized Tribes did not receive any funding at any time during the period of 1976–1996; and finally, (4) for each of the Tribes that did not receive funding for 1976–1996,

[5] As discussed above, generating such lists presents a special problem for programs such as the UIHP and the Scholarship and Loan Repayment Programs that do not provide funding directly to Tribes or on a Tribe-by-Tribe basis.

IHS must then determine if the reasons discussed above, such as the competitive nature of the grants program, sufficiently explains the lack of funding to those Tribes, or whether any of the Tribes did not receive funding for other reasons specific to that Tribe. The number of years involved, as well as the nature of IHS appropriations, make compliance with this request unduly burdensome and overly broad. In addition, IHS has been undergoing procedures to close out FY 2006 and open FY 2007, and removing employees from this necessary task to collect the information and documents requested would impair the IHS' ability to perform these crucial tasks.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant will produce a list of "Expired Grants" for the period of 1990–1996. This list was generated using the database maintained by the Division of Grants Operations and Grants Policy. However, the database only contains information dating back to 1990. Since the computer database does not contain information prior to 1990, generating a list of grants from years 1976–1989 would require a review of the actual grant files, which are currently stored at the Federal Records Center. The list shows grantees, including Tribes, Tribal organizations, and other entities such as colleges and universities, that were awarded grants during each of the fiscal years from 1990–1996 and that have since expired. This list shows the award of 6 grants in 1990, 18 in 1991, 98 in 1992, 186 in 1993, 277 in 1994, 333 in 1995, and 234 in 1996, demonstrating that fewer than all Tribes received funding from IHS in those years.

Furthermore, pursuant to IHS policy for newly-recognized Tribes, these Tribes will not receive funding from IHS until after Congress specifically appropriates monies for the benefit of these Tribes and their members.

For LIHEAP, Defendant is unable to provide a list of federally-recognized Tribes that did not receive funding because Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income Americans and not just to

federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information. Consequently, Defendant does not organize its records or files according to whether a Tribe is federally-recognized. Subject to and without waiving the foregoing objections, Defendant will produce the relevant portions of the Department of Health and Human Services' LIHEAP Reports to Congress for the fiscal years 1982–1996. These reports contain, *inter alia*, an introduction that explains how the Department awarded funds to direct-grant Indian Tribes through either Decennial Census data or Tribal-State agreements, and the amount of LIHEAP funds awarded to direct-grantee Indian Tribes, by Indian Tribe or tribal organization, by State.

As to the Commodity Food Program, Defendant restates its general objection number 17 and reiterates that this interrogatory is not reasonably calculated to lead to admissible evidence. Subject to and without waiving the foregoing objections, Defendant states that FDPIR may be made available through approved Tribes acting as State agencies to enable low income households on or near reservations and in the State of Oklahoma to receive USDA donated commodities in lieu of and as an alternative to household participation in the Food Stamp Program, authorized pursuant to the Food Stamp Act of 1977, 7 U.S.C. § 2011, *et. seq*. Defendant states that FDPIR was statutorily established in 1977, with federal enabling regulations codified in 1979. Defendant is not aware of any eligible Tribe which applied for and was denied participation in FDPIR participation since the Program's authorization. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of eligible Tribes that might have been denied FDPIR participation. The Food and Nutrition Service ("FNS"),the USDA agency which administers FDPIR, requires

retention of records which might include such information for a maximum period of ten (10) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, 37 Food Distribution Division Subject Files. Subject to and without waiving the foregoing objections, Defendant will produce a list of eligible Tribes which applied for and were approved to participate in FDPIR beginning in October 1988 to the present.

Subject to and without waiving the foregoing objections, Defendant states that participation in WIC as a State agency is not compulsory for eligible Tribes. Tribes seeking to act as State agencies in delivering WIC benefits to eligible tribal members, must submit and receive approval for a State plan of operation. 7 C.F.R. § 246.4. Eligible tribal members may apply for and be certified for participation in WIC as administered by the respective State and local agencies pursuant to 7 C.F.R. § 246.7. Defendant is not aware of any eligible Tribe which applied for and was denied WIC participation since 1973 at which time eligible Tribes were permitted statutorily to participate in WIC as State agencies. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of all eligible Tribes that were denied WIC participation. The FNS, the USDA agency which administers WIC, requires retention of records which might include such information for a maximum period of fifteen (15) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, Special Nutrition Programs, Supplemental Food Programs Division - Policy and Program Development Branch Subject Files. Thus, Defendant will produce a list of eligible Tribes which applied for and have been approved to participate in WIC from 1975 to the present.

Subject to and without waiving the foregoing objections, Defendant states with respect to the Food Stamp Program on Indian Reservations, authorized pursuant to Section 4(b) of the Food

Stamp Program of 1977 U.S.C. § 2013(b) and administered by USDA pursuant to 7 C.F.R. Part 281. Defendant has neither received nor denied an application for participation in this Program since its 1977 statutory authorization and 1979 regulatory codification. As a result, the Program is non-operational.

For the CETA and JTPA programs, eligibility for grants was not conditioned upon federal recognition of the applicant Tribes. Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Labor does not maintain records of unfunded grant applications received under the CETA or the JTPA. According to the applicable federal system of records disposition schedule, General Records Schedule 3, "Procurement, Supply and Grant Records," Item 13, Unsuccessful Grant Application Files, these records are retained for a period of three years then destroyed. (*See* http://www.archives.gov/records-mgmt/ardor/records-schedules.html). Defendant has been able to locate a partial list of Tribes which received financial assistance under these programs in 1984 and 1996–1997, and these lists are being produced. The list includes federally recognized and non-federally-recognized Tribes. Defendant is continuing to search its files and records and if other such lists or other data is located, Defendant will provide them to Plaintiff.

Subject to and without waiving the foregoing objections, Defendant states that CETA funds for job training grants to Indian Tribes were allocated among State and federal reservations according to a formula based upon unemployment data. To qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer a program. *See* 29 C.F.R. §§ 96.42(b)&(c) (1976). Similarly, JTPA funds for Native American training programs were made available to Tribes on federal or State reservations. JTPA, 29 U.S.C. § 1671(c)(1)(A) (1988). JTPA funds were allocated among geographic service areas according to a formula based on unemployment and poverty data. 20 C.F.R. § 632.171 (1986). Designation of grantees for these

funds were not dependent upon status as a federally recognized Tribe. Tribes were required to meet minimum population and grant size requirements and to demonstrate their capability to administer a program. 20 C.F.R. §§ 632.10(b)&(c); 632.11(a)(4) (1986).

**Interrogatory No. 3**. If your response to Request for Admission No. 3 is a denial, identify each federally-recognized Tribe that received no federal funds or federal assistance under the statutes listed in paragraph 30 of the Complaint following federal recognition through 1996, and state the reason why each such Tribe did not received any such funds or assistance.

**Response to Interrogatory No. 3**. Defendant objects to the phrases "federal funds" and "federal assistance" as so vague and ambiguous that Defendant can not properly respond to the request.

In addition, Defendant objects to this request as being overly broad and burdensome. For some of the programs relevant to this litigation, the agencies do not organize their files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records. For example, the Low Income Home Energy Assistance Program and the Job Training Programs do not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for these programs. Accordingly, for those programs, a search to determine whether all federally-recognized Tribes received funds would require Defendant to search all its files in all locations for all years in the time period for each Tribe that received funding in order to determine which Tribes received funding during the time period and compare that list to the list of federally-recognized Tribes for every year in question. Such a request is unduly burdensome.

Defendant restates its general objection numbers 6, 14, 15, 16, and 17, and reiterates that this request for admission is not reasonably calculated to lead to admissible evidence.

Defendant also objects to this request as overly broad and burdensome because it refers

to any funding or federal assistance given by any government agency at any time during the period of 1969 and 1996. It would be impossible for Defendant to determine whether every federally-recognized Tribe has ever received any kind of federal funding or assistance from any government agency or department during that twenty-seven year period. In addition, Plaintiff represented to the Court in its Report on Why Discovery Should Be Permitted Prior to Responding to Defendant's Motion to Dismiss that it sought discovery on a limited basis and only on certain statutes listed in the Second Amended Complaint. Accordingly, Defendant answers the interrogatory and request for production based only on the basis of the United States Department of the Interior Bureau of Indian Affairs' TPA program, the Department of Housing and Urban Development, the Department of Health and Human Services Indian Health Service, the Department of Health and Human Services Low Income Home Energy Assistance Program, the United States Department of Agriculture Commodity Food Program, and the Department of Labor's Comprehensive Employment and Training Act of 1973 and Job Training Partnership Act.

For the Tribal Priority Allocation program, Defendant objects to this interrogatory because no Tribe receives funding through the TPA program by virtue of being a federally-recognized Indian Tribe. Defendant restates its objections that this request is unduly burdensome and overly broad. The request for documents is overly broad and burdensome in that it seeks responsive materials to prove a negative question. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Any responsive documents are not maintained in any one location as a single unit or units that are readily accessible. Responding to this interrogatory and request for production would require Defendant to search all of its documents for every Tribe, including a document storage facility in Lenexa,

Kansas, where potentially responsive documents may have been sent for storage alongside thousands of non-related documents. Such responsive documents, however, are not retained in a single filing system. Defendant would have to compile all of these records for every federally recognized Tribe over the entire time period in order to develop a list of all federally-recognized Tribes and their level of funding to determine whether any Tribe has not received any funding. Doing so would require great time, effort, and expense. In addition, because of the nature and variety of Indian Tribes and programs, compilation of a single list would be exceedingly difficult, if not impossible. A reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to respond to this interrogatory. Responsive documents are not available. Interior does, however, make public the total distribution of TPA funds per year at a macro level. These figures are contained in the publically available Budget Justifications for the Bureau of Indian Affairs.

For the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that, at this time, Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Housing and Urban Development disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. Defendant is, however, investigating whether some list of Tribes that did receive funding or assistance under the United States Housing Act of 1937 could be provided. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory and request for documents. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

With regard to the Indian Health Care Improvement Act ("IHCIA"), Defendant further objects to this interrogatory on the ground that it is unduly burdensome and overly broad and on

the grounds stated in general objections 15 and 16. To comply with this Interrogatory and Request for Production would require several steps: (1) each IHS program that operates under IHCIA, such as the Division of Grants Operations and Grants Policy, must identify the federally recognized Tribes that received funding through that program for each of the twenty years during 1976–1996,[6] the applicable period under IHCIA, which in and of itself presents a large burden due to the age of the documentation, which would most likely be archived in the Federal Records Center if it has not been destroyed; (2) to the extent each of the programs operating pursuant to IHCIA is able to generate such a list, IHS must consolidate the lists from those programs; (3) IHS must then compare the consolidated list with the Bureau of Indian Affair's list of federally-recognized Tribes for each of the twenty years to determine which federally recognized Tribes did not receive any funding at any time during the period of 1976–1996; and finally, (4) for each of the Tribes that did not receive funding for 1976–1996, IHS must then determine if the reasons discussed above, such as the competitive nature of the grants program, sufficiently explains the lack of funding to those Tribes, or whether any of the Tribes did not receive funding for other reasons specific to that Tribe. The number of years involved, as well as the nature of IHS appropriations, make compliance with this request unduly burdensome and overly broad. In addition, IHS has been undergoing procedures to close out FY 2006 and open FY 2007, and removing employees from this necessary task to collect the information and documents requested would impair the Agency's ability to perform these crucial tasks.

Subject to and without waiving the foregoing objections, IHS responds as follows: IHS will produce a list of "Expired Grants" for the period of 1990–1996. This list was generated using the database maintained by the Division of Grants Operations and Grants Policy.

---

[6] As discussed above, generating such lists presents a special problem for programs such as the UIHP and the Scholarship and Loan Repayment Programs that do not provide funding directly to Tribes or on a Tribe-by-Tribe basis.

However, the database only contains information dating back to 1990. Since the computer database does not contain information prior to 1990, generating a list of grants from years 1976–1989 would require a review of the actual grant files, which are currently stored at the Federal Records Center. The list shows grantees, including Tribes, Tribal organizations, and other entities such as colleges and universities, that were awarded grants during each of the fiscal years from 1990–1996 and that have since expired. This list shows the award of 6 grants in 1990, 18 in 1991, 98 in 1992, 186 in 1993, 277 in 1994, 333 in 1995, and 234 in 1996, demonstrating that less than all Tribes received funding from IHS in those years.

Furthermore, pursuant to IHS policy for newly-recognized Tribes, these Tribes will not receive funding from IHS until after Congress specifically appropriates monies for the benefit of these Tribes and their members.

For LIHEAP, Defendant is unable to provide a list of federally-recognized Tribes that did not receive funding because Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income Americans and not just to federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information. Consequently, Defendant does not organize its records or files according to whether a Tribe is federally-recognized. Subject to and without waiving the foregoing objections, Defendant is producing relevant portions of the Department of Health and Human Services' LIHEAP Reports to Congress for the fiscal years 1982–1996. These reports contain, *inter alia*, an introduction that explains how the Department awarded funds to direct-grant Indian Tribes through either Decennial Census data or Tribal-State agreements, and the amount of LIHEAP funds awarded to direct-grantee Indian Tribes, by Indian Tribe or tribal organization,

by State.

As to the Commodity Food Program, Defendant restates its general objection number 17. Subject to and without waiving the foregoing objections, Defendant states that participation in FDPIR is not compulsory for eligible Tribes nor is it the only method for tribal households to receive benefits. Eligible tribal households may apply for and participate in the Food Stamp Program, authorized pursuant to the Food Stamp Act of 1977, 7 U.S.C. § 2011, *et seq.* and administered by the respective State agency. No household may participate in both FDPIR and the Food Stamp Program administered by the State agency. Pursuant to 7 C.F.R. §§ 253.2(i)(2) and 253.4(e), Defendant must determine that an applicant Tribe is "capable of effectively administering" FDPIR on all or part of a reservation or in the State of Oklahoma prior to participation approval. Defendant is not aware of any eligible Tribe which applied for and was denied FDPIR participation. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of eligible Tribes that might have been denied FDPIR participation. FDPIR was not statutorily established until 1977, with federal enabling regulations codified in 1979. The FNS,the USDA agency which administers FDPIR, requires retention of records which might include such information for a maximum period of ten (10) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, 37 Food Distribution Division Subject Files. Thus, Defendant will produce a list of eligible Tribes which applied for and were approved to participate in FDPIR beginning in October 1988 to the present.

Subject to and without waiving the foregoing objections, Defendant states that with respect to the Special Supplemental Nutrition Program for Women, Infants and Children ("WIC"), authorized pursuant to Section 17 of the Child Nutrition Act of 1966, 42 U.S.C. § 1786, and administered by USDA pursuant to 7 C.F.R. Part 246. Participation in WIC as a State

agency is not compulsory for eligible Tribes. Tribes seeking to act as State agencies in delivering WIC benefits to eligible tribal members, must submit and receive approval for a State plan of operation. 7 C.F.R. § 246.4. Eligible tribal members may apply for and be certified for participation in WIC as administered by the respective State and local agencies pursuant to 7 C.F.R. § 246.7. Defendant is not aware of any eligible Tribe which applied for and was denied WIC participation since 1973 at which time eligible Tribes were permitted statutorily to participate in WIC as State agencies. However, due to the passage of time and record retention policies, Defendant is unable to provide a comprehensive list of all eligible Tribes that were denied WIC participation. The FNS, the USDA agency which administers WIC, requires retention of records which might include such information for a maximum period of fifteen (15) years pursuant to FNS Instruction 270-1, Revision 2, Change 9, Revised General Records Schedules and Agency Schedules, 4/17/96, Exhibit H, Program Records Schedules, Food and Consumer Service, Special Nutrition Programs, Supplemental Food Programs Division - Policy and Program Development Branch Subject Files. Thus, Defendant will produce a list of eligible Tribes which applied for and have been approved to participate in WIC from 1975 to the present.

Subject to and without waiving the foregoing objections, Defendant states with respect to the Food Stamp Program on Indian Reservations, authorized pursuant to Section 4(b) of the Food Stamp Program of 1977 U.S.C. § 2013(b) and administered by USDA pursuant to 7 C.F.R. Part 281. Defendant has neither received nor denied an application for participation in this Program since its 1977 statutory authorization and 1979 regulatory codification. As a result, the Program is non-operational.

For the CETA and JTPA programs, eligibility for grants was not conditioned upon federal recognition of the applicant Tribes. Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Labor does not maintain records of unfunded grant applications received under the CETA or the JTPA.

According to the applicable federal system of records disposition schedule, General Records Schedule 3, "Procurement, Supply and Grant Records," Item 13, Unsuccessful Grant Application Files, these records are retained for a period of three years then destroyed. (*See* http://www.archives.gov/records-mgmt/ardor/records-schedules.html). Defendant has been able to locate a partial list of Tribes which received financial assistance under these programs in 1984 and 1996–1997, and these lists are being produced. The list includes federally recognized and State recognized Tribes. Defendant is continuing to search its files and records and if other such lists or other data is located, Defendant will make them available.

Subject to and without waiving the foregoing objections, Defendant states that CETA funds for job training grants to Indian Tribes were allocated among State and federal reservations according to a formula based upon unemployment data. To qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer a program. *See* 29 C.F.R. 96.42(b)&(c) (1976). Similarly, JTPA funds for Native American training programs were made available to Tribes on federal or State reservations. JTPA, 29 U.S.C. § 1671(c)(1)(A) (1988). JTPA funds were allocated among geographic service areas according to a formula based on unemployment and poverty data. 20 C.F.R. § 632.171 (1986). Designation of grantees for these funds were not dependent upon status as a federally recognized Tribe. Tribes were required to meet minimum population and grant size requirements and to demonstrate their capability to administer a program. 20 C.F.R. §§ 632.10(b)&(c); 632.11(a)(4) (1986).

**Interrogatory No. 4**. If your response to Request for Admission No. 4 is a denial, identify each federally-recognized Tribe that did not receive such funding and state the reason why each such Tribe did not receive such funding.

**Response to Interrogatory No. 4**. Defendant objects to the terms "funding" and "receive" as being so vague and ambiguous that Defendant can not properly respond to the

request.

Responsive documents for every federally recognized Indian Tribe are not available. The request for documents is overly broad and burdensome in that it seeks responsive materials to prove a negative question. Presently, there are 561 federally-recognized Tribes, and this figure has changed over time. Moreover, the request spans 28 years. Defendant, therefore, cannot determine whether every federally-recognized Tribe has received some amount of federal funds at some point after its recognition. Any responsive documents are not maintained in any one location as a single unit or units that are readily accessible. Responding to this interrogatory and request for production would require Defendant to search all of its documents for every Tribe, including a document storage facility in Lenexa, Kansas, where potentially responsive documents may have been sent for storage alongside thousands of non-related documents. Such responsive documents, however, are not retained in a single filing system. Defendant would have to compile all of these records for every federally recognized Tribe over the entire time period in order to develop a list of all federally-recognized Tribes and their level of funding to determine whether any Tribe has not received any funding. Doing so would require great time, effort, and expense. In addition, because of the nature and variety of Indian Tribes and programs, compilation of a single list would be exceedingly difficult, if not impossible. A reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to respond to this interrogatory. Responsive documents are not available. Interior does, however, make public the total distribution of TPA funds per year at a macro level. These figures are contained in the publically available Budget Justifications for the Bureau of Indian Affairs. Subject to and without waiving these objections, Defendant will provide copies of the following documents, which describe the TPA process in general terms and may contain some tribal specific information concerning this budget tool:

1) Tribal Priority Allocations Do Not Target the Neediest Tribes, GAO/RCED-98-

181 (July 1998);

2) BIA's Distribution of Tribal Priority Allocations, GAO/T-RCED-98-168 (Apr. 21, 1998);

3) Report on Tribal Priority Allocations, Department of the Interior, Bureau of Indian Affairs (July 1999);

4) Empowerment of Tribal Governments: Final Workgroup Report, Tribal Workgroup on Tribal Needs Assessments, Related to: Bureau of Indian Affairs Tribal Priority Allocations (May 1999);

5) Report of the Joint Tribal/BIA/DOI Advisory Task Force on Reorganization of the Bureau of Indian Affairs (August 1994); and

6) The Tribal Budget System: Preliminary Assessment of Most Needy Small Tribes (Apr. 1994).

**Interrogatory No. 5**. Produce copies of those documents that show, for each fiscal year from 1993 through 1996, how funds for the TPA program were allocated among the federally-recognized Tribes within the Portland Area Office of the Bureau of Indian Affairs.

**Response to Interrogatory No. 5**. Defendant will provide copies of the FY 1994 through 1996 Distribution of Tribal Priority Allocation for the Portland Area Office of the Bureau of Indian Affairs. The FY 1993 Distribution could not be located, but if the Bureau of Indian Affairs is able to locate this document, a copy will be provided.

**Interrogatory No. 6**. (a) When the Bureau of Indian Affairs sought funding from Congress for the TPA program, did the agency ever inform Congress that the program would serve a group that is narrower than all federally-recognized Tribes?

(b) If the answer to Interrogatory 6(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 6**. Defendant objects because this inquiry is not

reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Subject to and without waiving the foregoing objections, Defendant states that it has produced in connection with Interrogatory No. 4 several GAO reports indicating that Congress is well aware of the differences in TPA funding levels in connection with the GAO findings. Defendant is unaware that the BIA has otherwise "ever inform[ed] Congress that the program would serve a group that is narrower than all federally-recognized Tribes."

**Interrogatory No. 7**. If your response to Request for Admission No. 5 is a denial, identify the Housing Authority of each federally-recognized Tribe that was recognized as of 1980 and that requested but did not receive any financial assistance at any time following such request through 1996, and for each state the reason why the Housing Authority did not receive such financial assistance.

**Response to Interrogatory No. 7**. Defendant incorporates its objections to Request for Admission No. 5. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

**Interrogatory No. 8**.

(a) When the Department of Housing and Urban Development sought funding from Congress for the programs that served Indians under the Housing Act of 1937, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes?

(b) If your answer to Interrogatory No. 8(a) is yes, provide copies of all documents

relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 8**. Subject to and without waiving the foregoing objections, Defendant is unable at this time to respond to this interrogatory. Defendant will attempt to supplement this response with additional information, which it expects to have by October 27, 2006. By that date, Defendant will either supplement its response or provide a date by which it will be able to do so.

**Interrogatory No. 9**. If your response to Request for Admission No. 6 is a denial, identify each federally recognized Tribe that was excluded from IHS' allocation of funds, and the reason for such exclusion.

**Response to Interrogatory No. 9**. Defendant objects to the words "allocation" and "funds" as so vague and ambiguous that Defendant can not properly respond to the request. Defendant restates its previous objections that "the period 1969 through 1996" is not wholly applicable to the Agency under IHCIA, which was enacted in 1976. Defendant also restates its General Objections, that, by misconstruing the nature of IHS' appropriations under IHCIA, the interrogatory requires the production of information no longer relevant to the case because it relates to the dismissed ISDA and Snyder Act claims, and that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act. Accordingly, this interrogatory is not reasonably calculated to lead to the production of admissible evidence.

Defendant objects to this interrogatory on the ground that it is unduly burdensome and overly broad. To comply with this Interrogatory and Request for Production would require several steps: (1) each IHS program that operates under IHCIA, such as the Division of Grants Operations and Grants Policy, must identify the federally recognized Tribes that received funding through that program for each of the twenty years during 1976–1996,[7] the applicable

[7] As discussed above, generating such lists presents a special problem for programs such as the UIHP and the Scholarship and Loan Repayment Programs that do not provide funding directly to

period under IHCIA, which in and of itself presents a large burden due to the age of the documentation, which would most likely be archived in the Federal Records Center if it has not been destroyed; (2) to the extent each of the programs operating pursuant to IHCIA are able to generate such a list, IHS must consolidate the lists from those programs; (3) IHS must then compare the consolidated list with the Bureau of Indian Affair's list of federally recognized Tribes for each of the twenty years to determine which federally recognized Tribes did not receive any funding at any time during the period of 1976–1996; and finally, (4) for each of the Tribes that did not receive funding for 1976–1996, IHS must then determine if the reasons discussed above, such as the competitive nature of the grants program, sufficiently explains the lack of funding to those Tribes, or whether any of the Tribes did not receive funding for other reasons specific to that Tribe. The number of years involved, as well as the nature of IHS appropriations, make compliance with this request unduly burdensome and overly broad. In addition, IHS has been undergoing procedures to close out FY 2006 and open FY 2007, and removing employees from this necessary task to collect the information and documents requested would impair the Agency's ability to perform these crucial tasks.

Subject to, and without waiving the foregoing objections, Defendant responds as follows: IHS will produce a list of "Expired Grants" for the period of 1990-1996. This list was generated using the database maintained by the Division of Grants Operations and Grants Policy. However, the database only contains information dating back to 1990. Since the computer database does not contain information prior to 1990, generating a list of grants from years 1976–1989 would require a review of the actual grant files, which are currently stored at the Federal Records Center. The list shows grantees, including Tribes, Tribal organizations, and other entities such as colleges and universities, that were awarded grants during each of the fiscal

---

Tribes or on a Tribe-by-Tribe basis.

years from 1990–1996 and that have since expired. This list shows the award of 6 grants in 1990, 18 in 1991, 98 in 1992, 186 in 1993, 277 in 1994, 333 in 1995, and 234 in 1996, demonstrating that fewer than all Tribes received funding from IHS in those years.

Furthermore, pursuant to IHS policy for newly-recognized Tribes, these Tribes will not receive funding from IHS until after Congress specifically appropriates monies for the benefit of these Tribes and their members.

**Interrogatory No. 10**. Produce copies of those documents that show, for fiscal years 1976, 1980, 1985, 1990, and 1995 how funds for direct and contract health care provided by the United States to Indians were allocated among the federally-recognized Tribes within the Puget Sound Service Area of the Indian Health Service.

**Response to Interrogatory No. 10**. Defendant objects to the words "funds" and "Puget Sound Service Area" as so vague and ambiguous that Defendant can not properly respond to the request. Defendant restates its general objections 15 and 16, that, by misconstruing the nature of IHS' appropriations under IHCIA, the interrogatory requests information no longer relevant to the case because it relates to the dismissed ISDA claim, that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act, and that the request is unduly burdensome and overly broad. Accordingly, this interrogatory is not reasonably calculated to lead to the production of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant will produce documents from fiscal years 1993–1995 in relation to the "Puget Sound Service Unit" and the Portland Area of IHS. This documentation reflects the distribution of funds by the Portland Area of the Indian Health Service to the Puget Sound Service Unit, as distributed among the Tribes for fiscal years 1993–1994. However, this documentation reflects the distribution of appropriations for self-governance under ISDA, part of the dismissed claims, rather than distribution of IHCIA program funds. (See general objections 15 and 16 for further explanation of appropriations

under IHCIA.) Documentation from the Portland Area Office for FY 1995, reflecting the contract health services (CHS) expenditures by Tribe, is also included. This documentation was contained in a file related to the downsizing of the Puget Sound Service Unit, which closed in 1994. IHS has determined that similar reports for the other years requested (Fiscal Years 1976, 1980, 1985, and 1990), as those files are normally maintained, were destroyed pursuant to standard retention policies.

**Interrogatory No. 11**.

(a) When the Indian Health Service of the Department of Health and Human Services (or its predecessor) sought funding from Congress for direct and contract health care for Indians, did the agency ever inform Congress that the program would serve a group that is narrower than all federally-recognized Tribes and members of federally-recognized Tribes?

(b) If the answer to Interrogatory No. 1 l(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 11**. Defendant restates its general objections 15 and 16, that, by misconstruing the nature of IHS' appropriations under IHCIA, the request requires the production of information no longer relevant to the case because it relates to the dismissed ISDA claim, that the IHS cannot differentiate its funds under IHCIA from those under the Snyder Act, and that the request is unduly burdensome and overly broad. Defendant also objects because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Subject to and without waiving the foregoing objections, Defendant states that it is unaware that such a representation was made to Congress.

**Interrogatory No. 12**. If your response to Request for Admission No. 7 is a denial,

identify each federally-recognized Tribe that requested but did not receive any financial assistance at any time under the Low Income Home Energy Program (LIHEAP), and for each such Tribe, state the reason why the Tribe did not receive such financial assistance.

**Response to Interrogatory No. 12.** Defendant's answer to Request for Admission No. 7 renders this question inapplicable, provided that the Tribes properly applied for financial assistance and met all of the various requirements under the regulations and application requirements.

**Interrogatory No. 13.**

(a) When the Department of Health and Human Services sought funding from Congress for the LIHEAP program, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program?

(b) If the answer to Interrogatory No. 13(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 13.** Defendant objects to this interrogatory on the basis that Tribes need not be federally recognized to participate in the LIHEAP. The LIHEAP applies to all low-income Americans and not just to federally-recognized Tribes. Non-federally-recognized Tribes are eligible for direct funding through LIHEAP, and Tribes and tribal members can receive indirect LIHEAP funding through the State, which is required to serve Tribes' service population. In addition, the Department of Health and Human Services, which administers the LIHEAP, does not collect federal recognition information.

Defendant also objects because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as

money-mandating.

Subject to and without waiving the foregoing objections, Defendant states that it has been unable to locate any documents containing such a representation to Congress.

**Interrogatory No. 14.** If your response to Request for Admission No. 8 is a denial, identify each federally-recognized Tribe that requested but did not receive federal assistance under the Commodity Food Program described in paragraph 30.l of the Complaint, and for each such Tribe, the reason why the Tribe did not receive such assistance.

**Response to Interrogatory No. 14.** Defendant incorporates its general objection number 17. Subject to and without saving the foregoing objections, Defendant's answer to Request for Admission No. 8 renders this question inapplicable, as Defendant is unaware of any Tribe that applied for and was denied FDPIR participation since the program's inception.

**Interrogatory No. 15.**

(a) When the Department of Agriculture sought funding from Congress for the Commodity Food Program, did the agency express to Congress that the program was to serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program?

(b) If the answer to Interrogatory No. 15(a) is yes, provide all documents relevant to your answers to that Interrogatory, including all documents presented to Congress.

**Response to Interrogatory No. 15.** Defendant incorporates its general objection number 17. Defendant objects because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Subject to and without waiving the foregoing objections, Defendant states that it has been unable to locate any documents containing the USDA's representation "to

Congress that the program was to serve a group of Tribes that is narrower than the federally-recognized Tribes that requested participation in the program."

**Interrogatory No. 16.** If your response to Request for Admission No. 9 is a denial, identify each federally-recognized Tribe that requested but did not receive financial assistance under one or both job training programs established by the Comprehensive Employment and Training Act of 1973 ("CETA"), and the Job Training Partnership Act ("JTPA"), described in paragraph 30.n. of the Complaint, and for each such Tribe, state the reason why the Tribe did not receive such financial assistance.

**Response to Interrogatory No. 16.** Defendant objects to this interrogatory because records are not available to identify all federally recognized Tribes that requested but did not receive financial assistance. Defendant does not maintain records of unfunded grant applications received under the CETA or the JTPA. According to the applicable federal system of records disposition schedule, General Records Schedule 3, "Procurement, Supply and Grant Records", Item 13, Unsuccessful Grant Application Files, these records are retained for a period of three years then destroyed. (See http://www.archives.gov/records-mgmt/ardor/records-schedules.html).

A search of Defendant's records has resulted in a partial list of Tribes which received financial assistance under these programs in 1984 and 1996–1997. The list, which is being produced, includes federally recognized and State recognized Tribes. Eligibility for grants under CETA and JTPA was not conditioned upon federal recognition of the applicant Tribes. Indian Tribes on Federal or State reservations were eligible to apply for CETA and JTPA employment and training grants. CETA sec. 204(a)(2) [29 U.S.C. § 844(a)(2) (1976), JTPA § 401(c)(1)(A) [29 U.S.C. § 1671(c)(1)(A) (1988)]; 29 C.F.R. § 96.42(a) (1976), 20 C.F.R. § 632.10(d) (1984). Defendant is continuing to search its files and records and if other such lists or other data is located, Defendant will make them available.

CETA funds for job training grants to Indian Tribes were allocated among State and federal reservations according to a formula based upon unemployment data. To qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer a program. See 29 C.F.R. § 96.42(b)&(c) (1976).

Similarly, JTPA funds for Native American training programs were made available to Tribes on federal or State reservations. JTPA § 401(c)(1)(A) [29 U.S.C. § 1671(c)(1)(A) (1988)]. JTPA funds were allocated among geographic service areas according to a formula based on unemployment and poverty data. 20 C.F.R. § 632.171 (1986). Designation of grantees for these funds were not dependent upon status as a federally recognized Tribe. Tribes were required to meet minimum population and grant size requirements and to demonstrate their capability to administer a program. 20 C.F.R. §§ 632.10(b)&(c); 632.11(a)(4) (1986).

**Interrogatory No. 17.**

(a) When the Department of Labor sought funding from Congress for either the CETA or JTPA programs, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program?

(b) If the answer to Interrogatory No. 17(a) is yes, provide all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Response to Interrogatory No. 17.** Defendant objects to this interrogatory on the basis that federal recognition is not a dispositive eligibility criterion for either CETA or JTPA. Under both programs, to qualify to receive funds, a reservation was required to meet minimum population and grant size requirements and a tribal applicant was required to demonstrate its capability to administer the program.

Defendant objects because this inquiry is not reasonably calculated to lead to the

discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating.

Subject to and without waiving the foregoing objections, Defendant states that it has been unable to locate any documents indicating that the United States Department of Labor "ever inform[ed] Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes that requested participation in the program."

Submitted this 12th day of September, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

*s/ Devon Lehman McCune*
Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov

OF COUNSEL:

Rachel Bishop
Office of General Counsel
United States Department of Agriculture

Catherine Hess
Office of the General Counsel
Children, Families and Aging Division
United States Department of Health and Human Services

Robert Hines
Office of the Solicitor
United States Department of Labor

Melissa A. Jamison
Office of General Counsel
United States Department of Health and Human Services

Jason Roberts
Office of the Solicitor
United States Department of the Interior

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | ) | Case No. 02-1383L<br>Chief Judge Edward J. Damich |

**DEFENDANT'S SUPPLEMENT TO COMBINED OBJECTIONS AND RESPONSES TO PLAINTIFF SAMISH INDIAN NATION'S FIRST SET OF REQUESTS FOR ADMISSIONS AND FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 33, 34, and 36 of the Rules of the United States Court of Federal Claims ("RCFC"), Defendant United States hereby supplements its Combined Objections and Responses to Plaintiff Samish Indian Nation's First Set of Requests for Admissions and Plaintiff Samish Indian Nation's First Set of Interrogatories and Request for Production of Documents, dated October 19, 2006. All objections stated in the United States' previous response are hereby incorporated and reaffirmed.

**Request for Admission No. 2**. Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time during the period 1969 through 1996 by virtue of being a federally-recognized Tribe.

**Supplemental Response to Request for Admission No. 2**. Defendant incorporates in full its previously provided answer and objections, and adds that this request is overly broad and

burdensome because the Public and Indian Housing Development Program administered by the United States Department of Housing and Urban Development ("HUD") does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, HUD does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records.

**Request for Admission No. 3.** Admit that every federally-recognized Tribe received some amount of federal funds or federal assistance at some time following the Tribe's federal recognition through 1996 under one or more of the statutes identified in paragraph 30 of the Complaint.

**Supplemental Response to Request for Admission No. 3**. Defendant incorporates in full its previously provided answer and objections, and adds that this request is overly broad and burdensome because the Public and Indian Housing Development Program does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, HUD does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records.

**Request for Admission No. 5**. Admit that all Housing Authorities established by federally-recognized Tribes that were recognized as of 1980 and that requested financial assistance under the Housing Act of 1937 as amended as described in paragraph 30.b. of the Complaint, received some amount of federal funds under that Act at some time during the period after such request through 1996.

**Supplemental Response to Request for Admission No. 5**. Defendant incorporates in full its previously provided objections. Defendant supplements its previous answer by objecting to this request on the basis that it is unduly burdensome and overly broad because the United States Housing Act of 1937 covers a variety of federal funds and programs. For example, HUD administered programs for both low-income housing development and for modernization of existing housing developed with HUD funds. Subject to and without waiving the foregoing objections, Defendant states that a reasonable inquiry has been made and the information known or readily obtainable by Defendant is insufficient to allow Defendant to admit or deny this Request for Admission.

## SUPPLEMENT TO DEFENDANT'S SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

**Interrogatory No. 2**. If your response to Request for Admission No. 2 is a denial, identify each federally-recognized Tribe that did not receive any federal funds or federal assistance at any time during the period 1969 through 1996 and state the reason why each such Tribe did not receive any such funds or assistance.

**Supplemental Response to Interrogatory No. 2**. Defendant incorporates in full its previously provided objections and answer. Defendant supplements its answer by stating that this request is overly broad and burdensome because the Public and Indian Housing Development Program does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, HUD does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records.

Defendant also supplements its answer by stating that, for the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because HUD disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. In addition, a list of Tribes that received funds would not be reasonably calculated to lead to admissible evidence because one would be unable to tell from the list whether Tribes not listed did not receive funds because they did not apply for the programs or whether they were denied for other reasons. Subject to and without waiving the foregoing objections, Defendant states that under the United States Housing Act of 1937, there is no requirement that a Tribe be federally recognized to be eligible for HUD grant funds. In fact, HUD has served both non-federally recognized Tribes and federally recognized Tribes. Defendant further states that there are several reasons an Indian Housing Authority ("IHA") could have been denied HUD funds for the time period of 1969 to 1996. The Public and Indian Housing Development Program required that an IHA be established under State, local or tribal law in compliance with HUD's regulatory criteria. An IHA could apply to HUD for development funds to build low-income housing, provided all notice of funding criteria were met. However, if an IHA applied for funds to modernize pre-existing housing, it would only be eligible if it already had HUD-funded housing and met all notice of funding criteria. Funding under most HUD programs was competitive. However, the Comprehensive Grant Program was non-competitive and provided funds to modernize housing previously built with HUD funds. Thus, even for the non-competitive program, all applicants must have competed successfully for development funds to build housing

units prior to receiving modernization funding.

**Interrogatory No. 3**. If your response to Request for Admission No. 3 is a denial, identify each federally-recognized Tribe that received no federal funds or federal assistance under the statutes listed in paragraph 30 of the Complaint following federal recognition through 1996, and state the reason why each such Tribe did not received any such funds or assistance.

**Supplemental Response to Interrogatory No. 3**. Defendant incorporates in full its previously provided objections and answer. Defendant supplements its answer by stating that this request is overly broad and burdensome because the Public and Indian Housing Development Program does not rely solely on federal recognition of a Tribe as a qualification, and even non-federally-recognized Tribes are eligible for this program. Thus, the agency does not organize its files or records according to whether a Tribe is federally-recognized, and the request for admission poses an undue burden and expense to conduct a search to identify responsive records. and expense to conduct a search to identify responsive records.

Defendant also supplements its answer by stating that, for the United States Housing Act of 1937 programs, subject to and without waiving the foregoing objections, Defendant states that Defendant is unable to provide a list of Tribes that did not receive funding pursuant to these programs because the Department of Housing and Urban Development disposes of applications for funding after seven years, pursuant to its normal document retention as described in its Records Disposition Schedule Handbook. In addition, a list of Tribes that received funds would not be reasonably calculated to lead to admissible evidence because one would be unable to tell from the list whether Tribes not listed did not receive funds because they did not apply for the programs or were denied for other reasons. Subject to and without waiving the foregoing

objections, Defendant states that under the United States Housing Act of 1937, there is no requirement that a Tribe be federally recognized to be eligible for HUD grant funds. In fact, HUD has served both non-federally recognized Tribes and federally recognized Tribes. Defendant further states that there are several reasons an IHA could have been denied HUD funds for the time period of 1969 to 1996. The Public and Indian Housing Development Program required that an IHA be established under State, local or tribal law in compliance with HUD's regulatory criteria. An IHA could apply to HUD for development funds to build low-income housing, provided all notice of funding criteria were met. However, if an IHA applied for funds to modernize pre-existing housing, it would only be eligible if it already had HUD-funded housing and met all notice of funding criteria. Funding under most HUD programs was competitive. However, the Comprehensive Grant Program was non-competitive and provided funds to modernize housing previously built with HUD funds. Thus, even for the non-competitive program, all applicants must have competed successfully for development funds to build housing units prior to receiving modernization funding.

**Interrogatory No. 7**. If your response to Request for Admission No. 5 is a denial, identify the Housing Authority of each federally-recognized Tribe that was recognized as of 1980 and that requested but did not receive any financial assistance at any time following such request through 1996, and for each state the reason why the Housing Authority did not receive such financial assistance.

**Supplemental Response to Interrogatory No. 7**. Defendant incorporates in full its previously provided objections and answer. Defendant incorporates its objections to Request for Admission No. 5. Subject to and without waiving the foregoing objections, Defendant's answer to Request for Admission No. 5 states that Defendant made a reasonable inquiry and the

information known or readily obtainable by Defendant is insufficient to allow Defendant to admit or deny this Request for Admission. See also Defendant's answer to Interrogatory No. 2 and 3.

**Interrogatory No. 8.**

(a) When the Department of Housing and Urban Development sought funding from Congress for the programs that served Indians under the Housing Act of 1937, did the agency ever inform Congress that the program would serve a group of Tribes that is narrower than all federally-recognized Tribes?

(b) If your answer to Interrogatory No. 8(a) is yes, provide copies of all documents relevant to your answer to that Interrogatory, including any documents presented to Congress.

**Supplemental Response to Interrogatory No. 8**. Defendant incorporates in full its previously provided objections and answer. Defendant objects to this Interrogatory because this inquiry is not reasonably calculated to lead to the discovery of admissible evidence because the absence of a representation that the program would potentially serve a group narrower than all federally recognized Tribes does not convert statutory and regulatory language that is not money-mandating into language that fairly interpreted as money-mandating. Defendant further objects to this interrogatory because federal recognition is not a necessary condition for Tribes to participate in HUD programs. Subject to and without waiving the foregoing objections, Defendant states that it has not located any documents indicating that such a representation was made to Congress.

This 1st day of November, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

______________________________

Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov

OF COUNSEL:
Batina Wills Washington
United States Department of Housing & Urban Development
Office of General Counsel