**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | ) | Case No. 02-1383L<br>Chief Judge Edward J. Damich |

**UNITED STATES' SUPPLEMENTAL BRIEF REGARDING**
**ITS MOTION TO DISMISS**

To demonstrate that this Court could decide some or all of the arguments in the United States' Motion to Dismiss without further discovery, the United States submits this supplemental brief pursuant to the Court's instruction at the status conference held on January 17, 2007, and Order of January 18, 2007. The United States' position throughout this litigation has been that the question of whether a statute or regulation is money-mandating is a matter of law, and therefore, no discovery is necessary for the parties to brief and the Court to resolve the United States' Motion to Dismiss. Despite this position, because the Court granted Plaintiff limited discovery, this supplemental brief highlights the United States' arguments in its Motion to Dismiss to explain a number of ways the Court could dispose of some or all issues without further discovery.

**BACKGROUND**

In its Second Amended Complaint ("Complaint"), Plaintiff argues that the United States wrongfully failed to acknowledge it as a federally recognized Indian tribe from 1969, when the Tribe was removed from the list of federally recognized tribes, until its reinstatement as a federally recognized tribe in 1996. According to Plaintiff, as a result, Plaintiff and its members

were not eligible to apply for and participate in programs, services, and benefits that the United States provided to federally recognized tribes and their members during that time period. Plaintiff alleges that it is entitled to damages for its inability to participate in the programs and services during that period of time.

On March 22, 2006, the United States moved to dismiss Plaintiff's Complaint on the basis that the statutes and regulations alleged therein cannot be fairly interpreted as mandating compensation and this Court, therefore, lacks jurisdiction over Plaintiff's claims. The United States set forth two categories of arguments. First, the United States argued that this Court could dispose of all or most of the case based on several overarching principles. *Def.'s Mot.* at 7–11. For example, the United States argued that this Court lacks jurisdiction over Plaintiff's claims because none of the statutes or regulations in Plaintiff's Complaint can fairly be interpreted as mandating compensation. Specifically, the United States argued that each statute or regulation Plaintiff alleges is not money-mandating because the statutes and regulations establish programs through which federally recognized Indian tribes establish and administer social service programs. *Id.* at 7–9, 24–25. Thus, instead of compensating for an injury to a particular class of persons for a past injury, the statutes and regulations provide funding to subsidize the tribes' expenditures in running the programs. Pursuant to established case law, therefore, the statutes and regulations cannot be money-mandating. Similarly, the statutes do not meet the standards for being money-mandating because they contain discretionary language, and are not sufficiently specific so as to mandate payment. *Id.* at 9–11. Finally, the United States moved to dismiss Plaintiff's "network" arguments with regard to both the Tribal Priority Allocation ("TPA") program and to all of the statutes and regulations in Plaintiff's Complaint because Plaintiff has failed to allege any specific rights-creating fiduciary duty on the part of the United States. *Def.'s Mot.* at 14–21; 48–49. As the United States explains in its Motion to Dismiss, the programs do not give the United States "pervasive or elaborate control over a trust corpus" that would create

more than a general trust responsibility between the United States and federally recognized tribes. *Id.*, *see Samish Indian Nation v. United States*, 419 F.3d 1355, 1368 (Fed. Cir. 2005). Thus, Plaintiff's attempt to fit this case into the framework of *Mitchell v. United States*, 463 U.S. 206 (1983) ("*Mitchell II*") and *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003), fails.

The second category of arguments set forth by the United States in its Motion to Dismiss are program-specific rather than overarching. Multiple programs or statutes raise questions of law limited to those particular programs. This brief details both categories of arguments more specifically below.

## ARGUMENT

### A. This Court Could Assume For the Purposes of this Motion that Plaintiff's Allegations are True.

One way to proceed with resolution of the United States' Motion to Dismiss would be for the Court to assume, *arguendo*, that Plaintiff's allegations regarding the statutes in its Complaint are true. For most of the statutes in Plaintiff's Complaint, therefore, the Court could assume for the purposes of this motion only that if a federally recognized tribe properly applied and met a program's requirements, the tribe would have received some amount of federal funding. The statutes and regulations in Plaintiff's Complaint still are not money-mandating for a number of reasons, as the United States demonstrated in its Motion to Dismiss.

The Court's ruling that some or all of the statutes are not money-mandating even if the agency practice is to provide funds to all federally recognized tribes would either dispose of the entire case or, at the least, narrow some of the issues for further briefing. If the Court found that some or all of the statutes could be money-mandating based on agency practice or interpretation, the parties could then brief whether the agencies, in their administration of the programs, actually provided funding to all tribes that applied. At this phase, the Court again could assess

whether limited discovery would be appropriate.

**B. The Court Could Rule on the United States' Overarching Legal Arguments.**

If the Court chooses not to address the entire Motion to Dismiss by assuming that the United States provided funding to all qualified tribes that applied to participate in a program, there are still a number of issues that the Court can decide without further discovery. The United States' Motion to Dismiss contains several arguments that apply to all of the programs Plaintiff alleges in its Complaint. The Court could address the validity behind these arguments without further discovery.

First, the United States' Motion to Dismiss argues that the programs Plaintiff alleges in its Complaint are not money-mandating because they are grant-in-aid statutes that subsidize tribes' future expenditures on social services programs.[1/] *Def.'s Mot.* at 7–9, 24–25. The United States Supreme Court has held that "grant-in-aid" statutes differ from money-mandating statutes, which seek to compensate a particular class of persons for past injuries. *Bowen v. Massachusetts*, 487 U.S. 879, 905–06 (1988). Further, because Plaintiff did not provide social services pursuant to the programs in question, awarding it damages would result in a windfall that is not in keeping with the statutes' purpose. The United States' brief addressed this

---

[1/]As Plaintiff notes in its Complaint, the Indian Health Service ("IHS") provides services in two fashions: (1) directly through its own facilities to members of federally-recognized tribes; and (2) by contracting with tribes for the tribes to operate health care facilities and provide health care services that would otherwise be provided by IHS. 2d Am. Compl. ¶ 30(d). The United States' broad argument that these are grant-in-aid statutes would only apply to the latter category, where IHS contracts with tribes (through the Indian Self-Determination and Education Assistance Act) for the tribes to provide services. However, as the United States argued in its Motion to Dismiss, if Plaintiff claims an injury because IHS did not directly provide health services to its members, the injury is to individual Indians as opposed to the tribe as a whole. *See Def.s' Mot.* at 29 n.9. Here, the Tribe is the only plaintiff and individual members have not brought their own actions. This Court has jurisdiction only over those claims which relate to a tribal injury, not to individual injuries to tribal members. *See Def.'s Mot.* at 4 n.1 (citing *Fort Sill Apache Tribe of Oklahoma v. United States*, 477 F.2d 1360 (Ct. Cl. 1973)). In addition, Plaintiff's claim that the Indian Health Care Improvement Act is money-mandating has already been disposed of by the United States Supreme Court. *See supra* at 7–8.

argument with regard to many of the programs alleged in Plaintiff's Complaint. *See id.* at 27 (Housing Act), 31 (Indian Health Care Improvement Act), 34 (Supplemental Nutrition Program for Women, Infants, and Children), 37 (Commodity Food Program), 38 (Food Stamp Program), 40 (Job Training Programs), 42 (State and Local Fiscal Assistance Act of 1972); 44–45 (Omnibus Budget Reconciliation Act of 1981 Block Grants).

The United States' second overarching argument that the Court could address without further discovery is that these statutes cannot be money-mandating because they contain discretionary language. The United States argues that to be money-mandating, the language and effect of a statute must be mandatory. In many of the statutes in Plaintiff's Complaint, Congress used discretionary language, such as "may" or "is authorized," instead of mandatory language, such as "shall." *Id.* at 9–10, 22–23 (Housing Improvement Program), 27 (Housing Act), 31–32 (Indian Health Care Improvement Act), 34–35 (Supplemental Nutrition Program for Women, Infants, and Children), 38–39 (Food Stamp Program), 40 (Job Training Programs), 45 (Omnibus Budget Reconciliation Act of 1981 Block Grants). The Court could therefore determine whether the statutes could be money-mandating despite the use of discretionary language. This issue should not involve further discovery because it relies solely on the language of the statutes and, therefore, can be determined as a matter of law.

The United States' third overarching argument the Court could address immediately is whether these statutes can be money-mandating if they do not provide clear standards for payment, state the precise amounts to be paid, and, as interpreted, compel payment on satisfaction of certain conditions. *Id.* at 10–11. In particular, the United States argued that because none of the listed statutes states the precise amount to be paid, the Court has no means to determine what the damage remedy would be. *See id.* at 23 (Housing Improvement Program), 28 (Housing Act), 32 (Indian Health Care Improvement Act), 34–35 (Supplemental Nutrition Program for Women, Infants, and Children), 36 (Commodity Food Program), 39 (Food Stamp

Program), 40 (Job Training Programs), 45–46 (Omnibus Budget Reconciliation Act of 1981 Block Grants); 46 (appropriations acts). Therefore, the statutes cannot be fairly interpreted as mandating compensation.

As a subset of this argument, some of the statutes Plaintiff alleges in its Complaint provide for funds to be distributed pursuant to a formula. Presumably, Plaintiff will argue that these formulas state the precise amounts to be paid and thus are sufficient to make the statutes money-mandating. The United States, however, in its Motion to Dismiss, argues that the formulas cannot make the statutes money-mandating because they do not provide an explicit amount to particular plaintiffs and provide the agencies with discretion to choose which factors to include in the formula. In particular, the formulas are dependent upon factors, such as how many other applicants there were in a given year, so that the Court could not determine the precise amount to be paid. The Court's ruling on this issue could be done without further discovery and would help clarify or eliminate some statutes.

**C. The United States' Motion to Dismiss Raises a Number of Discrete Issues that the Court Could Address Without Further Discovery.**

**1. The Court Could Determine That the TPA Program is Not Money-Mandating.**

The Court could decide, without further discovery, whether the TPA program, a budgetary tool used by the Department of the Interior Bureau of Indian Affairs ("BIA") that is not described in statutes or regulations, is money-mandating. First and foremost, Plaintiff represented at the status conference that it has sufficient information to brief the Motion to Dismiss on the TPA claim.

Second, the United States argued in its Motion to Dismiss that Plaintiff's claim regarding the TPA program should be dismissed because Plaintiff did not raise the TPA program in its complaints initially before the Court but added the program only after the Federal Circuit's decision and remand order. *Def.'s Mot.* at 14 n.3. In any event, the United States argues that

Plaintiff cannot prevail on this claim as a matter of law because the TPA is not mandated or described by any statute or regulation.[2] *Id.* at 14–21. The Department of the Interior receives a single lump-sum appropriation from Congress to operate Indian programs. *See* Dep't of the Interior, Environment, and Related Agencies Appropriations Act of 2006, Pub.L. 109-54, 119 Stat. 499 (2005 HR 2361). TPA is the tool the BIA uses to distribute lump sum appropriations from Congress.[3] Pursuant to well-established case law, *see, e.g., Lincoln v. Vigil*, 508 U.S. 182, 193 (1993), courts cannot review an agency's allocation of funds from a lump-sum appropriation. The Court could therefore decide whether, as an agency creation for distribution of lump-sum appropriations, TPA could ever be fairly interpreted as mandating compensation.

In any event, however, Plaintiff relies upon a "network" argument to claim that the statutes underlying the TPA program (without the Snyder Act and Indian Self-Determination and Education Assistance Act ("ISDA")) fairly can be interpreted to provide funding for all federally recognized tribes. Plaintiff's TPA network argument could be decided as a matter of law because, pursuant to the Supreme Court's rulings in the *Mitchell* cases, *Navajo*, and *White Mountain Apache*, when a plaintiff alleges that a network of statutes and regulations creates fiduciary duties, "the analysis must train on specific rights-recreating or duty-imposing statutory

---

[2] In its order allowing Plaintiff limited discovery, the Court noted that the Court of Federal Claims has held in the past that "a regulation, though not money-mandating on its face, nevertheless mandated the payment of money based upon agency interpretation." *See Ct.'s Op. and Order* (filed July 21, 2006) at 8–9 (citing *Reidell v. United States*, 43 Fed. Cl. 770, 771–72 (1999)). In *Reidell*, as this Court noted, the Court relied on the Department of Labor's ruling interpreting its regulations as requiring retroactive payments. Presumably, Plaintiff will flesh this argument out more thoroughly in its response, and the United States will have an opportunity to respond. The Court's ruling on this issue might dispose of Plaintiff's claims regarding the TPA program.

[3] The Snyder Act, 25 U.S.C. § 13, and ISDA, 25 U.S.C. U.S.C. § 450 *et seq.*, are the authorities for the Bureau of Indian Affairs to transfer the TPA designated funds to the Indian tribes. The Court dismissed all claims under the Snyder Act and ISDA on the ground that such claims are not money-mandating. *Samish Indian Nation v. United States*, 58 Fed. Cl. 114, 118–19, 120 n.12 (2003), *aff'd*, 419 F.3d 1355 (2005).

or regulatory prescriptions." *United States v. Navajo Nation*, 537 U.S. 488, 512 (2003). Here, none of the statutes in Plaintiff's alleged network provide any specific rights or duties that Plaintiff alleges the United States violated. *Def.'s Mot.* at 14–21. In addition, because the TPA program does not involve a "trust" responsibility to Indians because no Indian property is at stake, the network of statutes underlying TPA cannot create a fiduciary duty. *Id.* These statutes also give the leading role to tribes to administer programs, so that the government does not have pervasive or elaborate control over a trust corpus that increases the United States' obligations beyond that of a general trust relationship. *Id.* Thus, Plaintiff's TPA network argument must fail even if the BIA provided funds to every federally recognized tribe. Therefore, this Court could determine whether the TPA program could ever be the source of a money-mandating duty.

**2. The Court Could Determine That the Plaintiff's Alleged Statutes and Regulations Do Not Constitute a Money-Mandating Network.**

The United States argued that Plaintiff's network theory does not state a claim for damages within the Tucker Act or Indian Tucker Act. Essentially, Plaintiff has not identified a fiduciary duty that would provide a damage remedy for its breach of trust claim.[4/] *Def.'s Mot.* at 48. The extent of the United States' trust responsibility is defined by relevant statutes and regulations. *See Mitchell II*, 463 U.S. at 224 (noting that the relevant statutes and regulations "define the contours of the United States' fiduciary responsibilities"); *North Slope Borough v. Andrus*, 642 F.2d 589, 611 (D.C. Cir. 1980) ("[A] trust responsibility can only arise from a statute, treaty, or executive order." (citing *United States v. Mitchell*, 445 U.S. 535 (1980)). The statutes in Plaintiff's Complaint do not contain statutory trust language establishing more than a general trust responsibility between the United States and federally recognized Indian tribes. Further, the statutes also do not involve a trust corpus or trust assets, so no fiduciary duty is

[4/]In addition, Plaintiff did not raise its network argument in its Complaints when this case was originally before this Court. *See First Am. Compl*., filed June 4, 2003. Plaintiff is not entitled to raise a new claim on remand from the Federal Circuit.

implicated at all. In addition, the statutes are designed to give tribes responsibility in administering programs. The statute, therefore, cannot support a network claim like in *Mitchell II or White Mountain Apache*, because the government does not have pervasive control over tribal assets.

**3. The Court Could Determine That, Based on Supreme Court Precedent, the Indian Health Care Improvement Act is Not Money-Mandating.**

The Court could also determine as a matter of law that the Indian Health Care Improvement Act ("IHCIA") is not money-mandating because the Supreme Court has already held, in *Lincoln*, that Congress gave IHS unreviewable discretion to allocate its lump sum appropriations. In *Lincoln*, the plaintiffs alleged that IHS violated the Snyder Act and the IHCIA, and the Supreme Court held that IHS has unreviewable discretion and the statutes, therefore, are not money-mandating. *Lincoln*, 508 U.S. at 194. This conclusion has been noted and followed by other courts. *See Allred v. United States*, 33 Fed. Cl. 349, 355 (1995) (holding that *Lincoln* "foreclosed the possibility of receiving damages for claims under the IHCIA"); *Shoshone-Bannock Tribes of Fort Hall Reservation v. Shalala*, 988 F. Supp. 1306, 1330 (D. Or. 1997) ("Based on an analysis of the Snyder Act, 25 U.S.C. § 13, and the Indian Health Care Improvement Act, 25 U.S.C. § 1601 et seq, the Supreme Court held in *Lincoln* . . . that Congress had delegated to IHS the unreviewable discretion to reallocate funds included in a lump sum appropriation. . . ."). Because the Supreme Court has already held this statute not to be money-mandating, this Court could decide this issue without further discovery.[5/]

**4. The Court Could Determine That Plaintiff Cannot Get Relief When the Capped Appropriations Have Been Distributed.**

In addition, the United States' Motion to Dismiss argued that because Congress set aside

[5/]At the status conference, Plaintiff's counsel also indicated that Plaintiff could address this argument without further discovery.

a capped amount of funds for the statutes Plaintiff cites, and those funds were disbursed to other recipients, Plaintiff cannot now get relief in the form of money damages for violations of those statutes. *Def.'s Mot*. at 47. The Court could decide this issue without further discovery.

**5. The Court Could Determine that the Appropriations Acts are not Money-Mandating.**

Finally, the Court could determine without further discovery whether the appropriations statutes alleged in Plaintiff's Complaint are money-mandating. The United States argued that these statutes are not money-mandating, both because Plaintiff failed to cite any particular money-mandating provision from the acts, and because the bills give the federal agencies lump sum amounts that this Court does not have jurisdiction to review. *Id.* at 16–17 (TPA), 22 (Housing Improvement Program), 30–31 (Indian Health Service), 46. The United States' argument is a matter of pure law, and could be decided without further discovery.

**CONCLUSION**

As described above, the Court has several means that would allow it to resolve some or all issues in the United States' Motion to Dismiss without further discovery. Doing so would allow this case to proceed, potentially eliminate the need for further discovery, and preserve judicial economy. At the least, it would narrow the issues in the case, and potentially expedite resolution of the case. The United States therefore respectfully requests that this Court consider its Motion to Dismiss Plaintiff's Complaint and rule on the issues solely as a matter of law.

Respectfully submitted this 5th day of February, 2007.

MATTHEW J. McKEOWN
Acting Assistant Attorney General

*s/ Devon Lehman McCune*
DEVON LEHMAN McCUNE,

Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St.
Denver, CO 80294
303-844-1487
303-844-1350 (fax)
devon.mccune@usdoj.gov

Of Counsel:

Jason Roberts
U.S. Department of the Interior
Office of the Solicitor
Washington, D.C.

Melissa A. Jamison
U.S. Department of Health and Human Services
Office of General Counsel
Indian Health Service
Rockville, MD

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2007, I filed the foregoing **UNITED STATES' SUPPLEMENTAL BRIEF REGARDING ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this matter.

DATED this 5th day of February, 2007.

s/ *Devon Lehman McCune*

Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov