**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No. 02-1383L |
| Plaintiff, | ) | (Chief Judge Edward J. Damich) |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**Samish Indian Nation's Response to the United States' Supplemental Brief Regarding its Motion to Dismiss**

Introduction

The issue for the Court is how best to move forward with this case. The problem is that, as the Court has ruled, the Tribe is entitled to discovery on agency practice and interpretation regarding the underlying statutes that form the basis of the Tribe's claims, but the government has refused to cooperate in discovery. During the status conference on January 17, the Court explored with the parties whether there might be ways to cut through this impasse – to allow action on the motion to dismiss without compromising the Tribe's right to discovery.

The Court asked the government whether it could provide a list of legal issues that might provide some basis for addressing this problem, issues the government believes require no factual

inquiry. In response, the government filed a "Supplemental Brief." Unfortunately, that brief is merely a rehash of the same legal issues in the government's "Motion to Dismiss" and therefore does not respond to the Court's request. The exercise of listing legal issues was intended by the Court to refine the issue of accommodating the Tribe's right to discovery regarding agency policy and practice, but the government's filing does not assist this inquiry.

The government's response leaves the Court with three basic options. First, the Court could simply require that all issues be addressed at once on the motion to dismiss without any further discovery and without any factual record. That is the government's proposal. But that approach is unfair to the Tribe, which is entitled to discovery in accordance with this Court's discovery order. The government's proposal would also deny the Court the opportunity to rule based on an understanding of agency construction of the statutes at issue.

Second, the Court could defer consideration of the motion to dismiss until all discovery issues are resolved. Based on the government's responses to date, this approach would undoubtedly entail a long and expensive battle, with no certainty that a satisfactory outcome will be achieved. The only thing certain about this approach is that it would delay the case. Neither party supports this approach.

There is a third approach, which seeks a middle ground between these first two extremes. That is, the Court could order briefing now on the two major programs involved in this case – TPA (Tribal Priority Allocations provided through the Bureau of Indian Affairs) and IHS (Indian Health Service funding). These programs encompass the majority of funding at issue in this case. In the face of government intransigence on discovery, the Tribe has used its own, limited resources to find experts to address agency practice and policy regarding these two programs. Notwithstanding the

absence of full answers to its discovery requests, the Tribe is prepared to go forward now, based on the work of its own experts, to brief the motion to dismiss on TPA and IHS. This approach would 1) obviate the need for a contentious discovery fight on these programs, 2) allow this Court to rule on the Tribe's basic legal theory, and on all of the broader legal issues that the government argues apply across the board, and 3) provide a sound foundation for a subsequent ruling (or, potentially, a settlement), on all the remaining claims (which would be briefed together). In other words, as we demonstrate below, this approach best accommodates the interests of fairness and judicial economy.

## Argument

Briefing on TPA and IHS now provides the best way forward for several reasons. *First,* the Tribe has used its own resources to conduct independent research which allows the Tribe to respond to the government's motion to dismiss as it relates to the TPA and IHS programs without the delay that would occur if this matter devolved into an extensive discovery fight. The Tribe will supply factual information on agency and congressional practice on these two programs. *Second,* briefing on the TPA and IHS programs will cover the legal arguments (including those described by the government in its Supplemental Brief as "overarching legal arguments") raised in the government's motion to dismiss. *Third,* briefing on TPA and IHS will confirm the Tribe's position regarding discovery concerning agency interpretation of the statutes. *Fourth,* a decision on the motion to dismiss as to the TPA and IHS programs would almost certainly resolve or substantially narrow the issues that need to be resolved as to the other claims.

1. <u>The Tribe's independent research allows the Tribe to respond to the government's motion to dismiss on the TPA and IHS programs.</u>

After reviewing the multitude of objections raised by the government in its response to the Tribe's discovery requests (including the government's unwillingness to meet), the Tribe, despite its limited means, undertook its own research to obtain facts bearing on the policy and practice of the BIA and IHS in administering the TPA and IHS programs. To do this, the Tribe retained the services of two expert consultants with experience regarding the manner in which these programs were interpreted and implemented by the agencies. As a result, notwithstanding the government's failure to cooperate in discovery, the Tribe now believes it has sufficient information on the agencies' practice in construing and implementing the statutes regarding the TPA and IHS programs to present arguments on these programs to the Court. The Tribe intends to submit declarations from both experts, as well as other supporting evidence, in opposing the government's Motion to Dismiss on TPA and IHS. To illustrate the importance of agency interpretation in determining whether statutes are money-mandating, and the importance of allowing the Tribe to obtain discovery about agency practice, we attach a copy of one of these declarations to this brief.

The declaration of James H. McDivitt, a former official of the Department of the Interior, with extensive experience in developing and implementing the BIA budget including the TPA program, describes the Department of the Interior's policy and practice with regard to the TPA program. That declaration shows how both the Department of the Interior and Congress recognized and understood that TPA funds must be provided to all federally-recognized tribes, and that this commitment was reflected in the Department's reports to and testimony before Congress and confirmed by Congress in connection with annual Appropriations Acts.

Similarly, the Tribe intends to submit with its Opposition to the Motion to Dismiss, a declaration from another expert who has worked extensively on matters relating to IHS funding. His declaration will show how IHS interpreted its obligations under federal statutes to make federal funds for Indian health available to all federally-recognized tribes and their members, and that the IHS had established objective means by which it could allocate IHS funds for the use and benefit of each federally-recognized tribe.

While it should not have been necessary, the Tribe has taken upon itself, at considerable expense, to obtain independently the information that the government should have provided in discovery. Having taken that initiative, the Tribe seeks the opportunity to present the resulting information to demonstrate each agency's construction and implementation of the statutes involved in the TPA and IHS programs. In this regard, briefing now on TPA and IHS makes sense because these are the two programs as to which the dispute over discovery is no longer a substantial impediment to moving forward.

2. <u>Briefing on the TPA and IHS programs will cover most of the legal arguments, including the so-called "overarching legal arguments" raised in the government's motion to dismiss.</u>

Briefing on the TPA and IHS programs will address not only the program-specific arguments that the government raised in its Motion to Dismiss, but also those issues which the government, in its Supplemental Brief, describes as presenting "overarching legal arguments," including those related to the Appropriations acts.[1]

[1]Addressing these overarching legal arguments in the context of two factually developed federal Indian programs should determine legal principles applicable to the remainder of Plaintiff's claims. Plaintiff would expect and offers to the Court, that all remaining federal programs set out in Plaintiff's Second Amended Complaint should then be addressed and (continued...)

In its Supplemental Brief, the government asserts that its motion to dismiss raises several legal arguments that apply to all of the programs contained in Tribe's complaint, and urges the Court to "address the validity behind these arguments without further discovery." Def. Supp. Br. at 3. These "overarching legal arguments" are nothing more than a reprise of the introductory section to the government's motion to dismiss (*see* Motion to Dismiss at pages 4 through 12), in which the government describes its view of the legal framework under which the Court should determine whether any specific statute is money-mandating. The government later repeats these general arguments in connection with seeking dismissal of specific programs or statutes.[2]

Thus, for example, one of the government's "overarching legal arguments" is its contention that a statute "cannot be money-mandating" if it contains "discretionary language . . . such as 'may' or 'is authorized.'" Def. Supp. Br. at 5. The government then asserts that "[t]he Court could therefore determine whether the statutes could be money-mandating despite the use of discretionary language. This issue should not involve further discovery because it relies solely on the language of the statutes and therefore, can be determined as a matter of law." *Id.* at 4.

The government's proposal that the Court decide these legal issues without the benefit of facts fails for the simple reason that it has already been rejected by the Court and is contrary to established law. As set out in this Court's Opinion and Order of July 21, 2006, a statute may be money-mandating if there is a "fair inference" that Congress intended that money be made available

---

[1](...continued)
resolved at one time. This would address the Court's concern about deciding Defendant's Motion to Dismiss on a piecemeal basis.

[2]As the Tribe will show in its Opposition to the Motion to Dismiss, some of the government's arguments are contrary to the Court of Appeals' decision in this case.

to all federally recognized tribes, *id* at 5-6, that a court might make such a fair inference "by reviewing evidence that the responsible agencies, . . . understood they were required by the statutes or regulations at issue to pay at least some money to federally-recognized tribes," *id.* at 6, and that "discovery might permit the Court to 'fairly infer' that the relevant agencies understood the statutes or regulations underlying TPA to be money mandating." *Id.* at 6-7. Thus, a statute may be money-mandating because, "though not money-mandating on its face, nevertheless mandated the payment of money based on agency interpretation." *Id.* at 8, citing *Reidell v. United States*, 43 Fed.Cl. 770, 771-72 (1999).

Having already held that agency interpretation is relevant to determining whether a statute is money-mandating, this Court should not be fooled by the government's renewed invitation to issue rulings on legal questions in the abstract, without the necessary and relevant facts on how the agencies interpreted their obligations under the statutes.[3] This specific factual inquiry is required.

Moreover, most of the government's so-called "overarching legal arguments" would be addressed as part of the briefing on the motion to dismiss the TPA and IHS programs in any event. For example, the government's "overarching legal arguments" that a statute is not money-mandating if it contains "discretionary language" or if it is a "grant-in-aid" program were specifically raised by

---

[3] The government's assertion that the Court might assume the truth of the allegations contained in Plaintiff's complaint is no solution. First, the arguments advanced in Defendant's Motion to Dismiss in fact dispute the allegations contained in Plaintiff's complaint. Second, while suggesting that the Court might assume the truth of the allegations in the complaint, Defendant then unilaterally rewrites Plaintiff's factual allegations. Defendant asserts that the Court could assume that "if a federally recognized tribe properly applied for and met a program's requirements, the tribe would have received some amount of federal funding," and thereby imposes additional conditions on Plaintiff's eligibility for federal funds in addition to federal recognition, but not stated in the complaint and not required by the agencies administering those programs. *See* Plaintiff's Second Amended Complaint at ¶ 32.

the government as one of a number of arguments for dismissal of the IHS claims. The same is true of the government's arguments based on the Supreme Court's decision in *Lincoln v. Vigil*, and lump sum appropriations. These were specifically raised by the government in its motion to dismiss the IHS program claims, as well as the TPA program claims, and will necessarily be addressed by the Tribe in its brief opposing such motion as to the IHS and TPA programs.

Other of the government's "overarching legal arguments" will be addressed in connection with briefing on TPA. For example, the government's arguments – that appropriations acts are not money-mandating, and its claim that there is no network of statutes that create a trust responsibility to provide funding to federally-recognized tribes – were specifically raised by the government in moving to dismiss the Tribe's TPA claims, and will be addressed in response to the government's motion on the TPA claims. Indeed, the Declaration of James McDivitt specifically addresses the appropriations process as it demonstrates the understanding and expectation of both Congress and the BIA that TPA would be and must be provided to all federally-recognized Indian tribes.

In short, the Tribe's approach provides the benefit of allowing the Court to address the government's "overarching legal arguments" in the context of the specific programs at issue in this case and in light of a factual record regarding agency construction and practice.

3. <u>Briefing on TPA and IHS will confirm the Tribe's right to and need for discovery regarding agency interpretation of the statutes.</u>

Briefing on the TPA and IHS programs will further show that, as this Court previously ruled, the Tribe is entitled to discovery about the agencies' interpretation of their obligations under law which "fairly infer" that the statutes and regulations – either individually or viewed together – mandated the payment of money to the Tribe. As will be shown by the declarations of the Tribe's

experts, both the BIA and IHS have information that should have been provided by the government, and from which the government could (and should) have admitted that all federally-recognized tribes were entitled to some amount of federal funding. Such information could have been provided without the objections raised by the government. For example, as stated in the declaration of James McDivitt, there was an alternative source of information which would have allowed the government, without undue burden, to admit that all federally-recognized tribes received some amount of federal funds. He explains that this source is:

> contained in the Interior Department's automated accounting system, which . . . uses unique codes to identify each BIA unit and each federally recognized tribe (and in some case more than one unique code for a tribal entity). The BIA can query the accounting database for any fiscal year (where the computer record exists) and tell how much money was expended by each tribal code. The query could include all sources of federal funding channeled through BIA, not just TPA. This is not a burdensome task and can be conducted as broadly or narrowly as the query defined by the selection of codes.

Declaration of James McDivitt at ¶ 45.

The availability of this information in the face of the government's refusal to provide it is relevant to the Tribe's right to recover costs and fees under RUSCFC 37(c)(2) to the extent the government refused to admit facts which the Tribe ultimately proves. It may also facilitate efforts to resolve the remaining discovery disputes related to the other programs on which the Tribe sought discovery.

4. <u>A decision on the motion to dismiss as to the TPA and IHS programs would eliminate or narrow the issues that need to be resolved as to the other claims.</u>

Resolution of the motion to dismiss regarding the TPA and IHS programs will lead to a narrowing of the remaining claims and issues in the case, and will promote efficient use of the

parties' and the Court's resources. TPA and IHS historically have been the largest sources of federal funding provided to federally-recognized tribes. As a result, a decision as to these two programs could provide a significant basis for the parties to assess whether settlement is possible for these or the other programs.

Even apart from settlement, a Court decision on the motion to dismiss as it relates to these two programs would enable the parties to assess the extent to which further discovery is necessary as to the remaining programs raised by Plaintiff's Second Amended Complaint (housing, social services, WIC, job training, etc.). More broadly, a ruling on TPA and IHS would provide a road map on how best to move forward on all remaining claims in Count I and Count II. In other words, a ruling on TPA and IHS will establish the basic legal framework for the remainder of the case, and will provide a more informed basis for decisionmaking regarding all remaining claims. We would add that, from the Tribe's standpoint, once TPA and IHS are decided, we would anticipate that all remaining claims would be addressed together. In essence, the Tribe's approach envisions that there would be two phases. Phase I would address TPA and IHS. Phase II would address everything else in the case, and would benefit from the rulings in Phase I. Given the underlying circumstances, this is the most efficient way to proceed.

## Conclusion

The Tribe's theory of the case is simple – that the Tribe is entitled to damages with respect to various federal programs that were made available to every federally-recognized tribe during the claimed period of time. Agency practice and construction of the underlying statutes is highly relevant – as this Court has held. The Tribe sought discovery to establish certain basic points

regarding agency practice and construction – for example, the fundamental point that TPA is allocated to every federally-recognized tribe – but the government refused to cooperate.

The Tribe can not match the government's resources in a drawn-out fight over discovery regarding all tribal programs. What the Tribe can do, however, is propose a mechanism to keep this case from becoming bogged down in unnecessary complexity and controversy. The Tribe's proposal here does this by providing a basis for addressing the fundamental issues in the case now, in a manner that will best facilitate prompt resolution of the entire case. This approach is the best option to accomplish justice and obtain a complete resolution of the claims in this case.

Toward this end, the Tribe's proposal is for the Court to organize the proceedings on the motion to dismiss into two phases. The first phase would proceed with briefing on the government's motion to dismiss the claims relating to the TPA and IHS programs. Following the Court's decision, the second phase would commence, with the parties first assessing whether settlement is possible, and if not proceeding with discovery and briefing on the motion to dismiss with regard to all other claims.

Respectfully submitted,

Dated: February 26, 2007

s/ Craig J. Dorsay
Craig J. Dorsay, Esq.
Attorney at Law
1 S.W. Columbia, Suite 440
Portland, Oregon 97258
Telephone: (503) 790-9060
Facsimile: (503) 790-9068
craig@dorsayindianlaw.com

*Counsel of Record for Plaintiff*
*Samish Indian Nation*

Of Counsel:

William R. Perry, Esq.
Anne D. Noto, Esq.
Sonosky, Chambers, Sachse, Endreson & Perry LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
Telephone: (202) 682-0240, Fax: (202) 682-0249
wperry@sonosky.com
anoto@sonosky.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of February, 2007, I electronically filed the foregoing **SAMISH INDIAN NATION'S RESPONSE TO THE UNITED STATES' SUPPLEMENTAL BRIEF REGARDING ITS MOTION TO DISMISS** with the Clerk of Court, using the CM/ECF System which will send notification of such filing to all parties registered in the CM/ECF system for this matter.

DATED: February 26, 2007.

s/ Craig J. Dorsay
*Counsel of Record for Plaintiff*
*Samish Indian Nation*