# Public Law 106–291
# 106th Congress

## An Act

Oct. 11, 2000
[H.R. 4578]

Making appropriations for the Department of the Interior and related agencies for the fiscal year ending September 30, 2001, and for other purposes.

Department of the Interior and Related Agencies Appropriations Act, 2001.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the Department of the Interior and related agencies for the fiscal year ending September 30, 2001, and for other purposes, namely:

## TITLE I—DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

#### MANAGEMENT OF LANDS AND RESOURCES

For expenses necessary for protection, use, improvement, development, disposal, cadastral surveying, classification, acquisition of easements and other interests in lands, and performance of other functions, including maintenance of facilities, as authorized by law, in the management of lands and their resources under the jurisdiction of the Bureau of Land Management, including the general administration of the Bureau, and assessment of mineral potential of public lands pursuant to Public Law 96–487 (16 U.S.C. 3150(a)), $709,733,000, to remain available until expended, of which $3,898,000 shall be available for assessment of the mineral potential of public lands in Alaska pursuant to section 1010 of Public Law 96–487 (16 U.S.C. 3150); and of which not to exceed $1,000,000 shall be derived from the special receipt account established by the Land and Water Conservation Act of 1965, as amended (16 U.S.C. 460l–6a(i)); and of which $3,000,000 shall be available in fiscal year 2001 subject to a match by at least an equal amount by the National Fish and Wildlife Foundation, to such Foundation for cost-shared projects supporting conservation of Bureau lands and such funds shall be advanced to the Foundation as a lump sum grant without regard to when expenses are incurred; in addition, $34,328,000 for Mining Law Administration program operations, including the cost of administering the mining claim fee program; to remain available until expended, to be reduced by amounts collected by the Bureau and credited to this appropriation from annual mining claim fees so as to result in a final appropriation estimated at not more than $709,733,000, and $2,000,000, to remain available until expended, from communication site rental fees established by the Bureau for the cost of administering communication site activities: *Provided*, That appropriations herein made

**EXHIBIT 20**
In Support of Plaintiff's Opposition to
Motion to Dismiss on TPA & IHS
Samish v. U.S., No. 02-1383L

for emergency projects: *Provided further*, That pursuant to Public Law 97–365, the Department of the Interior is authorized to use up to 20 percent from the recovery of the delinquent debt owed to the United States Government to pay for contracts to collect these debts: *Provided further*, That funds made available under title IV of Public Law 95–87 may be used for any required non-Federal share of the cost of projects funded by the Federal Government for the purpose of environmental restoration related to treatment or abatement of acid mine drainage from abandoned mines: *Provided further*, That such projects must be consistent with the purposes and priorities of the Surface Mining Control and Reclamation Act: *Provided further*, That the State of Maryland may set aside the greater of $1,000,000 or 10 percent of the total of the grants made available to the State under title IV of the Surface Mining Control and Reclamation Act of 1977, as amended (30 U.S.C. 1231 et seq.), if the amount set aside is deposited in an acid mine drainage abatement and treatment fund established under a State law, pursuant to which law the amount (together with all interest earned on the amount) is expended by the State to undertake acid mine drainage abatement and treatment projects, except that before any amounts greater than 10 percent of its title IV grants are deposited in an acid mine drainage abatement and treatment fund, the State of Maryland must first complete all Surface Mining Control and Reclamation Act priority one projects.

## BUREAU OF INDIAN AFFAIRS

### OPERATION OF INDIAN PROGRAMS

For expenses necessary for the operation of Indian programs, as authorized by law, including the Snyder Act of November 2, 1921 (25 U.S.C. 13), the Indian Self-Determination and Education Assistance Act of 1975 (25 U.S.C. 450 et seq.), as amended, the Education Amendments of 1978 (25 U.S.C. 2001–2019), and the Tribally Controlled Schools Act of 1988 (25 U.S.C. 2501 et seq.), as amended, $1,741,212,000, to remain available until September 30, 2002 except as otherwise provided herein, of which not to exceed $93,225,000 shall be for welfare assistance payments and notwithstanding any other provision of law, including but not limited to the Indian Self-Determination Act of 1975, as amended, not to exceed $125,485,000 shall be available for payments to tribes and tribal organizations for contract support costs associated with ongoing contracts, grants, compacts, or annual funding agreements entered into with the Bureau prior to or during fiscal year 2001, as authorized by such Act, except that tribes and tribal organizations may use their tribal priority allocations for unmet indirect costs of ongoing contracts, grants, or compacts, or annual funding agreements and for unmet welfare assistance costs; and up to $5,000,000 shall be for the Indian Self-Determination Fund which shall be available for the transitional cost of initial or expanded tribal contracts, grants, compacts or cooperative agreements with the Bureau under such Act; and of which not to exceed $423,056,000 for school operations costs of Bureau-funded schools and other education programs shall become available on July 1, 2001, and shall remain available until September 30, 2002; and of which not to exceed $60,194,000 shall remain available until expended for housing improvement, road maintenance, attorney fees, litigation

support, self-governance grants, the Indian Self-Determination Fund, land records improvement, and the Navajo-Hopi Settlement Program; and of which not to exceed $108,000 shall be for payment to the United Sioux Tribes of South Dakota Development Corporation for the purpose of providing employment assistance to Indian clients of the Corporation, including employment counseling, follow-up services, housing services, community services, day care services, and subsistence to help Indian clients become fully employed members of society: *Provided*, That notwithstanding any other provision of law, including but not limited to the Indian Self-Determination Act of 1975, as amended, and 25 U.S.C. 2008, not to exceed $43,160,000 within and only from such amounts made available for school operations shall be available to tribes and tribal organizations for administrative cost grants associated with the operation of Bureau-funded schools: *Provided further*, That any forestry funds allocated to a tribe which remain unobligated as of September 30, 2002, may be transferred during fiscal year 2003 to an Indian forest land assistance account established for the benefit of such tribe within the tribe's trust fund account: *Provided further*, That any such unobligated balances not so transferred shall expire on September 30, 2003.

CONSTRUCTION

For construction, repair, improvement, and maintenance of irrigation and power systems, buildings, utilities, and other facilities, including architectural and engineering services by contract; acquisition of lands, and interests in lands; and preparation of lands for farming, and for construction of the Navajo Indian Irrigation Project pursuant to Public Law 87–483, $357,404,000, to remain available until expended: *Provided*, That such amounts as may be available for the construction of the Navajo Indian Irrigation Project may be transferred to the Bureau of Reclamation: *Provided further*, That not to exceed 6 percent of contract authority available to the Bureau of Indian Affairs from the Federal Highway Trust Fund may be used to cover the road program management costs of the Bureau: *Provided further*, That any funds provided for the Safety of Dams program pursuant to 25 U.S.C. 13 shall be made available on a nonreimbursable basis: *Provided further*, That for fiscal year 2001, in implementing new construction or facilities improvement and repair project grants in excess of $100,000 that are provided to tribally controlled grant schools under Public Law 100–297, as amended, the Secretary of the Interior shall use the Administrative and Audit Requirements and Cost Principles for Assistance Programs contained in 43 CFR part 12 as the regulatory requirements: *Provided further*, That such grants shall not be subject to section 12.61 of 43 CFR; the Secretary and the grantee shall negotiate and determine a schedule of payments for the work to be performed: *Provided further*, That in considering applications, the Secretary shall consider whether the Indian tribe or tribal organization would be deficient in assuring that the construction projects conform to applicable building standards and codes and Federal, tribal, or State health and safety standards as required by 25 U.S.C. 2005(a), with respect to organizational and financial management capabilities: *Provided further*, That if the Secretary declines an application, the Secretary shall follow the requirements contained in 25 U.S.C. 2505(f): *Provided further*, That any disputes

Department of the Interior, the hearing requirements of chapter 10 of title 25, United States Code, are deemed satisfied by a proceeding conducted by an Indian probate judge, appointed by the Secretary without regard to the provisions of title 5, United States Code, governing the appointments in the competitive service, for such period of time as the Secretary determines necessary: *Provided*, That the basic pay of an Indian probate judge so appointed may be fixed by the Secretary without regard to the provisions of chapter 51, and subchapter III of chapter 53 of title 5, United States Code, governing the classification and pay of General Schedule employees, except that no such Indian probate judge may be paid at a level which exceeds the maximum rate payable for the highest grade of the General Schedule, including locality pay.

SEC. 118. Notwithstanding any other provision of law, the Secretary of the Interior is authorized to redistribute any Tribal Priority Allocation funds, including tribal base funds, to alleviate tribal funding inequities by transferring funds to address identified, unmet needs, dual enrollment, overlapping service areas or inaccurate distribution methodologies. No tribe shall receive a reduction in Tribal Priority Allocation funds of more than 10 percent in fiscal year 2001. Under circumstances of dual enrollment, overlapping service areas or inaccurate distribution methodologies, the 10 percent limitation does not apply.

SEC. 119. None of the funds in this Act may be used to establish a new National Wildlife Refuge in the Kankakee River basin that is inconsistent with the United States Army Corps of Engineers' efforts to control flooding and siltation in that area. Written certification of consistency shall be submitted to the House and Senate Committees on Appropriations prior to refuge establishment.

Virginia.
Recreation and recreational areas.
16 USC 668dd note.

SEC. 120. The Great Marsh Trail at the Mason Neck National Wildlife Refuge in Virginia is hereby named for Joseph V. Gartlan, Jr. and shall hereafter be referred to in any law, document, or records of the United States as the "Joseph V. Gartlan, Jr. Great Marsh Trail".

SEC. 121. Funds appropriated for the Bureau of Indian Affairs for postsecondary schools for fiscal year 2001 shall be allocated among the schools proportionate to the unmet need of the schools as determined by the Postsecondary Funding Formula adopted by the Office of Indian Education Programs.

SEC. 122. (a) Notwithstanding any other provision of law, with respect to amounts made available for tribal priority allocations in Alaska, such amounts shall only be provided to tribes the membership of which on June 1, 2000 is composed of at least 25 individuals who are Natives (as such term is defined in section 3(b) of the Alaska Native Claims Settlement Act) who reside in the area generally known as the village for such tribe.

(b) Amounts that would have been made available for tribal priority allocations in Alaska but for the limitation contained in subsection (a) shall be provided to the respective Alaska Native regional nonprofit corporation (as listed in section 103(a)(2) of Public Law 104–193, 110 Stat. 2159) for the respective region in which a tribe subject to subsection (a) is located, notwithstanding any resolution authorized under federal law to the contrary.

SEC. 123. (a) In this section—

(1) the term "Huron Cemetery" means the lands that form the cemetery that is popularly known as the Huron Cemetery,