# DEPARTMENT OF THE INTERIOR AND RELATED AGENCIES APPROPRIATIONS FOR 1996

## HEARINGS

BEFORE A

SUBCOMMITTEE OF THE

COMMITTEE ON APPROPRIATIONS

HOUSE OF REPRESENTATIVES

ONE HUNDRED FOURTH CONGRESS

FIRST SESSION

---

SUBCOMMITTEE ON THE DEPARTMENT OF THE INTERIOR AND RELATED AGENCIES

**RALPH REGULA, Ohio, *Chairman***

JOSEPH M. McDADE, Pennsylvania
JIM KOLBE, Arizona
JOE SKEEN, New Mexico
BARBARA F. VUCANOVICH, Nevada
CHARLES H. TAYLOR, North Carolina
GEORGE R. NETHERCUTT, JR., Washington
JIM BUNN, Oregon

SIDNEY R. YATES, Illinois
NORMAN D. DICKS, Washington
TOM BEVILL, Alabama
DAVID E. SKAGGS, Colorado

NOTE: Under Committee Rules, Mr. Livingston, as Chairman of the Full Committee, and Mr. Obey, as Ranking Minority Member of the Full Committee, are authorized to sit as Members of all Subcommittees.

DEBORAH WEATHERLY, LORETTA BEAUMONT, MARK MIODUSKI, and JOEL KAPLAN,
*Staff Assistants*

---

## PART 11


| | Page |
|---|---|
| **Secretary of Interior** | **1** |
| **Office of Inspector General** | **171** |
| **Office of the Secretary** | **193** |
| **Office of the Solicitor** | **231** |
| **Office of Surface Mining** | **257** |
| **Bureau of Mining** | **325** |
| **Minerals Management Service** | **457** |
| **United States Geological Survey** | **541** |
| **Office of Territorial and International Affairs** | **793** |
| **Outside Witnesses Regarding TIA** | **828** |
| **Bureau of Indian Affairs** | **871** |
| **General Accounting Office on Indian Trust Accounts** | **985** |
| **Indian Health Service, Department of Health and Human Services** | **999** |
| **Indian Education, Department of Education** | **1045** |
| **Office of Navajo and Hopi Relocation** | **1079** |
| **Institute of American Indian and Alaska Native Art** | **1105** |


---

Printed for the use of the Committee on Appropriations

---

U.S. GOVERNMENT PRINTING OFFICE

WASHINGTON : 1995



**EXHIBIT 24**
In Support of Plaintiff's Opposition to Motion to Dismiss on TPA & IHS
Samish v. U.S., No. 02-1383L

INTERIOR APPROPRIATIONS SUBCOMMITTEE
HEARING QUESTIONS

**BUREAU OF INDIAN AFFAIRS**

| | |
|---|---|
| FY 1995 Appropriations | $1,747,091 |
| FY 1996 Request | $1,910,441 |
| Difference | +$163,350 |

| | |
|---|---|
| FY 1995 Staffing | 12,732 |
| FY 1996 Staffing | 12,626 |
| Difference | -106 |

**General**

**Question 1:** The Department is proposing an increase of $163 million above the FY 1995 enacted level for the Bureau of Indian Affairs (BIA), the single largest increase in the Department. In FY 1995, Government-wide funding for Native American programs totaled over $6 billion, of which only $1.7 billion came from BIA. To what extent do you consider other federal funding when you are formulating your budget and prioritizing your programs? For example, how does the BIA's economic development programs complement the economic development programs administered by the Administration of Native Americans?

**Answer:** BIA program managers maintain contact with their counterparts in other federal agencies, such as the Fish and Wildlife Service, Indian Health Service (IHS), and the Department of Education, to coordinate policies and programs and to assure that our resources complement rather than duplicate services to Indian tribes. BIA monitors legislation proposed for other federal programs, such as transportation, housing, and education, for impacts on and opportunities for Indian tribes. Often, legislation requires program coordination between BIA and other federal agencies, such as IHS, Labor, and Justice.

While the Administration of Native Americans (ANA) provides planning grants to tribes (no individual tribal members) for social and economic development strategies, the Bureau provides loans and grants to tribal and individual tribal member businesses. When a tribe has developed a strategy under an ANA planning grant which calls for a business, that business may apply for and receive a Bureau loan or grant. In this manner, the tribe controls the coordination of all federal programs available to them.

**Question 2:** Given the magnitude and complexity of the various Native American programs one-stop-shopping would make a lot of sense. I understand that BIA is working on this concept. What federal agencies are part of this effort? How will this program be implemented?

**Answer:** The Pine Ridge reservation is participating with the Bureau in a Reinvention Laboratory. The goal of the laboratory is to reengineer Federal Indian programs through

**Question 67:** Given the Committees allocations for FY 1996 and the out-years, we will be hard pressed to find the resources to fund these settlements at the current level and still provide the tribes with ongoing education, human services, community development, and natural resource programs. What is the minimum funding that can be provided by settlement?

**Answer:** The table on the previous page shows what the Bureau and the Department consider to be minimum FY 1996 funding for each enacted settlement. The request level provides funds for settlements already enacted into law. To delay funding would increase the overall cost due to interest that may be owed as a result of the delay, cost indexing included in several of the settlement acts, and contract penalties that might occur if the Navajo Indian Irrigation Project were delayed.

**Question 68:** Why can't the Committee provide some cap on funding let's say $75 million until these are paid for?

**Answer:** A cap of $75 million per year would be insufficient to cover the amounts required to implement the authorities contained in the enacted settlements, some of which have the payment amounts and schedule specified by statute.

**Other Questions**

**Question 69:** Your Budget proposes an increase of $2 million for small and needy tribes. In your justification you note that of the small tribes, 269 tribes (59 percent) receive tribal priority allocation funding below a minimum base threshold needed to maintain an effective tribal government organization. Is funding allocated to every tribe regardless of size?

**Answer:** Yes, Tribal Priority Allocations are distributed to every tribe. The Federal Government has a government-to-government relationship with all federally-recognized tribes. Population size is an initial allocation factor in some programs, such as Indian Child Welfare Assistance and Johnson-O'Malley Educational Assistance grants. The small and needy funds ensure that eligible tribes have the minimum resources necessary to establish and maintain a viable tribal government.

**Question 70:** Is there some level below which it doesn't make any sense to establish a government organization?

**Answer:** The statutory criteria for federal recognition does not include a minimum population size. Furthermore, the Administration does not discriminate based on population size.

**Question 71:** Of the 100 tribes that were furthest below the threshold, how many individuals are there in each tribe? How do you define needy in the context of this funding initiative?

**Answer:** The service populations varied from 24 in the Native Village of Chitina, Alaska, to 664 in the Tuscarora Nation of New York.