# INDIAN HEALTH CARE AMENDMENTS OF 1988

*P.L. 100-713, see page 102 Stat. 4784*

**DATES OF CONSIDERATION AND PASSAGE**

*House: September 13, October 12, 1988*

*Senate: September 28, October 14, 1988*

**Senate Report (Indian Affairs Committee) No. 100-508, Sept. 14, 1988 [To accompany S. 129]**

**House Conference Report No. 100-1075, Oct. 12, 1988 [To accompany H.R. 5261]**

**Cong. Record Vol. 134 (1988)**

*No House Report was submitted with this legislation. The Senate Report is set out below and the House Conference Report (page 6254) follows.*

## SENATE REPORT NO. 100-508

[page 1]

The Select Committee on Indian Affairs, to which was referred the bill (S. 129) to authorize and amend the Indian Health Care Improvement Act, and for other purposes, having considered the same, reports favorably thereon with an amendment in the nature of a substitute and recommends that the bill, as amended, do pass.

### PURPOSE

The purpose of S. 129, the Indian Health Care Amendments of 1987, is to reauthorize the Indian Health Care Improvement Act of 1976 through fiscal year 1991, to make amendments to the Indian Health Care Improvement Act, and to authorize appropriations to carry out the provisions of the Indian Health Care Improvement Act.

### BACKGROUND AND NEED

The Indian Health Care Improvement Act of 1976 (25 U.S.C. 1601, et seq.) and the Snyder Act of 1921 (25 U.S.C. 13) comprise the basic legislative authority for the health care programs that are administered by the Indian Health Service (IHS), an agency of the Public Health Service within the Department of Health and Human Services (DHHS). The Indian Health Care Improvement Act was enacted into law in 1976 based upon findings that the health status of American Indians and Alaska Natives continued to rank far below that of the general population, and that all other Federal services and programs were jeopardized by the low health status of American Indian people. The Act was amended and ex-





EXHIBIT 39
In Support of Plaintiff's Opposition to Motion to Dismiss on TPA & IHS
Samish v. U.S., No. 02-1383L

tended in 1980, continuing authority for appropriations for the provision of health care services to Indian and Alaska Native people through September 30, 1984.

Legislation to reauthorize the Act (S. 2166) was introduced in the 98th Congress, but was vetoed by the President following the sine die adjournment of the 98th Congress. Reauthorization legislation was again introduced in the Senate (S. 277) in the beginning of the 99th Congress. A companion House bill (H.R. 1426) was passed by the House on September 18, 1986, and was passed by the Senate by the Senate on October 8, 1986 with an amendment. The House concurred in the Senate amendment with amendments on October 10, 1986, and the Senate concurred in the House amendments to the Senate amendment with an amendment on October 18, 1986. The bill was not acted upon again by the House of Representatives before the sine die adjournment of the 99th Congress. The programs authorized in the Indian Health Care Improvement Act have been extended by appropriations acts of the Congress through fiscal year 1989.

Although significant gains have been realized in improving the health status of Indian and Alaska Native people since the passage of the Act of 1976, health status parity with that of the general United States population has yet to be achieved. The age-adjusted mortality rate among American Indians is 330 percent higher than the general U.S. population, all races, for all forms of tuberculosis; 300 percent higher for chronic liver disease and cirrhosis; 210 percent higher for diabetes mellitus; and 170 percent higher for pneumonia and influenza. And, although the Indian population is the fastest growing population in the United States in numbers of births, the postneonatal mortality rate among native infants is 170 percent higher than the rate for the U.S. all races. Deaths attributable to accidents exceed national averages by 250 percent.

In exchange for lands ceded to the United States by Indian tribes under the provisions of treaties, executive orders, and various acts of the Congress, the Federal government has provided health care services to Native Americans since the early nineteenth century. Federal programs for the benefit of American Indians were first administered by the U.S. War Department, but in 1849, the responsibility for the provision of health care services to Indian people was transferred, along with the Bureau of Indian Affairs, to the Department of the Interior. In 1921, Congress enacted the Snyder Act, establishing the first legislative authorization for appropriations for the "relief of distress and conservation of health" of Indian people. Later, in 1955, the responsibility for the provision of health care services to Indian people was again transferred, this time to the Division of Health in the Department of Health, Education and Welfare, under the authority of an Act to Transfer the Maintenance and Operation of Hospital and Health Facilities for Indians to the Public Health Service (42 U.S.C. 2001, et seq.). The Division of Health subsequently came to be known as the Indian Health Service within the reorganized Department of Health and Human Services, where the responsibility for Indian health care continues to be vested.

The early focus of the Indian Health Service (IHS) was on the elimination of the infectious diseases that were widespread in the

Indian population and on chronic care for the large numbers of Indian people suffering from tuberculosis. Currently, the mission of the IHS, in carrying out the policy established by the Congress in the Indian Health Care Improvement Act, is to raise the health status of American Indians and Alaska Natives to the highest possible level. IHS defines its service delivery responsibilities to include a comprehensive range of inpatient and ambulatory medical services, dental care, mental health and alcoholism services, preventive health (immunizations and environmental services such as sanitation and water safety), health education, and Indian health manpower development programs. A broader definition of IHS responsibilities is applied in isolated rural areas on or near Indian reservations, because the infrastructure of roads, utilities, and public services that support health care delivery to non-Indian rural residents is often lacking on Indian reservations. IHS also operates a health facilities construction component that provides hospitals, clinics, and living quarters for IHS facility staff for reservation-based IHS services. Programs for Indians residing in urban areas do not directly provide hospital care, but do offer a range of ambulatory medical, dental, mental health, alcoholism treatment, support and referral services.

The Indian Health Service operates the largest direct health care delivery system within the Department of Health and Human Services, with over 11,400 permanent employee positions. IHS administers health care programs to Indians and Alaska Natives through eight area offices and four program offices, each of which has the responsibility for the provision of health care services within its respective geographic area. The area offices and program offices also have responsibility for overseeing the administration of IHS service units, the most local administrative entity, through which services are provided directly or by contract to the eligible Indian population. Each service unit may include one or more IHS hospitals, health centers, school health centers, health stations, or health locations. A health center is a facility that is open a minimum of forty hours per week and offers acute and chronic care services on an outpatient basis. A health station is a facility that may be mobile and which provides outpatient services on less than a forty hour per week basis. A health location is a site for the periodic provision of outpatient health services often provided by traveling health care professionals. In areas in which there are no IHS facilities or where an IHS facility lacks the capacity to provide certain types of health care services, the IHS contracts with private health care providers for the provision of health care services to Indian patients. IHS also provides technical assistance in the construction and operation of sewage treatment and clean water facilities.

With the enactment of the Indian Self-Determination and Education Assistance Act in 1975, Indian tribal governments, tribal organizations, Alaska Native communities, and Alaska Native regional health and village corporations have begun to assume the responsibility for the provision of health care under contract with the Indian Health Service. In addition, IHS programs, such as the Community Health Representative program, that are administered directly by Indian tribal governments, have done much to heighten

awareness of the importance of preventive health care and health education in Indian communities.

A report released by the U.S. Congress Office of Technology Assessment (OTA) in February, 1987, projects that IHS will experience serious physician shortages in the near future. In past years, the Indian Health Service physician supply has come primarily from the National Health Service Corps, a scholarship program operated by the Public Health Service that requires a service payback obligation as an exchange for scholarship assistance in medical school and residency training. National Health Service Corps obligees can elect to fulfill their obligations through service in the Indian Health Service. However, because of the phased elimination of the scholarship program, there will be only two obligees available for service in 1992. Recognizing the need for additional manpower, IHS has proposed to initiate a program that would recruit volunteers into the Service, but the Office of Technology Assessment projects that the IHS initiative will not be sufficient to meet the need, given the low salaries that IHS must offer and unattractive working and living conditions that are associated with the provision of health care on Indian reservations. For the past two years, the President's Budget has also proposed the phased elimination of the Indian Health Service scholarship program—the last remaining source of health care professional supply to the Indian Health Service.

To ascertain the need to reauthorize the Indian Health Care Improvement Act of 1976, the Select Committee on Indian Affairs held six hearings in the 98th Congress. Hearings were held in conjunction with the House Interior and Insular Affairs Committee in Phoenix, Arizona on March 31, 1983. The Senate Select Committee on Indian Affairs held further hearings on the need for reauthorization of the Act in Grand Forks, North Dakota on June 2, 1983; in Anchorage, Alaska on June 3, 1983; in Seattle, Washington on June 8, 1983; in Billings, Montana on July 8, 1983; and in Washington, D.C. on July 28, 1983. The Committee received testimony from Indian tribes, urban Indian health care programs, tribal organizations, physicians and other health care professional employees of the Indian Health Service, representatives of the Department of Health and Human Services, as well as physicians and health care professionals from the private sector. Testimony received by the Committee strongly supported the need to reauthorize the Indian Health Care Improvement Act, given the outstanding unmet health care needs of Indians and Alaska Natives that were documented in the hearing process.

On November 18, 1983, Senator Mark Andrews, Chairman of the Senate Indian Affairs Committee, introduced S. 2166, a bill to reauthorize the Indian Health Care Improvement Act of 1976 through fiscal year 1988. The Committee held two hearings on the bill in Washington, D.C. on February 29, 1984, and in Denver, Colorado on March 17, 1984. In response to testimony received from national Indian organizations, professional medical associations, Indian tribes, urban Indian health care organizations, professional medical associations, and Administration representatives, the Committee made several changes to the bill as introduced, and an amendment in the nature of a substitute to S. 2166 was unanimously approved

by the members of the Select Committee on Indian Affairs in a May 9, 1984 mark-up of the bill to reauthorize the Indian Health Care Improvement Act. S. 2166 was passed by both houses of the Congress in the 98th session of the Congress, but was vetoed by the President on October 19, 1984, following the sine die adjournment of the 98th Congress.

Recognizing that the unmet health care needs of Native Americans were continuing to worsen, the Chairman of the Indian Affairs Committee introduced a bill to reauthorize the Act (S. 277) at the beginning of the 99th session of the Congress. Largely due to the efforts of tribal leaders seeking a dialogue between the Administration and the Congress to avoid the possibility of another veto, the Office of the Secretary of the Department of Health and Human Services agreed to enter into discussions with Select Committee representatives. Several months of discussions yielded a version of the reauthorization bill to which the Administration was not opposed. Following two additional hearings in the 99th Congress, the Committee reported S. 277 on May 16, 1985.

## Legislative History

On January 6, 1987, Senator Inouye introduced the Indian Health Care Amendments of 1987 (S. 129) for himself and Senators DeConcini, Matsunaga, Kennedy, Evans, Murkowski, Bingaman, Stevens, McCain, Melcher, Pressler, Evans, Cranston, Durenberger, Cochran, Nickles, Hatfield, Baucus and Domenici. S. 129 was referred to the Select Committee on Indian Affairs. Given the thorough hearing record established in the two previous sessions of the Congress, and the results of discussions with the representatives of the Department of Health and Human Services, the Chairman requested that the Committee proceed to consideration of S. 129 without further hearings. S. 129 was ordered reported with an amendment in the nature of a substitute on January 23, 1987, and further amendments to the amendment in the nature of a substitute were ordered reported on March 19, 1987. A bill to authorize and amend the Indian Health Care Improvement Act (H.R. 2290) was introduced in the House of Representatives on May 5, 1987 by Congressman Udall, for himself and Congressmen Richardson, Campbell, Johnson of South Dakota, Lowry of Washington, Lewis of Georgia, Vento, Young of Alaska, Lagomarsino, Bereuter, and Rhodes. H.R. 2290 was jointly referred to the Committee on Energy and Commerce, and to the House Interior and Insular Affairs Committee. The bill was ordered reported by the House Interior and Insular Affairs Committee on June 3, 1987 with amendments, and by the Subcommittee on Health and the Environment of the House Energy and Commerce Committee on October 9, 1987, with amendments.

## Summary of Major Provisions

### TITLE I

*Indian health manpower programs and scholarship assistance*

In its total workforce of approximately 11,400 (1985 estimates), the Indian Health Service employs approximately 750 physicians,

has never been allocated enough funding to enable cost of living increases to CHRs, nor any of the other benefits that are customarily associated with employment. CHRs often serve as volunteers when funding is short, and upon retirement, receive no severance pay or retirement benefits.

In order to insure a greater stability of funding for the CHR program, Title I expresses the intent of the Congress that the Community Health Representative is to be funded under the authority of the Snyder Act of 1921, 25 U.S.C. 13, as a permanent part of the IHS health care delivery system, and directs the Secretary to maintain a Community Health Representative program that provides for the training of Indian people as health paraprofessionals, and which uses Indian paraprofessionals in the provision of health care to Indian communities. In order to assure that a high standard of paraprofessional training is provided to Community Health Representatives, Title I directs the Secretary to develop a curriculum that combines education in the theory of health care with supervised practical experience in the provision of health care; which provides instruction and practical experience in health promotion and disease prevention activities, and which provides instruction in the latest and most effective social, educational, and behavioral approaches to the establishment and maintenance of good health habits. The Secretary is further directed to develop a system that identifies the needs of Community Health Representatives for continuing education in health care, health promotion, and disease prevention and to develop programs that meet the needs for such continuing education.

Title I also directs the Secretary to maintain a system under which the work of the Community Health Representatives is closely monitored, reviewed and evaluated, and the Secretary is further directed to ensure that the provision of health care, health program, and disease prevention activities is consistent with the traditional health care practices and cultural values of the Indian tribes served by the Community Health Representative program.

TITLE II

*Indian health care improvement fund*

Based upon the documented backlog of services and waiting lists for surgeries that in some areas are as long as three to four years, Title II establishes an Indian Health Care Improvement Fund and authorizes the Secretary to expend amounts appropriated to that fund for the purposes of: raising the health status of Indian people to a zero level of deficiency; eliminating backlogs in the provision of health care services to Indians; meeting the health needs of Indians in an efficient and equitable manner; and augmenting the ability of the Indian Health Service to meet the health service responsibilities of providing clinical care, both direct and indirect, including clinical eye and vision care; preventive health care; direct and indirect dental care; mental health care, including community mental health services, inpatent mental health services, dormitory mental health services, therapeutic and residential treatment centers, and training of traditional Indian practitioners; emergency medical services; treatment and control of and rehabilitative care

related to alcoholism and drug abuse including fetal alcohol syndrome; home health care; community health representatives, and maintenance and repair.

Because in the past there have been attempts to offset amounts that have been appropriated to address backlogs against amounts that are requested to address current health care needs, Title II makes clear that any amounts appropriated to the Fund are not to be used to offset or limit any appropriations made to the Indian Health Service under the authority of the Snyder Act of 1921 or any other provision of law.

To assure that amounts appropriated to the Fund are to be used first for those tribes that have the greatest levels of health resources deficiencies, Title II provides that funds may be allocated or used for the benefit of an Indian tribe which has a health resources deficiency level of Level I or II, only if as sufficient amount of funds have been appropriated to raise all Indian tribes to a health resources deficiency Level II.

In an effort to assure that funds are distributed according to level of deficiency within a service unit, the Title also provides that funds may be allocated on a service unit basis provided that the funds are used to raise each tribe within the service unit to a Level II, and that funds not be expended within a service unit on a tribe that has a deficiency level of less than Level II unless all other tribes within the service unit have been raised to a Level II. And to assure that the manner in which funds are allocated is based upon tribal priorities in consultation with the Indian Health Service, the bill provides that the allocation of funds to a service unit and to what purposes such funds should be applied, is to be determined by the Indian Health Service in consultation with the affected tribes.

The term "health resources deficiency" means a percentage that is determined by dividing the excess, if any, of the value of the health resources that an Indian tribe needs over the value of the health resources available to the tribe, by the value of the health resources that the tribe needs. The health resources available to a tribe include health resources provided by the Indian Health Service as well as health resources used by the Indian tribe, including services and financing systems provided by any Federal programs, private insurance, and programs of state or local governments.

Title II directs the Secretary to establish procedures that will allow a tribe to petition the Secretary for a review of any determination of the health resources deficiency level of the tribe. Title II makes clear that programs administered by a tribe or tribal organization under the authority of the Indian Self-Determination and Education Assistance Act are to be eligible on an equal basis with programs that are administered directly by the Indian Health Service.

*Health services priority system report to Congress*

It is the intent of the Committee that the Federal government should identify health services deficiencies among Indian tribes, and over a four-year period, raise all Indian tribes to a zero level of health resources deficiency. Although the Congress has consistently recognized the serious levels of unmet health needs among Indian tribes, resources have never been sufficient to eliminate the identi-

fied health deficiencies. Congress seeks through Title II to develop a procedure for identifying the amounts of resources that would be needed to eliminate those deficiencies. The Committee believes that the approach established in Title II would create a rational basis for the consideration of the annual budget for Indian Health services. This annual budget would be based upon identified health resources deficiencies, and calculations of the amounts of resources that would be needed to raise tribes to a level II, to a level I, and to a zero level of resources deficiencies. This would allow the Congress to rationally balance the need to address unmet Indian health needs, within the context of federal budget constraints. Over the past several years, Administration budgets for Indian health have not reflected the realities of delivering health services on Indian lands, or the continued commitment of the Congress to maintain the Federal responsibility in the delivery of those health services. While Title II does not guarantee that Administration budget requests will reflect these realities, it does mandate a set of objective criteria against which to compare the President's annual budget requests.

In order that the Congress and the tribes may be better informed on the status of outstanding health service requirements, unmet health care needs, the necessity for increased appropriations to reduce health resource deficiency levels, and in order that the Department of Health and Human Services may be better informed of tribal health care priorities and to consider such priorities in the development of the Department's annual budget request, Title II further directs the Secretary to submit a report to the Congress on the current IHS health services priority system for each tribe or service unit including newly recognized or acknowledged tribes. The report is to contain the methodology currently in use by the Service for determining tribal health resources deficiencies; as well as the most recent application of the methodology; the level of health resources deficiency for each tribe served by the Service; the amount of funds necessary to raise all Indian tribes served by the Service below health resources deficiency Level II to health resources deficiency Level II; the amount of funds necessary to raise all tribes served by the Service below health resources deficiency Level I to health resources deficiency Level I; the amount of funds necessary to raise all tribes served by the Service to zero health resources deficiency; and an estimate of the amount of health service funds appropriated under the authority of the Indian Health Care Improvement Act or any other Act including the amount of any funds transferred to the Service for the preceding fiscal year that is allocated to each service unit, Indian tribe, or comparable entity, the number of Indians eligible for health services in each service unit or Indian tribe, and the number of Indians using the Service resources made available to each service unit or Indian tribe. The Secretary is further directed to annually update the tribal specific health plans which were developed as part of the plan required, under section 703 of the Act.

It is the Committee's intent that the annual report to the Congress on the health services priority system be based upon annual updates of the tribal specific health plans that were orignally authorized by the Indian Health Care Improvement Act. Tribal spe-

cific health plans represent a substantial repository of data about the history, geography, population, demographics and heath needs of each Indian tribe, as identified by the tribal community in consultation with the Indian Health Service. The Committee believes that these tribal specific health plans should be used as a basis for further planning, and that the plans should be updated to reflect new developments in the roles of Indian tribal governments in the provision of health care services. Tribal governments now perform complex, multifaceted roles in the provision of health care on Indian tribes, regulating environmental matters on Indian lands, and interacting with federal, state and county governments. In addition, there have been new institutional developments in the fuctional roles of Indian tribes. Fewer tribal governments now rely upon the advisory health board system, and instead, communicate and interact directly with other governmental entities on consumer, management planning, and policy matters. These changes in the roles of tribal governments need to be taken into account in the updating of tribal specific health plans. It is the Committee's intent that the Indian Health Service work cooperatively and in consultation with Indian tribal governments to identify health needs, to jointly plan for the provision of health care services to address those needs, and to allocate resources based upon a rational identication of needs.

*Indian catastrophic health emergency fund*

A significant problem in the administration of limited contract health care resources has been consistently documented. While presently each IHS area office is authorized to administer its contract health care funds in any manner the office may elect, in practice, contract health care funds are generally paid out in reimbursement of claims from contract care providers for authorized care provided to Indian patients, as claims are submitted. In the event of a catastrophic illness or injury with which extraordinary costs for care are associated, the entire annual contract care budget of an IHS area office can be exhausted with the costs associated with one catastrophic illness or injury. Examples of high cost cases include traumas associated with automobile accidents, and complications of pregnancies and childbirth, including fetal alcohol syndrome. Given limited contract health care funds, a single incident involving a motor vehicle accident in which the victim suffers a spinal cord injury and requires intensive care, can exhaust a local service unit's annual allocation of contract care funds. To address this problem, Title II establishes an Indian Catastrophic Health Emergency Fund to be administered by the Secretary, acting through the central office of the Indian Health Service, solely for the purpose of meeting the extraordinary medical costs associated with the treatment of victims of disasters or catastrophic illnesses who are within the responsibility of the Indian Health Service. The Fund is not to be allocated, apportioned, or delegated on a service unit, area office, or any other basis, and no part of the Fund or its administration is to be subject to contract or grant under any law, including the Indian Self-Determination and Education Assistance Act.

[page 29]

The Committee provision identifies each of these categories of California Indians for the purpose of determining eligibility for IHS services. As previously noted, it is the Committee's intent that these provisions not be construed to increase the IHS eligibility criteria. The provision is intended, however, to protect members of the current service population from any loss of eligibility through administrative policy changes, including specifically the amendments proposed by the Department of Health and Human Services that were published in the *Federal Register* on June 10, 1986, on pages 21118 *et seq*.

*California as a contract health service delivery area*

The bill also provides for the designation of the state of California as a contract health service delivery area for the purpose of providing contract health services to Indians in that state with the exception of certain named counties in California (Alameda, Contra Costa, Los Angeles, Marin, Orange, Sacramento, San Francisco, San Mateo, Santa Clara, Kern, Merced, Monterey, Napa, San Benito, San Joaquin, San Luis Obispo, Santa Cruz, Solano, Stanislaus and Ventura).

*Contract health facilities*

The Act is further amended to make clear that the Indian Health Service is to provide funds for health care programs and facilities operated by tribe and tribal organizations under contracts with IHS entered into under the authority of the Indian Self-Determination and Education Assistance Act on the same basis as such funds are provided to programs and facilities operated directly by the Service for the purposes of maintenance and repair of clinics owned or leased by such tribes or tribal organizations, employee training, cost-of-living increases for employees, and for any other expenses relating to the provision of health services.

*National Health Service Corps*

In the past, National Health Service Corps personnel have been removed from programs operated by a tribe or tribal organization under contract with the IHS without advance notice to the tribal health care provider. This practice not only interrupts the continuity of care that can be provided by the tribal health care system, and can serve as a major obstacle to service delivery planning, but often, it is many months before the tribal provider can locate and hire a replacement physician or other health care personnel. An amendment to the Act provides that the HHS Secretary may only remove a member of the National Health Service Corps from a health facility operated by a tribe or tribal organizations under a contract with IHS entered into under the authority of the Indian Self-Determination and Education Assistance Act if the Secretary has provided written notice of the removal or withdrawal to such tribe or tribal organization at least sixty days before the date on which the contract is entered into or renewed.

*Health services for ineligible persons*

These amendments define those persons that will be eligible to receive services from the Indian Health Service although they

additionally amends the Public Health Service Act to define the term "Native Hawaiian" to mean any individual who is a citizen of the United States, and who has any ancestors that were natives, prior to 1778, of the area which now comprises the State of Hawaii. Section 106 authorizes appropriations in the amount of $1,800,000 for fiscal year 1988, and for such fiscal year thereafter for Native Hawaiian health profession scholarships.

Section 107 amends Title I to add a new section 107 which authorizes the Secretary of the Department of Health and Human Services, under the authority of the Snyder Act of 1921 (25 U.S.C. 13), to maintain a community health representative program, the Indian Health Service is to provide for the training of Indians as health paraprofessionals, and is to use such paraprofessionals in the provision of health care to Indian communities. The Secretary, acting through the Service, shall provide a high standard of paraprofessionals training to Community Health Representatives to ensure that the community Health Representative provide quality health care to the Indian communities served by such program. In order to provide training, the Indian Health Service shall develop a curriculum that combines education in the theory of health care with supervised practical experience in the provision of health care. This training shall also provide instruction and practical experience in health promotion and disease prevention activities, particularly; nutrition, physical fitness, weight control, cessation of tobacco smoking, stress management, control of alcohol and drug abuse (including prevention of fetal alcohol syndrome), control of high blood presssure, prevention of lifestyle-related accidents, prevention and management of hearing and vision problems, and prevention of diabetes. This training shall also provide instruction in the latest and most effective social, educational, and behavioral approaches to the establishment and maintenance of good health habits.

Section 107 also authorizes the Secretary of Health and Human Services to develop a system which identifies the needs of Community Health Representatives for continuing education in health care, health promotion, and disease prevention and to develop programs that meet the needs for continuing education that have been identified by the system. The Secretary is further authorized to develop and maintain a system that provides close supervision of community health representatives, and to develop a system under which the work of Community Health Representatives is reviewed and evaluated. The Secretary is also authorized to ensure the provision of health care, health promotion, and disease prevention activities are consistent with the traditional health care practices and cultural values of the Indian tribes served by the Community Health Representatives program.

## TITLE II—HEALTH SERVICES

Section 201 amends Section 201 of the Indian Health Care Improvement Act to authorize the Secretary of the Department of Health and Human Services to expend funds that are appropriated under the authority of subsection (j) of section 201, through the Indian Health Service, for the purposes of: raising the health

status of Indians to a zero level of deficiency; eliminating backlogs in the provision of health services to Indians; meeting the health needs of Indians in an efficient and equitable manner; and augmenting the ability of the Indian Health Service to meet the health service responsibilities of; direct and indirect clinical care, including clinical eye and vision care; preventive health, direct and indirect dental care, mental health, including community mental health services, inpatient mental health services, dormitory mental health services, therapeutic and residential treatment centers, and training of traditional Indian practitioners; emergency medical services; treatment of control of, and rehabilitative care related to, alcoholism and drug abuse (including fetal alcohol syndrome) among Indians; home health care; community health representatives; and maintenance and repair. Section 201 provides that any funds appropriated under the authority of section 201(j) are not to be used to offset or limit any appropriations made to the Indian Health Service under the authority of the Snyder Act of 1921 (25 U.S.C. 13) or any other provision of law.

Section 201 further provides that funds that are appropriated under the authority of section 201(j) may be allocated to or used for the benefit of any Indian tribe which has a health resources deficiency level at Level I or II, only if a sufficient amount of funds have been appropriated under the authority of section 201(j) to raise all other Indian tribes to a Level II of health resources deficiency. Section 201 also provides that funds appropriated under the authority of section 201(j) may be allocated on a service unit basis, but with the proviso that such funds must be used by each service unit in accordance with the requirements of section 201(b)(2) to raise the deficiency level of each tribe served by the service unit. Section 210 provides that the apportionment of funds allocated to a service unit under section 201(b)(3)(A) are to be determined jointly by the the Indian Health Service and the affected Indian tribes. Section 201 defines the health resources deficiency levels of Indian tribes and provides that Level I means to zero to twenty percent deficiency, Level II mans to twenty-one of forth percent deficiency; Level III means a forth-one to sixty percent deficiency, Level IV means a sixty-one to eighty percent deficiency, and Level V means an eighty-one to one-hundred percent deficiency.

Section 201 defines the term "health resources deficiency" to mean a percentage that is derived by first dividing the value of the health resources an Indian tribe needs by the value of health resources available to the tribe, then dividing that quotient by the value of the health resources that the Indian tribe needs. Section 201 states that the health resources available to an Indian tribe includes health resources provided by the Indian Health Service, as well as health resources used by the Indian tribe, which include services and financing systems provided by any Federal programs, private insurance, and programs of State or local governments. The Secretary of the Department of Health and Human Services shall promulgate regulations which provide procedure to allow any Indian tribe to petition the Secretary for a review of any determination of the health resources deficiency level of such tribe. Section 201 provides that programs administered by any Indian tribe or tribal organization under the authority of the Indian Self-Determi-

nation and Education Assistance Act are to be eligible for funds appropriated under the authority of section 201(j) on an equal basis with programs that are administered directly by the Indian Health Service.

Section 201 provides that if funds are allocated to a tribe or service unit under the authority of section 201 are used for a contract entered into under the Indian Self-Determination and Education Assistance Act, a reasonable portion of such funds may be used for health planning, training, technical assistance, and other administrative support functions. A reasonable portion means any percentage of such funds that does not exceed the negotiated indirect cost rate of the relevant tribe. Section 102 authorizes the Secretary of the Department of Health and Human Services, acting through the Indian Health Service, to expend directly or by contract, including contracts entered into under the authority of the Indian Self-Determination and Education Assistance Act, not less than one percent of the funds appropriated under the authority of section 201(j) for research in the area of Indian Health Service health responsibilities set forth in section 201(a)(4) (A) through (H).

Section 201 requires the Secretary of the Department of Health and Human Services to submit to the Congress by no later than the date that is sixty days after the enactment of the Indian Health Care Amendments of 1987, the current health services priority system report of the Indian Health Service for each Indian tribe or service unit, including newly recognized or acknowledged tribe. The health services priority system report required by section 201 shall set out: a description of methodology for determining tribal health resources deficiencies, including the most recent application of that methodology; the level of health resources deficiency for each Indian tribe served by the Indian Health Service; the amount of funds necessary to raise all Indian tribes served by the Indian Health Service below health resources deficiency level II to health resources deficiency level II; the amount of funds necessary to raise all tribes served by the Indian Health Service to zero health resources deficiency. The health services priority system report required by section 201 shall also include an estimate of: the amount of health service fund appropriated under the authority of the Indian Health Care Improvement Act, or any other Act, including the amount of any funds transferred to the Indian Health Service, for the preceding fiscal year which is allocated to each service unit, Indian tribe or comparable entity; the number of Indians eligible for health services in each service unit or Indian tribe; and the number of Indians using the Indian Health Service resources made available to each service unit or Indian tribe.

Section 201 requires the Secretary of the Department of Health and Human Services, acting through the Indian Health Service and in conjunction with each Indian tribe, to annually update the tribal specific health plans that were developed as part of the plan required under section 703 of the Indian Health Care Improvement Act. The updating of the tribal specific health plans is to be carried out in accordance with the methodology submitted to the Congress as part of the current health services priority system report re-

quired by section 201, as modified through consultation with the Indian tribe to which such tribal specific health plan relates.

Section 201 also requires the Secretary of the Department of Health and Human Services to submit to the Congress an annual report on the health services priority system of the Indian Health Service by no later than sixty days after the date the President submits to the Congress the budget required under section 1105 of Title 31 of the United States Code, for any fiscal year beginning after fiscal year 1988. The report is to be based on the updated tribal specific health plans required by section 201. The report shall include information on any changes in the methodology used by the Indian Health Service to develop the health services priority system report. Section 201 directs the President to include in the budget submitted under section 1105 of title 31 of the United States Code for each fiscal year, a separate statement that specifies the amount of funds requested to carry out the provisions of section 201 for the relevant fiscal year, and that specifies the total amount of funds obligated or expended in the most recently completed fiscal year to carry out section 201(g) and the total amount obligated or expended in the most recently completed fiscal year to carry out each of the subparagraphs of section 201(a)(4). Section 201 provides that funds appropriated under the authority of section 201 for any fiscal year are to be included in the base budget of the Indian Health Service for the purpose of determining appropriations under the authority of section 201 in subsequent fiscal years. Section 201 further provides that nothing in section 201 is intended to diminish the primary responsibility of the Indian Health Service to eliminate existing backlogs in unmet health care needs, nor are the provisions of section 201 intended to discourage the Indian Health Service from undertaking additional efforts to achieve parity among Indian tribes and Indian Health Service service units.

Section 201(j) authorizes appropriations for the purpose of carrying out the provisions of section 201 in the amount of $18,000,000 for fiscal year 1988; $19,000,000 for fiscal year 1989; $19,000,000 for fiscal year 1990; and $20,000,000 for fiscal year 1991. Section 201 provides that any funds appropriated under the authority of section 201(j) are to be designated as the Indian Health Care Improvement Fund. Section 201 also amends section 4 of the Indian Health Care Improvement Act by striking out subsection (i), (j), and (k), and by inserting in lieu thereof, new subsections (i) and (j) to provide a definition of the term "area office" which means an administrative entity including an Indian Health Service program office, within the Indian Health Service, through which services and funds are provided to the service units within a defined geographical area. Section 201 also defines "service unit" to mean an administrative entity within the Indian Health Service, or a tribe or tribal organization operating health care programs or facilities with funds from the Indian Health Service under the authority of the Indian Self-Determination and Education Assistance Act, through which services are provided, directly or by contract, to the eligible Indian population within a defined geographic area.

Section 202 amends Title II of the Act to add a new section 202 of the Indian Health Care Improvement Act establishing an Indian