# FEDERALLY RECOGNIZED INDIAN TRIBE LIST ACT OF 1994

*P.L. 103–454, see page 108 Stat. 4791*

DATES OF CONSIDERATION AND PASSAGE

*House: October 3, 1994*

*Senate: October 8, 1994*

**Cong. Record Vol. 140 (1994)**

**House Report (Natural Resources Committee)**
**No. 103–781. Oct. 3, 1994**
**[To accompany H.R. 4180]**

*No Senate Report was submitted with this legislation.*

## HOUSE REPORT NO. 103–781

[page 1]

The Committee on Natural Resources, to whom was referred the bill (H.R. 4180) to prohibit the withdrawal of acknowledgement or recognition of an Indian tribe or Alaska Native group or of the leaders of an Indian tribe or Alaska Native group, absent an Act of Congress, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

* * * * *

[page 2]

* * * * *

PURPOSE

The purpose of H.R. 4180 is to require the Secretary of the Interior to publish an annual list of all Indian tribes eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

BACKGROUND

The question of whether a Native American Group constitutes an Indian tribe is one of immense significance in federal Indian law. Because Congress' power to legislate for the benefit of Indians is limited by the Constitution to Indian tribes,[1] for most federal purposes it is not enough that an individual simply be an Indian to receive the protections, services, and benefits offered to Indians; rather, the individual must also be a member of an Indian tribe.[2] "Recognized" is more than a simple adjective; it is a legal term of art. It means that the government acknowledges as a matter of law



**EXHIBIT 48**
In Support of Plaintiff's Opposition to Motion to Dismiss on TPA & IHS
Samish v. U.S., No. 02-1383L

that a particular Native American group is a tribe by conferring a specific legal status on that group, thus bringing it within Congress' legislative powers. This federal recognition is no minor step. A formal political act, it permanently establishes a government-to-government relationship between the United States and the recognized tribe as a "domestic dependent nation,"[3] and imposes on the government a fiduciary trust relationship to the tribe and its members. Concomitantly, it institutionalizes the tribe's quasi-sovereign

[1] U.S. CONST., art. I, § 8, cl. 3; cf. U.S. CONST., art. II, § 2, cl. 2.
[2] See, e.g., *Epps* v. *Andrus*, 611 F.2d 915, 918 (1st Cir. 1979)(per curiam).
[3] *Cherokee Nation* v. *Georgia*, 30 U.S. (5 Pet.) 1, 14 (1831).

[page 3]

status,[4] along with all the powers accompanying that status such as the power to tax,[5] and to establish a separate judiciary.[6] Finally, it imposes upon the Secretary of the Interior specific obligations to provide a panoply of benefits and services to the tribe and its members.[7] In other words, unequivocal federal recognition of tribal status is a prerequisite to receiving the services provided by the Department of the Interior's Bureau of Indian Affairs (BIA),[8] and establishes tribal status for all federal purposes.

25 C.F.R. § 83.5 requires the Department to publish in the Federal Register, not less than every three years, a list of all Indian tribes entitled to receive services from the BIA by virtue of their status of Indians.[9] Appearing on that list is a functional precondition to receipt of those services. In addition to the BIA, other federal agencies which provide services to the tribes use the list to determine eligibility.

While the Department clearly has a role in extending recognition to previously unrecognized tribes,[10] it does not have the authority to "derecognize" a tribe. However, the Department has shown a disturbing tendency in this direction. Twice this Congress, the Bureau of Indian Affairs (BIA) has capriciously and improperly withdrawn federal recognition from a native group or leader.

First, the BIA unilaterally withdrew recognition from the chosen leader of the Oneida Nation of New York last year without consulting, notifying or discussing the decision with the Oneida Nation or its leaders, or with this Committee. After active intercession by members of the House, the Department reversed its decision. Then in October, the Bureau unilaterally removed the Central Council of the Tlingit and Haida tribes from its list of recognized tribes. The BIA undertook this action precipitously, and with no more than a cursory post facto notification to the Council. This, despite the fact the Council was explicitly recognized as a tribal organization in 1975, and has appeared on the BIA's list of recognized tribes every year since 1982. Congress was again required to intervene on behalf of the recognized group to restore federal recognition.[11]

Finally, in a recent letter to the Committee Chairman, the BIA indicated that it intended to differentiate between federally recognized tribes as being "created" or "historic." The BIA had taken the position that "created" bribes do not possess all the powers of a sovereign tribal government: they cannot zone, regulate law and order, or tax. It had applied the distinction to one group—that Pascua

Yaqui of Arizona—and was prepared to apply it to others. Because this dichotomy ran so clearly counter to the intent of Congress and

[4] *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 557–62 (1832).
[5] See *Warren Trading Post v. Arizona Tax Commission*, 380 U.S. 685 (1965); *The Kansas Indians*, 72 U.S. (5 Wall.) 737 (1866); *Buster v. Wright*, 135 F.2d 947 (8th Cir. 1905).
[6] See Ex parte *Crow Dog*, 109 U.S. 556 (1883); *Iron Crow v. Oglala Sioux Tribe*, 231 F.2d 89 (8th Cir. 1956).
[7] See, e.g., 43 U.S.C. § 1457 (1988); 25 U.S.C. § 2 (1988).
[8] See, e.g., 25 CFR § 20 (1990) (Financial Assistance and Social Services Program); 25 CFR § 101 (1990) (Loans to Indians Program); 25 C.F.R. § 256 (1990) (Housing Improvement Program).
[9] CFR § 83.5 (1994).
[10] See 25 CFR §§ 83 et seq. (1994).
[11] See S. 1784, 103d Cong., 1st Sess. (1993).

[page 4]

was outside the Department's authority, Congress quickly enacted legislation prohibiting the distinction.[12]

This growing and disturbing trend prompted the introduction of H.R. 4180.

### THE FEDERALLY RECOGNIZED INDIAN TRIBE LIST ACT OF 1994

On April 12, 1994, Congressman Thomas of Wyoming introduced H.R. 4180, the Federally Recognized Indian Tribe List Act of 1994. As introduced, the bill prohibit the BIA from withdrawing recognition from an Indian tribe or Alaska Native group, or from the duly-elected leadership of such tribe or group, except by an Act of Congress. It made an exception for changes in tribal leadership that occur as a result of tribal elections. If the BIA wished to withdraw Federal recognition from a group, it was required to submit a petition to that effect to the two congressional committees of jurisdiction and to each of the Senators and Members of Congress in whose districts the effected tribe may reside. It was then left to Congress to make the final determination.

The Subcommittee held a hearing on H.R. 4180 on August 4, 1994, and at that time adopted an amendment in the nature of a substitute.

### COMMITTEE AMENDMENT

The Committee adopted an amendment in the nature of a substitute which made several modifications to H.R. 4180 as introduced. The Committee Amendment requires the Secretary to publish in the Federal Register an annual list of all federally recognized tribes. The findings section of the substitute notes that Congress has plenary power over Indian affairs; and that while a tribe may be recognized by the BIA pursuant to 25 C.F.R. § 83, by Congress, or by the Federal courts, only Congress may terminate recognition.

The Committee cannot stress enough its conclusion that the Department may not terminate the federally-recognized status of an Indian tribe absent an Act of Congress. Congress has never delegated that authority to the Department, or acquiesced in such a termination. Any attempt to the contrary by the Department will surely result in a more concrete and compelling assertion of Congressional primacy.