IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 02-1383L<br>Judge Margaret M. Sweeney |

**THE UNITED STATES' SUPPLEMENTAL BRIEF ON THE RELEVANCY OF *NAVAJO NATION V. UNITED STATES***

Defendant the United States of America respectfully submits this brief in response to the Court's order of December 18, 2007, requesting supplemental briefing on the relevancy of the Federal Circuit's September 17, 2007, decision in *Navajo Nation v. United States*, 501 F.3d 1327 (Fed. Cir. 2007), to the United States' motion to dismiss. While the facts of *Navajo Nation* are different from the facts in the case at bar, the Federal Circuit's decision contains several points of law that are relevant to and provide support for the United States' motion to dismiss, which is currently pending before this Court. Most importantly, the *Navajo Nation* decision makes clear that agency policies cannot support a Tucker Act or Indian Tucker Act claim in this Court.

**PROCEDURAL HISTORY**

Plaintiff originally brought this action in 2002. This Court granted the United States' motion to dismiss Plaintiff's complaint, and Plaintiff appealed that decision to the Federal Circuit. The Federal Circuit affirmed the Court's decision in part, holding that the United States did not have a money-mandating obligation under two statutes Plaintiff

relied upon, the Snyder Act, 25 U.S.C. § 13, and the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450– 458bbb-2. However, the Federal Circuit overturned the statute of limitations decision, and remanded Plaintiff's second claim for further consideration. Plaintiff filed its Second Amended Complaint on January 27, 2006.

On March 22, 2006, the United States moved to dismiss Plaintiff's claim on the basis that this Court lacks jurisdiction because none of the statutes cited by Plaintiff in its Second Amended Complaint can be fairly interpreted as mandating compensation. *See* United States' Mot. to Dismiss and Mem. in Supp. of its Mot. to Dismiss. Plaintiff requested discovery from the United States, and this Court granted that request in limited measure. *See* Op. and Order, filed July 21, 2006 [Dkt. No. 42]. The Court later determined that Plaintiff should respond to the United States' motion to dismiss with regard to both the Tribal Priority Allocations provided through the Bureau of Indian Affairs ("BIA") and funding provided by the Indian Health Service ("IHS"). *See* Order, filed April 3, 2007 [Dkt. No. 59]. Briefing on the United States' motion to dismiss was completed on August 1, 2007.

## ***NAVAJO NATION* BACKGROUND**

*Navajo Nation* is a case with an extensive history. The Navajo first brought suit in 1993, claiming damages resulting from the Secretary of the Interior's ("Secretary") approval of amendments to a coal lease, through which a coal company mines coal held in trust by the United States on behalf of the Navajo. The Navajo claimed the Secretary committed a breach of trust by encouraging the Navajo and the coal company to continue

negotiations regarding the amendments, and then by approving the resulting lease amendments that the Navajo Nation and the coal company had negotiated and asked the Secretary to approve.

When the case reached the United States Supreme Court, the Court held that neither the Indian Mineral Leasing Act ("IMLA"), 25 U.S.C. §§ 396a–g, the Indian Mineral Development Act ("IMDA"), 25 U.S.C. §§ 2101–08, nor 25 U.S.C. § 399 imposed any relevant fiduciary duties enforceable in an action for money damages. *United States v. Navajo Nation*, 537 U.S. 488 (2003). On remand to the Federal Circuit, the Navajo suggested that further proceedings in the Court of Federal Claims were necessary. According to the Navajo, the Supreme Court's decision addressed only the viability of the Navajo's IMLA arguments and left unresolved the question of whether a network of statutes other than IMLA provided an independent basis for its breach-of-trust claim. The Federal Circuit held that the Supreme Court's decision addressed only the viability of the Navajo's arguments under the three statutes specifically discussed in the Court's decision: IMLA, IMDA, and section 399. *Navajo Nation v. United States*, 347 F.3d 1327 (Fed. Cir. 2003). The Federal Circuit remanded the case to the Court of Federal Claims to determine whether the Navajo waived its argument that other statutes independently supported its breach-of-trust claim, and if such an argument were not waived, to determine its merits. *Id.* at 1332.

On remand, the Court of Federal Claims held that it had no jurisdiction over the Navajo's claims because the Navajo had not established a money-mandating trust in the area of royalty rates. On September 13, 2007, the Federal Circuit reversed that ruling,

finding that the Navajo had stated a claim cognizable under the Indian Tucker Act, 28 U.S.C. § 1505.

The Federal Circuit first, however, found that a number of the components of the Navajo's "network" were not money-mandating. Specifically, the court found that departmental policies, the lease itself, the Indian Lands Rights-of-Way Act of 1948 and its implementing regulations, and the IMLA "cannot be substantive sources of law on which the Nation may base its breach of trust claim." *Id.* at 1340.

The court went on to find that the Navajo had asserted several money-mandating elements in its network: (1) the existence of a trust relationship and trust language; (2) government control of coal resource planning; (3) government control of coal mining operations; (4) government control of the management and collection of coal mining royalties; and (5) government control of coal leasing and liabilities arising thereunder. *Id.* at 1340–45. The court found that the "asserted network thus demonstrates that the government controls the leasing of the Nation's coal resources and that the government is responsible for the liabilities arising thereunder." *Id.* at 1345. According to the court, the purposes of the statues and regulations in the network made it reasonable to interpret the network as allowing a damages remedy. The court went on to find that the Navajo "has a cognizable money-mandating claim against the United States for the alleged breaches of trust and that the government breached its trust duties." *Id.* at 1349.[1/]

[1/]On January 14, 2008, the Federal Circuit denied the United States' petition for rehearing and rehearing *en banc* in *Navajo Nation*. The decision is still within the time period in which the United States could file a petition for *certiorari*.

**ARGUMENT**

The *Navajo Nation* case involved a fact situation very different from the case at bar. Namely, *Navajo Nation*, as in the other cases in the *United States v. Mitchell* line, involved government control over tribal trust assets. In contrast, Plaintiff has not asserted in its claim that either the BIA or the IHS violated a trust responsibility involving Indian property or resources held in trust by the United States.

*Navajo Nation,* however, does contain several points of law that are relevant to this case and support the United States' motion to dismiss. In particular, *Navajo Nation* emphasizes that agency policies cannot support a Tucker Act or Indian Tucker Act claim. In addition, *Navajo Nation* reiterates that general trust principles are insufficient to establish a money-mandating duty for the government, and that plaintiffs must rely on a "specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Navajo Nation,* 501 F.3d at 1340. These principles of law support the United States' Motion to Dismiss.

## I. *Navajo Nation* Found a Breach of Trust Based on the Government's Comprehensive Control Over Tribal Trust Assets, Which Plaintiff Has Not Asserted in this Case.

*Navajo Nation* involves Indian coal resources, which are held in trust by the United States. *Id.* at 1330 ("The United States hold the Nation's reservation lands in trust for the Nation pursuant to a treaty, an executive order, and two Congressional acts."). The substantive sources of law in *Navajo Nation* contained explicit trust language, which "is necessary but not sufficient for an Indian Tucker Act breach of trust claim." *Id.* at 1341. The court found that based on the substantive sources of law, the government has

"comprehensive control of the Nation's coal," establishing a fiduciary trust responsibility, as well as a breach of trust claim. *Id.* at 1336, 1345. Indeed, *Navajo Nation* and the entire *Mitchell* line of cases involve the government's fiduciary duties with regard to the management of tribal trust assets. U.S.'s Corrected Reply Br. in Supp. of its Motion to Dismiss Regarding Tribal Priority Allocations and Indian Health Service Funding ("Reply Br.") at 19-20.

In contrast, this case does not involve trust assets. *See* Reply Br. at 19, 20–21; Samish Indian Nation's Opp'n to U.S.'s Mot. to Dismiss Regarding Tribal Priority Allocations and Indian Health Service Funding ("Pl.'s Opp'n") at 37 n.50 (recognizing that the case does not involve federal management of trust assets). As noted in the United States' briefs supporting its motion to dismiss, the funds involved in this case are gratuitous appropriations. United States' Mem. in Supp. of its Mot. to Dismiss ("Def.'s Mot.") at 15; Reply Br. at 20–21. Further, the IHS does not have authority or control over Indian property or resources. Instead, IHS's authority under the Snyder Act and the Indian Health Care Improvement Act ("IHCIA"), 25 U.S.C. §§ 1601–1683, is the provision of health care services. Def.'s Mot. at 30–32; Reply Br. at 4–5. While the United States, through the BIA, sometimes can and does have authority and control over Indian property and resources, this case does not involve that control. Instead, Plaintiff claims damages under the BIA's Tribal Priority Allocation ("TPA") program, which is an internal budgetary tool that the BIA uses to categorize and describe the allocation of funds to Indian tribes. Reply Br. at 2.

## II. *Navajo Nation* Contains Points of Law that Support the United States' Motion to Dismiss.

The Federal Circuit made several points of law in *Navajo Nation* that are relevant here, and support the United States' motion to dismiss. Most importantly, *Navajo Nation* states that "departmental policies cannot provide the substantive source of law that mandates compensation for the government's alleged breach of trust." 501 F.3d at 1338. The court noted that departmental policies are not regulations that have the force of law and, therefore, do not fall within the scope of the asserted waiver of sovereign immunity in the Tucker Act and Indian Tucker Act. *Id.* In the case at bar, Plaintiff's argument largely is based on the agencies' interpretation of the TPA and IHS programs. *See, e.g.*, Pl.'s Opp'n at 8 ("The [Interior] Department's policy, practice and express statements confirm that TPA was provided for the benefit of every federally recognized Tribe."), 9–12 (generally describing BIA's policies with regard to the TPA program), 19–20 (describing IHS policy in allocating funds). However, the United States, in its Reply Brief, showed that agency interpretation cannot support a money-mandating duty. Reply Br. at 6, 11–12. Plaintiff's Supplemental Brief made clear that Plaintiff relies heavily on agency interpretation and construction of funding resources to support its argument that the United States had a money-mandating duty. *See* Samish Indian Nation's Supplemental Brief ("Pl.'s Supp. Br.") at 2–3 (discussing its argument that "agency policy, practice and construction" show that Congress intended a damages remedy).

In fact, Plaintiff submitted two declarations with its Opposition Brief that purport to explain the agencies' policies with regard to IHS funding and TPA. *See* Opp'n Br., Exh. 5 (McDivitt Decl.), Exh. 32 (Mather Decl.). Plaintiff's Supplemental Brief states

that the Court can and should consider these declarations to determine agency policy and practice. "The sole issue for this Court is whether — given the undisputed practice in implementing these two programs — it can fairly be said that this Court has jurisdiction over the Tribe's claim to damages measured by the funds that it would have received had it been treated as a federally recognized tribe." Pl.'s Supp. Br. at 8. *Navajo Nation* supports the United States' position and makes clear that agency policy cannot provide a substantive source of law that mandates compensation for the government's alleged breach of trust. Plaintiff's claim, which relies heavily on agency policies, therefore must be dismissed. *See Navajo Nation*, 501 F.3d at 1338.

*Navajo Nation* also reiterates that the general trust relationship alone does not support jurisdiction under the Indian Tucker Act. *See Navajo Nation*, 501 F.3d at 1340. In this case, Plaintiff has argued that the general trust responsibility to Indian tribes makes the Appropriations Acts and agency interpretations thereof money-mandating. *See* Pl.'s Opp'n at 27–30; Def.'s Reply at 13. *Navajo Nation* once again shows that Plaintiff's argument should be denied. "There must be 'specific rights-creating or duty-imposing statutory or regulatory prescriptions'" in order for the Court to find a fiduciary duty. *Navajo Nation*, 501 F.3d at 1340 (quoting *Navajo Nation*, 537 U.S. at 506). In *Navajo Nation*, the court found specific rights-creating or duty-imposing prescriptions in statutes and regulations. In the case at bar, Plaintiff has failed to show any specific rights-creating or duty-imposing prescriptions in statutes or regulations. *See* Reply Br. at 6–11. Instead, Plaintiff relies on "agency policy, practice, and construction" and general appropriations from Congress. Pl.'s Supp. Br. at 2; Pl.'s Opp'n at 15, 23, 31–32.

Therefore, its claim must be dismissed.

**CONCLUSION**

In *Navajo Nation*, the Federal Circuit found a breach of trust giving rise to a monetary claim, based on numerous statutory and regulatory provisions granting governmental control over tribal coal resources and the government's failure to fulfill its trust responsibility under those laws. In contrast, the case at bar involves no trust assets, only appropriated funds. Despite this factual distinction, *Navajo Nation* contains several principles of law that are relevant to this case, and support the United States' Motion to Dismiss. Most importantly, *Navajo Nation* instructs that departmental policies cannot provide a substantive source of law that mandates compensation. Because Plaintiff relies almost entirely on departmental policies, it has not stated a claim based on a money-mandating source and this Court lacks jurisdiction.

Submitted this 1st day of February, 2008.

RONALD J. TENPAS
Assistant Attorney General

s/ *Devon Lehman McCune*
DEVON LEHMAN McCUNE
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov

OF COUNSEL:

Jason Roberts
Office of the Solicitor
United States Department of the Interior
Washington, D.C.

Melissa A. Jamison
United States Department of Health and Human Services
Office of General Counsel
Indian Health Service
Rockville, MD

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2008, I filed the foregoing **DEFENDANT UNITED STATES' SUPPLEMENTAL BRIEF ON THE RELEVANCY OF *NAVAJO NATION V. UNITED STATES*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this matter.

DATED this 1st day of February, 2008.

s/ *Devon Lehman McCune*

Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov