UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | Case No. 02-1383L (Judge Margaret M. Sweeney) |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

SAMISH INDIAN NATION'S RESPONSE
TO THE UNITED STATES' SUPPLEMENTAL BRIEF

In its supplemental brief on the relevance of the Court of Appeals' decision in *Navajo*[1] to this case, the government agrees that the facts in *Navajo* differ from those here. The government also acknowledges that under *Navajo* a network of statutes and regulations when considered as a whole and in light its purpose can provide a basis for Tucker Act and Indian Tucker Act jurisdiction. *See* U.S. Supp. Br. at 4. In addition, the government does not dispute that *Navajo* reaffirms the "fair inference" test under which the Court is to determine whether "the statutes and regulations at issue . . . are reasonably amenable to the reading that they mandate a right of recovery in damages." *Navajo*, 501 F.3d at 1335 (emphasis supplied). But the government refuses to give effect to those principles, and instead misreads *Navajo* and the claims in this case in three key respects.

First, the government incorrectly treats the test applied in *Navajo* as the only way in which a statutory scheme might be money-mandating. U.S. Supp. Br. at 5-6. To be sure, where

[1] *Navajo Nation v. United States*, 501 F.3d 1327 (Fed. Cir. 2007) ("*Navajo*").

the federal government assumes comprehensive control over tribal trust assets, mismanagement of that property gives rise to a right to recover damages from the United States. But, as set out in the Tribe's prior briefs, that is by no means the only way in which a statutory scheme may be money-mandating.[2] This Court has a well-established body of law in the non-Indian context, where statutes that provide for payment of funds to a defined class of individuals have been held to be money-mandating for individuals who were wrongfully denied such funding. And although the statutory schemes in the non-Indian cases involved "appropriated funds," they were no less money-mandating than statutes which involve Indian trust property. The principles from the money-mandating cases in the non-Indian context apply to Samish which – but for the government's wrongful actions in omitting Samish from the list of federally-recognized tribes – would have benefitted from the funds that the government, through TPA and IHS, provided for the benefit of every federally-recognized tribe.

Second, the government incorrectly argues that in Indian cases, trust principles are only relevant in connection with a trust asset. However, *Navajo* teaches that, in the context of Indian affairs, trust principles are relevant to understanding the intent of Congress in a statutory scheme. Thus, as the Supreme Court did in *White Mountain Apache*, the Court of Appeals in *Navajo* found that "'once that focus [for the trust relationship i]s provided, general trust law [i]s considered in drawing the inference that Congress intended damages to remedy a breach of obligation.'" *Navajo*, 501 F.3d at 1346 (quoting *United States v. White Mountain Apache Tribe*,

---

[2] *See* Docket 60, Samish Indian Nation's Opposition to United States' Motion to Dismiss Regarding Tribal Priority Allocations and Indian Health Service Funding ("Tribe's Opposition") at 25-26; Docket 77, Samish Indian Nation's Supplemental Brief of February 1, 2008 at 2-3 ("Tribe's 2/1/08 Supp. Br.").

537 U.S. 465, 477 (2003)). Those principles apply here. Congress made explicit references to the trust responsibility in a number of the statutes under which TPA and IHS funding are made available to federally-recognized tribes, *see* Tribe's 2/1/08 Supp. Br. at 7-9, and the trust responsibility is therefore relevant to determining congressional intent and the overall purpose of the statutory scheme.

Third, the government incorrectly relies on the language in *Navajo* regarding agency policy, while ignoring that Court's actual consideration of agency practice in ascertaining Congressional intent. In *Navajo*, the Court suggested that written policy statements are not themselves a basis for finding a statute to be money mandating. At the same time, in *Navajo* the Court expressly considered the agency's "actual practices" – the manner in which the agency implemented the statutory scheme – in reaching its conclusion that the statutory network was money-mandating. *Navajo*, 501 F.3d at 1343. In so doing, the Court distinguished actual agency practices from statements of policy, finding only that the latter standing alone are insufficient to constitute a money-mandating basis for jurisdiction. *See id.* at 1338. The government fails to acknowledge this key distinction.

Consistent with *Navajo*, to show Congressional intent the Samish here presented undisputed evidence of actual agency practice (not mere policy) to allocate TPA and IHS funds for the benefit of all federally-recognized tribes. The Tribe further showed that Congress was not only informed of agency practice but also that Congress confirmed – in the statutes and their legislative history – Congress' intent that funds appropriated for TPA and IHS be allocated to benefit all federally-recognized tribes. *See* Tribe's Opposition at 8-23. Here, just as it did in *Navajo*, 501 F.3d 1343, the government does not dispute any of the Tribe's evidence on this

point but instead asks only that this evidence be ignored. *See* U.S. Supp. Br. at 7-8. Here, as in *Navajo*, the government's arguments should be rejected.

In sum, the uncontested record before the Court is that Congress intended the network of statutes underlying TPA and IHS funding to provide a measure of funding to benefit every federally-recognized tribe. This statutory network is therefore money-mandating for purposes of a damages claim by a tribe that was omitted, without any rational basis, from sharing in the benefit of such funds.

Dated: February 15, 2008

Respectfully submitted,

Craig J. Dorsay, Esq. by Anne D. Noto
Attorney at Law
2121 S.W. Broadway, Suite 100
Portland, Oregon 97201
Tel: (503) 790-9060; Fax: (503) 242-9001
craig@dorsayindianlaw.com

Counsel of Record for Plaintiff
Samish Indian Nation

Of Counsel:

William R. Perry, Esq.
Anne D. Noto, Esq.
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
Tel: (202) 682-0240; Fax: (202) 682-0249
wperry@sonosky.com; anoto@sonosky.com