IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 02-1383L |
| | ) | Judge Margaret M. Sweeney |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**THE UNITED STATES' BRIEF IN RESPONSE TO SAMISH INDIAN NATION'S SUPPLEMENTAL BRIEF**

# INTRODUCTION

Defendant the United States of America respectfully submits this brief in response to Plaintiff Samish Indian Nation's Supplemental Brief on the relevancy of the Federal Circuit's decision in *Navajo Nation v. United States*, 501 F.3d 1327 (Fed. Cir. 2007). Plaintiff wrongly suggests that fundamental principles from *Navajo Nation* for determining whether a network of statutes is money-mandating are relevant to this case. *Navajo Nation*, however, is a substantially different case since it involves the federal management of specific Indian trust assets by the government on behalf of an Indian tribe. While acknowledging factual differences between the case at bar and *Navajo Nation*, Plaintiff attempts to analogize this case to *Navajo Nation* and draw inferences from that decision.

Because this case does not involve trust assets, federal management of trust assets, or, therefore, any fiduciary responsibilities, *Navajo Nation* is of limited relevance and does not support Plaintiff's position. Specifically, because this case does not involve the United States' blanket control over Plaintiff's trust assets, the "network" theory developed in *Mitchell v. United States*, 463 U.S. 206 (1983) ("*Mitchell II*") and reiterated in *Navajo Nation* is unavailable to Plaintiff here.

## I. As This Case is Not a Trust Case, the *Mitchell* "Network" Theory Does Not Apply.

As the Federal Circuit explained in *Navajo Nation*, the *Mitchell* line of cases helps courts determine "'when it is fair to infer a fiduciary duty qualifying under the Indian Tucker Act and when it is not.'" *Id.* at 1334 (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)). However, the courts have limited this inference to situations where the United States has a full trust relationship with an Indian tribe, including full control over an Indian resource. In the *United States v. Mitchell*, 445 U.S. 535 (1980) ("*Mitchell I*") line of cases, the trust relationship that

existed was only a "bare" or "limited" trust relationship involving a trust corpus. In *Mitchell I*, for example, the General Allotment Act provided that the United States held land in trust for Indian allottees, but did not establish fiduciary duties for the government. *Id.* at 542. In *Mitchell II*, on the other hand, Congress had enacted legislation with specific statutory and regulatory provisions that together directed the government's management of Indian timber resources held in trust by the government. 463 U.S. at 224 ("The language of these statutory and regulatory provisions directly supports the existence of a fiduciary relationship."). The Supreme Court held those statutory and regulatory provisions formed a network that "could 'fairly be interpreted as mandating compensation by the Federal Government for violations of its fiduciary responsibilities in the management of Indian property.'" *Navajo Nation*, 501 F.3d at 1334 (quoting *Mitchell II*, 463 U.S. at 228). As the Ninth Circuit explained:

> This pair of cases sets the stage for how we consider *Mitchell* claims: the general "ward-custodian" relationship between the federal government and the tribes does not give rise to fiduciary duties. But where the government takes full control of a tribally-owned resource and manages it to the exclusion of the tribe, a fiduciary relationship is created and the government bears responsibilities as a fiduciary.

*Marceau v. Blackfeet Housing Authority*, 455 F.3d 974, 984 (9th Cir. 2006).

This case does not involve even the bare or limited trust that existed in *Mitchell I*. There are no trust funds or assets at issue in this case. *See, e.g.*, Samish Indian Nation's Supplemental Brief ("Pl.'s Supp. Br. on *Navajo Nation*") (Dkt. No. 77) at 2 ("This case, in contrast, does not involve federal mismanagement of a tribe's trust resources."). Without Indian property at stake, the United States does not have fiduciary responsibilities. *See United States v. Cherokee Nation of Oklahoma*, 480 U.S. 700, 707 (1987) (noting that the United States acts in its fiduciary capacity when dealing with Indian property); *Marceau*, 455 F.3d at 984 ("But fiduciary duties arise under *Mitchell* only

where the federal government pervasively regulates a tribally-owned resource."). The only trust relationship remotely involved in this case is the general trust relationship that exists between the United States and federally-recognized Indian tribes. *Navajo Nation* emphasized that this general trust relationship is not enough to support jurisdiction under the Indian Tucker Act. 501 F.3d at 1340; *see also Navajo Nation v. United States*, 537 U.S. 488, 506 (2003) ("*Navajo III*") (noting that general trust relationship can reinforce a conclusion that the relevant statute or regulation imposes enforceable duties, but "that relationship alone is insufficient to support jurisdiction under the Indian Tucker Act"). The *Mitchell* line of cases, including *Navajo Nation*, therefore, is inapplicable. *See Mitchell II*, 463 U.S. at 228 ("We thus conclude that the statutes and regulations at issue here can fairly be interpreted as mandating compensation by the Federal Government for violations of its fiduciary responsibilities *in the management of Indian property*." (emphasis added)); *Apache*, 537 U.S. at 468 (tribe had a cognizable claim "against the United States for breach of fiduciary duty to manage land and improvements held in trust for the Tribe but occupied by the Government"); *Marceau*, 455 F.3d at 984 (finding that general trust responsibility could not support *Mitchell* claim). Under *Mitchell II*, "a network of statutes and regulations could 'impose judicially enforceable fiduciary duties upon the United States.'" *Navajo Nation*, 501 F.3d at 1335 (quoting *Navajo III*, 537 U.S. at 504–05). Here, however, the network theory is unavailing to Plaintiff for the simple reason that this case does not involve trust assets, government management thereof, or any fiduciary duties.

## II. Plaintiff Has Not Demonstrated a Statutory or Regulatory Provision That Creates Jurisdiction for This Court.

Plaintiff's network theory also is unavailing because Plaintiff has completely failed to anchor its argument to any statutory or regulatory provision that establishes a money-mandating duty on behalf of the United States. The Federal Circuit in *Navajo Nation* emphasized that Tucker Act

jurisdiction must be founded on "the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." *Navajo Nation*, 501 F.3d at 1338. For that reason, departmental policies and the coal leases the Navajo asserted did not establish jurisdiction for the Court because they did not fall within the waiver of sovereign immunity. *Id.* Here, Plaintiff has failed to show any statutory or regulatory provision that is the basis for Tucker Act jurisdiction. Instead, Plaintiff relies entirely on agency practices and policies, as well as its interpretation of legislative intent. None of these is sufficient.

**A. *Navajo Nation*'s Statements Regarding Agency Practice Do Not Support Plaintiff's Claims.**

In *Navajo Nation*, the court found that a regulation adopted after the events in the case nonetheless was relevant to the government's duty because it was undisputed that the regulation described agency practice at the time of the events. *Navajo Nation*, 501 F.3d at 1343. The court noted that when the government "exercises actual control within its authority, neither Congress nor the agency needs to codify such actual control for a fiduciary trust relationship that is enforceable by money damages to arise." *Id.* (citing *Apache*, 537 U.S. at 475 and *Mitchell II*, 463 U.S. at 225). The court was discussing the government's authority and control over the Navajo's coal resources. Here, without the government's control over an Indian trust asset, the same logic simply does not apply. Therefore, Plaintiff's reliance on *Navajo Nation* for the suggestion that agency practice is relevant to determining that a statute is money-mandating misconstrues *Navajo Nation*. *See* Pl.'s Supp. Br. on *Navajo Nation* at 5–6.

In addition, Plaintiff's arguments about agency practice are overstated. The United States demonstrated in its reply brief that Plaintiff has not shown any agency practice resulting in a money-mandating duty. U.S.' Corrected Reply Br. in Supp. of its Mot. to Dismiss Regarding Tribal Priority

Allocations and Indian Health Service Funding ("Reply Br.") (Dkt. No. 68) at 12. Instead of asserting any such practice in its Supplemental Brief, Plaintiff largely focuses on legislative intent and points primarily to legislative history to establish that intent. Pl.'s Supp. Br. on *Navajo Nation* at 5–6, 6 n.6.[1/] Plaintiff's reliance on legislative history is insufficient to establish a money-mandating obligation. The Supreme Court, in *Lincoln v. Vigil*, 508 U.S. 182 (1993), held that:

> [W]here "Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions, and *indicia in committee reports and other legislative history as to how the funds should or are expected to be spent do not establish any legal requirements on" the agency*.

*Lincoln*, 508 U.S. at 192–93 (emphasis added) (citation omitted)).

Despite this precedent, Plaintiff points to alleged agency practice, along with this legislative history, to establish Congressional intent. Pl.'s Supp. Br. on *Navajo Nation* at 5–6, 6 n.6. *Lincoln* established that agencies may allocate their lump-sum appropriations without creating any duty to continue a particular program. *Lincoln*, 508 U.S. at 192–93. This is especially true for statutes such as the IHCIA, which speaks about "Indian health only in general terms." *Id.* at 194. Thus, without a clear statutory prescription or actual government control over Indian lands or resources, Plaintiff's reliance on alleged agency practices is misplaced.

And, unlike in *Navajo Nation*, none of the purported agency practices Plaintiff alleges have since been codified or adopted as regulations. Neither is the agency practice undisputed, as was the case in *Navajo Nation*. *Compare* 501 F.3d at 1343 *with, e.g.*, Reply Br. at 2 n.2, 11–13, United States' Resp. to Samish Indian Nation's Mot. for Leave to File a Supp. Br. at 1-2 (Dkt. No. 66).

---

[1/]For example, when discussing the Indian Health Care Improvement Act ("IHCIA"), Plaintiff does not refer to any specific agency practice, but instead to legislative history. Pl.'s Supp. Br. at 6 n.5.

The Court must also be mindful of *Navajo Nation*'s holding that "departmental policies cannot provide the substantive source of law that mandates compensation for the government's alleged breach of trust." 501 F.3d at 1338. Thus, the *Navajo Nation* court recognized that agency policies without statutory or regulatory prescriptions are insufficient to establish a money-mandating obligation. Plaintiff's briefs in this case make clear that it largely relies on its interpretation of agency policy, untethered to statutory or regulatory language. Finding a money-mandating duty based on this discretionary agency action would violate well-established principles for determining Indian Tucker Act jurisdiction.[2/]

**B. The General Trust Responsibility Does Not Create a Money-Mandating Duty on Behalf of the United States.**

Likewise, Plaintiff's argument that the general trust responsibility informs whether a statute is money-mandating should also be disregarded. In *Navajo Nation*, the court found that "in determining whether there is a 'claim cognizable under the Indian Tucker Act,' 'the analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions.'" *Navajo Nation*, 501 F.3d at 1346 (quoting *Navajo III*, 537 U.S. at 506). Only after a specific trust relationship is found should the Court consider general trust law principles "'in drawing the inference that Congress intended damages to remedy a breach of obligation.'" *Navajo Nation*, 501

[2/]Plaintiff again asserts that the United States does not contest its version of facts with regard to agency policy. As the United States has previously stated, while it does contest Plaintiff's version of the facts in this case, because the instant matter before the Court is the United States' motion to dismiss on the jurisdictional question of whether the statutes and regulations before the Court are money-mandating, those factual issues are not legally relevant at this time. *See* Reply Br. at 2 n.2, United States' Resp. to Samish Indian Nation's Mot. for Leave to File a Supp. Br. at 1-2 (Dkt. No. 66). Further, the United States has challenged Plaintiff's version of agency practice. *See, e.g.*, Reply Br. at 11–13. In any event, the United States has demonstrated that Plaintiff's reliance on agency practice to demonstrate a money-mandating duty fails because it is not grounded in any relevant statutory or regulatory provision. *Id.*; *see Navajo Nation*, 501 F.3d at 1346.

F.3d at 1346 (quoting *Apache*, 537 U.S. at 477). In this case, Plaintiff has not pointed to *any* specific rights-creating or duty-imposing statutory or regulatory prescription. Instead, Plaintiff focuses its argument on purported agency policy, legislative history, and questionable inferences drawn therefrom.

Plaintiff has not shown any specific trust relationship from which the Court can infer that Congress intended a damages remedy to apply. Clearly, the general trust relationship alone does not provide a basis to draw the inference. In *Mitchell I*, the Supreme Court found a more substantial trust relationship than is the case here, as the United States held land in trust for Indian allottees, but because that trust relationship was limited, no inferences could be drawn. Here, beyond the general trust relationship between the United States and all federally recognized Indian tribes, there is no trust at issue. There is not even a "bare" or "limited" trust, as was the case in *Mitchell I* because there is no trust corpus. *See Inter Tribal Council of Ariz., Inc. v. Babbitt*, 51 F.3d 199, 203 (9th Cir. 1995) (noting that elements of a common law trust "are a trustee (the United States), a beneficiary (the Indian allottees) and a trust corpus (the regulated Indian property, lands, or funds)" (citing *Mitchell II*, 463 U.S. at 225)). As the Ninth Circuit recently stressed:

> We are not aware of any circuit or Supreme Court authority that extends a specific *Mitchell*-like duty to non-tribal resources. Indeed, as we recently stated in *Marceau*, the government does not bear complete fiduciary responsibility unless it has "take[n] full control of a *tribally-owned* resource and manage[d] it to the exclusion of the tribe." 455 F.3d at 984 (emphasis added); *see also id.* at 984 ("[F]iduciary duties arise under *Mitchell* only where the federal government pervasively regulates a tribally-owned resource."); *Inter Tribal Council of Arizona, Inc.*, 51 F.3d at 203 (finding no *Mitchell*-like trust duty because "[t]he off-reservation school was not part of Indian lands, but was merely allocated by the BIA for use by the Tribes"). Therefore, because the tribes in *Marceau* failed to show how funding from the Department of Housing and Urban Development could be a tribal resource, the court held that no *Mitchell* fiduciary duty existed.

*Gros Ventre Tribe v. United States*, 469 F.3d 801, 813 (9th Cir. 2006), *cert. denied* 128 S. Ct. 176

(2007).

Accordingly, Plaintiff still must point to specific statutory and regulatory prescriptions and cannot rely on common law trust principles to draw an inference that the network in question is money-mandating. Plaintiff has not done so. In addition, even under the common law, there is no breach of trust because there is no trust corpus or common law trust in this case. *See Inter Tribal Council*, 51 F.3d at 203.

**C. The Tribal Control Over Appropriated Monies Compels Against a Finding that the Statutes and Regulations at Issue are Money-Mandating.**[3]

According to Plaintiff, *Navajo Nation* demonstrates that "a limited measure of tribal control does not obviate federal duties arising under the statutory scheme for purposes of determining whether that statutory scheme was money-mandating." Pl.'s Supp. Br. on *Navajo Nation* at 9. Again, *Navajo Nation*'s holding on this issue can be read only in light of the government's management of Indian trust assets. Here, there are no trust assets at issue. In the case of Tribal Priority Allocations ("TPA"), the Bureau of Indian Affairs ("BIA") receives lump sum appropriations from Congress and distributes the appropriated funds to tribes to administer various health and social service programs or provides the services directly. U.S.' Mem. in Supp. of its Mot. to Dismiss (Dkt. No. 39) at 20–21; U.S.' Supp. Br. Regarding its Mot. to Dismiss (Dkt. No. 52) at

[3]The Appropriations Acts provide funding to the Indian Health Service ("IHS"), which the agency uses to provide services directly to individual American Indians and Alaska Natives, pursuant to the Snyder Act, 25 U.S.C. § 13, and the IHCIA. Tribes may contract or compact with IHS for appropriated monies for the purpose of assuming operation of health care facilities. These contracts are entered into under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), which has been dismissed from this litigation. *See Samish Indian Nation v. United States*, 419 F.3d 1355, 1365 (Fed. Cir. 2005). Therefore, for the purposes of this litigation, tribes generally do not exercise control over IHS' appropriated monies because the only monies continuing to be at issue are those used by IHS to operate its direct care facilities.

6-7. As the Federal Circuit reiterated in *Navajo Nation*, "where 'the Federal Government takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties.'" 501 F.3d at 1343–44 (quoting *Mitchell II*, 463 U.S. at 225). In *Navajo Nation*, the Federal Circuit found that the United States exercised "blanket control over the Nation's coal resources." *Id.* at 1344. Here, although the United States has control over funds Congress appropriated to the agencies, the funds are federal monies, not tribal monies. When tribes receive appropriated funds from the agencies, any funding is in exchange for the tribe providing services that otherwise would have been provided by the agency. *See* Reply Br. at 14–15.

Plaintiff's suggestion that it has no control over funding distributed by the agencies, thus bringing the case within the realm of *Navajo Nation* is misguided, at best. Pl.'s Supp. Br. on *Navajo Nation* at 10–11. While in *Navajo Nation*, the Federal Circuit found that, despite IMLA's goal of tribal self-determination, the government exercised pervasive authority over the Nation's coal resources, such a finding cannot be made here. Although the United States receives appropriations from Congress and, in the case of TPA, then distributes them to the tribes, because these appropriations are not trust assets and are committed to agency discretion by law, the appropriations cannot be money-mandating. *See* Reply Br. at 20–21. Distribution of federal monetary assets with restriction and conditions on the use of the federal monies does make them trust assets or create fiduciary duties. "To say that government funding, conditioned on the performance of certain acts and heavily regulated by a government agency, is a tribal resource subject to *Mitchell* fiduciary duties is a step we are unwilling to take in the absence of precedent extending the doctrine that far." *Marceau*, 455 F.3d at 974.

## CONCLUSION

Plaintiff seeks to have the best of all worlds. It seeks to utilize the network theory from the *Mitchell* line of cases, despite the fact that this case does not involve any trust assets, government control over a tribal trust asset, fiduciary responsibilities, or otherwise meets the standards for those cases to apply. Plaintiff does not even demonstrate the existence of specific trust language. Plaintiff also seeks to draw the Court's focus from the relevant statutes and regulations — which clearly are not money-mandating, *see* Reply Brief at 6–11, 14–19 — to a "broad Congressional purpose," as defined by Plaintiff. *See* Pl.'s Supp. Br. on *Navajo Nation* at 11. However, Plaintiff's argument distorts *Navajo Nation* because it required "'specific rights-creating or duty-imposing statutory or regulatory prescriptions.'" 501 F.3d at 1340 (quoting *Navajo III*, 537 U.S. at 506). In *Navajo Nation*, as well, the court went through each statute and regulation the plaintiff alleged in order to determine that the government had blanket control over the plaintiff's trust resources. Here, Plaintiff attempts to avoid having to show any statutory or regulatory provisions by focusing on agency policy and legislative intent. *Navajo Nation* does not support Plaintiff's case, and this Court should grant the United States' motion to dismiss.

Submitted this 15th day of February, 2008.

RONALD J. TENPAS
Assistant Attorney General

s/ *Devon Lehman McCune*
DEVON LEHMAN McCUNE
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)

(303) 844-1350 (fax)
devon.mccune@usdoj.gov

OF COUNSEL:

Jason Roberts
Office of the Solicitor
United States Department of the Interior
Washington, D.C.

Melissa A. Jamison
United States Department of Health and Human Services
Office of General Counsel
Indian Health Service
Rockville, MD

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, I filed the foregoing **DEFENDANT UNITED STATES' BRIEF IN RESPONSE TO SAMISH INDIAN NATION'S SUPPLEMENTAL BRIEF** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this matter.

DATED this 15th day of February, 2008.

s/ *Devon Lehman McCune*

Devon Lehman McCune, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
devon.mccune@usdoj.gov