**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 02-1383L<br>(Judge Margaret M. Sweeney) |

Samish Indian Nation's Reply in Support of its Motion for Entry of Final Judgment Pursuant to RCFC 54(b) on the Court's Order of May 27, 2008

Contrary to Defendant's assertions, both elements necessary for entry of a final judgment under RCFC 54(b) on this Court's Order of May 27, 2008 have been met here.

1. The Court's May 27, 2008 Order fully and finally disposed of two separate claims.

The Court's Order of May 27 fully and finally resolved two separate and independent claims – the claim regarding TPA, and the claim regarding IHS – each of which is separate from the other, and separate from each of the remaining claims identified in the Second Amended Complaint. Each claim arises under different statutes and regulations, has its own legislative history, and in large part has been administered by different federal agencies. *See* Second Amended Complaint at ¶¶ 30.a through 30.n (Docket No. 36). Each involves a separate source of funds so that recovery on any one claim would not duplicate recovery on any other. Defendant

does not dispute any of this and, as shown by the cases cited by both Defendant[1] and the Tribe,[2] the presence of these factors establishes that the TPA claim and IHS claim are separate from each other and separate from each of the remaining claims in the complaint.

Defendant responds only with rhetorical and conclusory assertions that there is "significant legal and factual overlap between the dismissed portions of the case and the remaining claims." Def. Resp. at 5. But the only "fact" common to all the claims is that the Samish Indian Tribe was wrongfully denied federal funds under each of these statutes – a fact that does not transform separate claims arising under different statutes which provide different relief, into the same claim.[3] And the only "law" common to all the claims is the Tribe's

---

[1]*See* 10 James Wm. Moore, et al., *Moore's Federal Practice* §54.22[2][b] (3d ed. 2008) ("If . . . separate recovery is possible, separate claims are presented under Rule 54(b)"); *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 860 F.2d 1441, 1445 (7th Cir. 1988) (noting that one defining element of separate claims is whether "'separate recovery is possible on each'") (citations omitted); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 167 (11th Cir. 1997) (Rule 54(b) certification not proper where recovery on some claims "will foreclose at least some, if not all, of the relief sought"on the others).

[2]*See* cases cited in Tribe's Motion for Entry of Final Judgment Pursuant to RCFC 54(b) at 4-5 & n.1 (July 11, 2008) (Docket No. 86).

[3]*See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 430-31, 436 (1956) (finding claims to be separate for purposes of Rule 54(b) even though they arose from a common set of underlying facts); *see also Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697, 699 (Fed. Cir. 2001) (same). Defendant does not address these cases, and the remainder of those that Defendant cites in support of its "factual overlap" argument turn on facts not present here. *See* Def. Resp. at 4 citing *Houston Industries Inc. v. United States*, 78 F.3d 564 (Fed. Cir. 1996) and *Osage Tribe of Indians v. United States*, 263 Fed. Appx. 43 (Fed. Cir. 2003), both of which were discussed in the Tribe's Motion at p.7, n. 2. *See also* Def. Resp. at 4-5, 7 citing *Oklahoma Turnpike Authority v. Bruner*, 259 F.3d 1236 (10th Cir. 2001) (Rule 54(b) certification of order dismissing title claims to two out of four parcels of land was in error since the district court itself had concluded that the grounds for dismissal would apply equally to all four parcels but failed to enter final judgment dismissing all four and did not explain the reasons for a partial final judgment); *Adams v. United States,* 51 Fed. Cl. 57 (2001) (declining to enter separate judgments on plaintiff's

(continued...)

underlying legal theory – that Congress provided federal funding for the benefit of every federally recognized tribe and did not authorize the government to single out one Tribe and, with impunity, deny funding to that Tribe.[4] However, as illustrated by the very different record relevant to the Tribe's claim for TPA from that for IHS,[5] the manner in which Congress manifested its intent that funding be provided to all federally recognized tribes and the manner in which each federal agency implemented that congressional intent, differs for each of the statutes identified in the Second Amended Complaint. That each of these separate claims shares a common underlying legal theory (or faces a common defense), does not convert them into the same claim.[6]

In short, Defendant's conclusory assertions that the claims are interrelated is insufficient to establish that the different claims are in fact the same, or that a final judgment on this Court's

[3](...continued)
recovery of backpay from orders denying interest and liquidated damages since all aspects of the suit were ready for entry of final judgment, and interest and liquidated damages were not independent claims but simply additional relief available to certain plaintiffs). The other cases cited by Defendant address the general standards for Rule 54(b) which are not disputed.

[4] The fact that the Tribe has also advanced a network theory for recovery (that the statutes and regulations, when viewed as a network are money-mandating (*see* Complaint at Second Claim for Relief ¶41)), does not eliminate the Tribe's separate claims that each statute at issue is money-mandating. *See* Complaint at First Claim for Relief ¶ 33 (alleging that "[f]or each of the programs, services and benefits set forth in paragraph 30, the underlying statutes are money-mandating because in each instance it provides clear standards for paying money to recipients, compels payment upon the satisfaction of pre-set conditions, and the amounts that each recipient will receive can be readily determined. . . .") (emphasis supplied).

[5]*See* Tribe's Opposition to the United States' Motion to Dismiss at 7-23 (Docket No. 60).

[6] Similarly, Defendant's suggestion that the claims are not separate because they appear as part of the first claim for relief, *see* Def. Resp. at 4, fails as it would elevate form over substance.

order dismissing the Tribe's TPA and IHS funding claims could not be entered. *See W.L. Gore & Assocs. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 863-64 (Fed. Cir. 1992). Since this Court's opinion of May 27 finally disposes of the Tribe's TPA and IHS claims and leaves nothing further to do regarding those two claims, final judgment should be entered.

2. There is no just reason for delay in entering a final judgment.

The second element required for entry of a Rule 54(b) judgment is also met here. A judgment on the Court's May 27 Order dismissing the Tribe's TPA claim and its IHS claim – which involve the most money and on which the record has been developed – so that the Tribe may now appeal that judgment is the most efficient and fair way to proceed and there is no just reason for delay.

Defendant's contrary views are without merit. Defendant's arguments about the risk of piecemeal appeals are all premised on its flawed assertion there is "significant overlap" between the adjudicated and unadjudicated claims. Def. Resp. at 7, 8. But, as stated in the Tribe's Motion, at 8-9, because of the differences in the statutory schemes for TPA and that for IHS, a ruling from the Court of Appeals will resolve the Court's jurisdiction over two separate and discrete claims – one involving TPA and the other involving IHS – while also setting out the legal standards and framework for evaluating the Court's jurisdiction over the remainder of the Tribe's claims and, as such, may well obviate the need for further proceedings on the remaining claims. In short, the nature of these claims are such that "no appellate court would have to decide the same issues" – whether TPA and IHS are money-mandating for purposes of this Court's jurisdiction – "more than once even if there were subsequent appeals." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

As to efficiencies, Defendant proposes to address these simply by denying the Tribe its right to discovery about agency practice in implementing the unadjudicated statutes. Def. Resp. at 9-11. Defendant recycles proposals it previously made to avoid discovery, suggesting that in considering Defendant's motion to dismiss, the Court assume the truth of the allegations made in the complaint. But this was no solution then and is no solution now as the arguments advanced in Defendant's motion to dismiss in fact dispute the allegations contained in Plaintiff's Second Amended Complaint. In addition, while suggesting that the Court might assume the truth of the allegations in the complaint, Defendant then unilaterally rewrites Plaintiff's factual allegations. Defendant asserts that the Court could assume that "if a federally recognized Indian tribe properly applied and met a statutory or regulatory based program's requirements, the tribe would have received some amount of federal funding,"[7] and thereby imposes additional conditions on the Tribe's eligibility for federal funds beyond federal recognition, but not stated in the complaint and not required by the agencies administering those programs. *See* Second Amended Complaint at ¶ 32.

The Court previously rejected these suggestions, first when it allowed discovery,[8] and again, after discovery disputes arose, when the Court severed for purposes of briefing on the motion to dismiss, the Tribe's claims regarding TPA and IHS. *See* Order of April 3, 2007. The Court's decision to consider the motion to dismiss based on the test cases presented by the TPA

---

[7]Def. Resp. at 10; *see also* Def's Supp. Br. at 2-3 (Feb. 5, 2007) (Docket No. 52).

[8] *See* Order of July 21, 2006 (recognizing that Defendant's motion to dismiss disputed jurisdictional facts and that the Tribe was entitled to limited discovery to show that the government "understood the statutes and regulations to mean that all federally-recognized tribes were eligible for these benefits").

claim and the IHS claim, served the interests of judicial economy by allowing the parties and the Court to avoid an impasse over discovery by advancing these two claims as test cases for addressing the legal standard in the context of a developed record. These same interests would be served by allowing the Court's decision on the test cases to be appealed under Rule 54(b)[9] – a logical extension of the process by which this case has been litigated to date.

Defendant's alternative argument, that "the Court's Order of May 27, 2008 provides a legal framework for resolving Plaintiff's remaining claims without the need for additional discovery," Def. Resp. at 10, must also be rejected as it fails to take into account that until the Court of Appeals decides whether the legal framework established by the Court's May 27 decision is correct, it may be incumbent on the Tribe to make a record and present argument on the statutory framework, congressional intent and agency implementation of the remaining claims so that if this Court's decision is reversed on appeal, the Tribe has established a basis for showing jurisdiction over the remaining claims. Given the government's current opposition to discovery, it is clear that the parties would be required to re-brief the Tribe's right to limited discovery and that, if discovery were ordered, it would be protracted potentially leaving the Tribe with the costs of retaining experts to address the government's practice in administering the other programs. Defendant's apparent strategy is to make this case as financially burdensome for the Tribe as possible and that, aside from being morally wrong because it exacerbates the government's denial of funding to the Tribe, is contrary to the purpose of the rules. Since there is

---

[9]*See Consolidation Coal Co. v. United States*, 75 Fed. Cl. 537 (2007) (entering final judgment on claims of test plaintiff to allow appellate review on liability issues where discovery as to other plaintiffs' claims had stalled), *accepting appeal but revs'ing on other grounds*, 528 F.3d. 1344 (Fed. Cir. 2008)

no dispute about the relatively small values of the remaining claims, it would be costly and inefficient to require further litigation on these claims prior to a decision from the Court of Appeals on the major claims in the case – TPA and IHS.

Conclusion

For the foregoing reasons, the Court should enter a final judgment, pursuant to Rule 54(b), on the Court's Order of May 27, 2008 dismissing the Tribe's TPA claim and its IHS claim.

Dated: August 15, 2008

Respectfully submitted,

*/s/ Craig J. Dorsay*

Craig J. Dorsay, Esq.
Attorney at Law
1 S.W. Columbia, Suite 440
Portland, Oregon 97258
Telephone: (503) 790-9060
Facsimile: (503) 790-9068
craig@dorsayindianlaw.com

*Counsel of Record for Plaintiff*
*Samish Indian Nation*

Of Counsel to the Samish Indian Nation:

William R. Perry, Esq.
Anne D. Noto, Esq.
Sonosky, Chambers, Sachse, Endreson & Perry, LLP
1425 K Street, N.W., Suite 600
Washington, D.C. 20005
Telephone: (202) 682-0240, Facsimile: (202) 682-0249
wperry@sonosky.com, anoto@sonosky.com