# In the United States Court of Federal Claims

No. 02-1383 L
(Filed: January 28, 2009)

*************************************

| | | |
|---|---|---|
| SAMISH INDIAN NATION, a federally recognized Indian tribe, | * | |
| | * | |
| | * | |
| Plaintiff, | * | RCFC 54(b); Separating a Single Claim for |
| | * | Relief Into Multiple Claims; Finality; Just |
| v. | * | Reason for Delay |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |

*************************************

Craig J. Dorsay, Portland, OR, for plaintiff.

Devon Lehman McCune, United States Department of Justice, Washington, DC, for defendant.

## RULING ON PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

**SWEENEY**, Judge

Before the court is plaintiff's motion for entry of judgment pursuant to Rule 54(b) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff requests that the court enter a final judgment on its May 27, 2008 Opinion and Order, which dismissed plaintiff's first claim for relief with respect to the Tribal Priority Allocation ("TPA") system and the Indian Health Service ("IHS") funding process. Defendant opposes plaintiff's motion. For the reasons set forth below, the court denies plaintiff's motion.

## I. BACKGROUND

Plaintiff, the Samish Indian Nation, is a federally recognized Indian tribe. Second Am. Compl. ("Compl.") ¶¶ 1, 3. However, for a period of time of nearly twenty-eight years spanning from 1969 to 1996, plaintiff was "deprived of all of the programs, benefits and services afforded by the United States to all other federally recognized Indian tribes and their members" due to the failure of the United States to recognize its tribal status. Id. ¶ 9. On October 11, 2002, plaintiff filed the instant action in an attempt to recover compensation for all of the benefits it would have received from 1969 to 1996 had the United States properly treated it as a federally recognized Indian tribe. In its second amended complaint, plaintiff enumerates the myriad of statutes and regulations that established programs, services, and benefits for federally recognized Indian tribes

from 1969 to 1996, id. ¶¶ 30a-30o, and then sets forth two claims for relief.  In its first claim for relief, plaintiff seeks damages for the government's failure to provide it with the identified programs, services, and benefits from 1969 to 1996.  Id. ¶¶ 31-36.  Plaintiff contends that the "underlying legal framework" of each program, service, and benefit provides a money-mandating basis for the court's exercise of its jurisdiction.  Id. ¶¶ 32-33.  In its second claim for relief, plaintiff seeks damages for the government's failure to properly treat it as a federally recognized Indian tribe.  Id. ¶¶ 37-44.  Plaintiff alleges that all of the statutes set forth in the second amended complaint, taken together, "comprise a network of statutes defining . . . the federal government's trust responsibility" to Indian tribes that provides a money-mandating basis for jurisdiction.  Id. ¶¶ 41, 43.

Defendant moved to dismiss plaintiff's second amended complaint for lack of subject matter jurisdiction.  Samish Indian Nation v. United States, No. 02-1383L, slip op. at 1 n.1 (Fed. Cl. July 21, 2006) ("Samish I").  In response to defendant's motion, plaintiff sought discovery concerning the government's interpretation of the TPA system–a mechanism by which the Bureau of Indian Affairs ("BIA") provides funds to Indian tribes for tribal governments, human services, education, public safety and justice, community development, resource management, trust services, and general administration–to show that the government construed the system in a manner demonstrating the congressional intent that all federally recognized Indian tribes must receive funding.  Id. at 1, 3-4.  Plaintiff also sought discovery concerning agency interpretation of the Omnibus Budget Reconciliation Act of 1981, the Comprehensive Employment and Training Act, the Job Training Partnership Act, and the Housing Act of 1937 in order to prove that the government construed those statutes as mandating funding to all eligible tribes.  Id. at 4-5.  In ruling on plaintiff's discovery request, Chief Judge Edward J. Damich explained:

> At the very least, by placing Ms. Clark's declaration on the record in its Motion to Dismiss,[1] Defendant has, in effect, opened the door for Plaintiff to make further factual inquiries into the BIA's interpretation and construction of the statutes underlying the TPA mechanism.  More significantly, the declaration itself is strongly suggestive that the BIA may very well have considered that the statutes and regulations underlying TPA, in fact, mandate the payment of money to federally-recognized tribes. . . .
>
> Plaintiff's argument on behalf of its request for discovery related to the non-TPA programs is not as strong . . . .  [However, t]he Court finds plaintiff has adequately demonstrated that certain jurisdictional facts with respect to non-TPA programs are, in fact, disputed . . . .

---

[1]  Defendant attached one exhibit to its motion to dismiss: the Declaration of Debbie L. Clark, the Deputy Assistant Secretary–Indian Affairs (Management) of the United States Department of the Interior.

Id. at 7-8 (footnote added).  Accordingly, the Chief Judge granted plaintiff's request for limited discovery.  Id. at 9.

Disputes arose concerning the limited discovery permitted by the Chief Judge, and the parties filed supplemental briefs identifying which issues raised by defendant's motion to dismiss could be resolved without further discovery.  In his April 3, 2007 order, the Chief Judge directed plaintiff to "file its response to Defendant's motion to dismiss regarding 'the two major programs involved in this case'–TPA . . . and IHS . . . funding."  The Chief Judge specifically directed plaintiff to address "all legal issues within Defendant's motion as to TPA and IHS, including, inter alia, those described in Defendant's supplemental brief as 'overarching legal arguments.'"[2] Finally, the Chief Judge directed defendant to respond to plaintiff's arguments regarding TPA and IHS funding in its reply brief.

The initial briefing on defendant's motion to dismiss concluded on August 1, 2007. Chief Judge Damich subsequently reassigned the case to the undersigned, who directed the parties to file supplemental briefs concerning a then-recent decision of the United States Court of Appeals for the Federal Circuit ("Federal Circuit").  The court ultimately ruled on defendant's motion to dismiss, as limited by the Chief Judge's April 3, 2007 order, in a May 27, 2008 Opinion and Order.  See Samish Indian Nation v. United States, 82 Fed. Cl. 54 (2008) ("Samish II").

In its opinion, the court began its discussion by observing that the crux of plaintiff's allegations was "that both the TPA system and IHS funding are the product of a network of statutes, regulations, and administrative agency practices, and it is those networks that provide a money-mandating source of jurisdiction in the Court of Federal Claims."  Id. at 61.  Indeed, the court specifically noted that plaintiff was not alleging "that any of the statutes that comprise the TPA system or concern IHS funding are individually money-mandating."  Id. at 61 n.10.  Given plaintiff's allegations, the court reviewed the relevant case law, id. at 61-65, and concluded that a network of statutes and regulations "could create a money-mandating source of jurisdiction in the Court of Federal Claims," but only if the network described "a fiduciary relationship between the government and Indian tribes,"[3] id. at 65-66.  The court described the two factors identified in the

_____

[2] Defendant identified the following "overarching legal arguments": (1) "the programs Plaintiff alleges in its Complaint are not money-mandating because they are grant-in-aid statutes that subsidize tribes' future expenditures on social services programs"; (2) "these statutes cannot be money-mandating because they contain discretionary language"; and (3) the statutes "do not provide clear standards for payment, state the precise amounts to be paid, and, as interpreted, compel payment on satisfaction of certain conditions."  United States' Supplemental Br. Regarding Its Mot. Dismiss 3-5.

[3] In so concluding, the court rejected plaintiff's contention that it need not show the existence of a fiduciary relationship in order to establish jurisdiction using the network theory. Samish II, 82 Fed. Cl. at 65-66 (holding that the "discretionary schemes" described in Federal

three decisions in which reviewing courts found the existence of a fiduciary relationship that was defined by a network of statutes and regulations: "(1) express statutory and regulatory language supporting the existence of a fiduciary relationship and (2) such elaborate or comprehensive government control over Indian property as to constitute a common-law trust."[4] Id. at 66 (citations omitted).  Upon analyzing the network of statutes and regulations underlying the TPA system and IHS funding process, the court determined that neither factor described in the case law was present in this case.  Id. at 66-69.  Specifically, the court held that "[n]either the TPA system nor the IHS funding process contemplates the creation of a fiduciary relationship where the United States is directed to control and administer specific trust property for plaintiff," id. at 68, and that because "the funding appropriated by Congress for the benefit of the Indian people via the TPA system and IHS funding process is not trust property . . . , plaintiff has failed to prove the existence of a common-law trust," id. at 68-69.  Accordingly, the court dismissed "plaintiff's first claim for relief with respect to the TPA system and the IHS funding process" for lack of jurisdiction.  Id. at 69.

In a subsequently filed joint status report, plaintiff proposed that the court issue a final judgment in conformity with its May 27, 2008 Opinion and Order pursuant to RCFC 54(b).  At the court's direction, plaintiff filed the instant motion, and briefing on that motion has now concluded.  The court deems oral argument unnecessary.

## II.  DISCUSSION

### A.  RCFC 54(b)

The current RCFC 54(b) provides,[5] in its entirety:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, or third-party claim—or when multiple parties are involved, the

---

Circuit precedent were limited to "individual statutes or discrete statutory programs," and did not include the networks alleged by plaintiff).

[4] The three referenced decisions, which, to date, are the only decisions in which a reviewing court has found the existence of a fiduciary relationship that was defined by a network of statutes and regulations, include: United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003); United States v. Mitchell, 463 U.S. 206 (1983); and Navajo Nation v. United States, 501 F.3d 1327 (Fed. Cir. 2007), cert. granted, 77 U.S.L.W. 3195 (U.S. Oct. 1, 2008) (No. 07-1410).

[5] Effective November 3, 2008, after the parties concluded their briefing, the court amended RCFC 54(b) to conform with changes to the Federal Rules of Civil Procedure.  However, the substance of RCFC 54(b) has not changed.  Accordingly, the court applies the rule presently in effect.

court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The rule is substantially the same as Rule 54(b) of the Federal Rules of Civil Procedure;[6] accordingly, the court's analysis is guided by the case law construing both the federal rule and RCFC 54(b).  See RCFC, 2002 Rules Committee Note at 1 ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

As articulated in the rule, the court must make two determinations.  First, the court must make a finality determination, i.e., whether there exists a "cognizable claim for relief" that ultimately disposes of "'an individual claim entered in the course of a multiple claims action.'" Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)).  "The requirement of finality is a statutory mandate and not a matter of discretion."  W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc., 975 F.2d 858, 862 (Fed. Cir. 1992) (citing Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 742 (1976)); accord Sears, Roebuck & Co., 351 U.S. at 437 (noting that federal district courts cannot "treat as 'final' that which is not 'final' within the meaning of" 28 U.S.C. § 1291); see also 28 U.S.C. § 1295(a)(3) (containing a provision equivalent to 28 U.S.C. § 1291 applicable to the United States Court of Federal Claims ("Court of Federal Claims")).  Further, the Federal Circuit has held that "[t]he resolution of individual issues within a claim does not satisfy the requirements of Rule 54(b)."  Houston Indus. Inc. v. United States, 78 F.3d 564, 567 (Fed. Cir. 1996).

Second, after a finality determination has been made in favor of the moving party, the court must determine "whether there is any just reason for delay."  Curtiss-Wright Corp., 446 U.S. at 8.  In making this determination, the court "exercise[s] its discretion in the interest of sound judicial administration," Sears, Roebuck & Co., 351 U.S. at 437, taking "into account judicial administrative interests as well as the equities involved," Curtiss-Wright Corp., 446 U.S. at 8.  In particular, the court may "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."  Id.; accord Cold Metal Process Co. v. United Eng'g & Foundry Co., 351 U.S. 445, 452 (1956) (noting that a court may consider "the

---

[6]  The only difference is that the federal rule includes crossclaims among potential claims for relief.  Compare Fed. R. Civ. P. 54(b) ("whether as a claim, counterclaim, crossclaim, or third-party claim"), with RCFC 54(b) ("whether as a claim, counterclaim, or third-party claim").

relationship of the adjudicated claims to the unadjudicated claims" in determining whether there is any just reason for delay); Sears, Roebuck & Co., 351 U.S. at 438 (noting "the historic federal policy against piecemeal appeals"). Similarly, noting that there is no definitive test for determining the presence of multiple claims, the Court of Federal Claims has set forth the following factors to consider: "(1) The extent of factual overlap; (2) whether separate causes of action depend upon proof of different facts or have different burdens of proof; (3) whether the application of res judicata considerations suggest that the claims are linked; and (4) whether the multiple relief is for the same injury." Adams v. United States, 51 Fed. Cl. 57, 59 (2001) (citing 10 James Wm. Moore et al., Moore's Federal Practice ¶ 54.22[2][b][ii] (3d ed. 2000)); accord Klamath Irrigation Dist. v. United States, 69 Fed. Cl. 160, 164 (2005). None of these factors, standing alone, is dispositive. Curtiss-Wright Corp., 446 U.S. at 8 n.2; W.L. Gore & Assocs., Inc., 975 F.2d at 864.

### B. The TPA System and IHS Funding Process Allegations in Plaintiff's First Claim for Relief Are Not Individual, Cognizable Claims for RCFC 54(b) Purposes

The threshold issue before the court is whether plaintiff's allegations concerning the TPA system and the IHS funding process constitute individual, cognizable claims for the purpose of entry of judgment pursuant to RCFC 54(b). As noted above, plaintiff's second amended complaint contains two claims for relief. In its first claim for relief, plaintiff seeks damages for the government's failure to provide it with the identified programs, services, and benefits. Compl. ¶¶ 31-36. In its second claim for relief, plaintiff seeks damages for the government's failure to properly treat it as a federally recognized Indian tribe. Id. ¶¶ 37-44. In other words, the first claim for relief concerns the programs, services, and benefits on an individual basis and the second claim for relief concerns the programs, services, and benefits collectively. Given the potential overlap of plaintiff's two claims for relief, the question before the court is whether plaintiff's first claim for relief can be separated into discrete claims such that they are individual, cognizable claims, or whether the claims are so intertwined as to preclude entry of judgment pursuant to RCFC 54(b).

Plaintiff argues that entry of judgment is appropriate here, contending that its first claim for relief can be divided into various claims based upon the discrete programs, services, and benefits identified in paragraphs 30a through 30o of its second amended complaint. Samish Indian Nation's Mot. Entry Final J. Pursuant RCFC 54(b) Ct.'s Order May 27, 2008 ("Mot.") 3-7. Plaintiff avers that each program, service, and benefit is "based on a separate statutory framework, with separate legislative histories, [and is] administered by different federal agencies," and that the recovery of damages for each program, service, and benefit would not duplicate the recovery of damages of other programs, services, and benefits. Id. at 4. In further support of its contention, plaintiff points to the April 3, 2007 order, in which Chief Judge Damich directed the parties to limit their briefing to plaintiff's TPA system and IHS funding process allegations. Id. at 5-6. Plaintiff interprets the order as the Chief Judge's "agree[ment] with the Tribe's view that the TPA and IHS claims could be severed from the remainder for

purposes of adjudicating the motion to dismiss" and that "the same is true for purposes of entering a final judgment on those claims to allow for appellate review."   Id. at 6.

Plaintiff's contention lacks merit.  Plaintiff is correct that each program, service, and benefit enumerated in its second amended complaint is based upon separate statutory frameworks and administered by separate federal agencies.  However, because plaintiff alleges in its second claim for relief that all of the enumerated programs, services, and benefits–collectively–provide a basis for this court's jurisdiction, the court's conclusion that it lacks jurisdiction with respect to a particular program, service, or benefit under plaintiff's first claim for relief would not preclude plaintiff from obtaining an award of damages related to that program, service, or benefit.  In other words, the court's ruling that it lacks jurisdiction over one or more parts of the first claim for relief does not preclude the court from finding that it has jurisdiction over the second claim for relief.  Thus, even if the court entered a final judgment with respect to the TPA system and IHS funding process allegations as to plaintiff's first claim for relief, those allegations remain viable under plaintiff's second claim for relief; the TPA system and IHS funding process claims as a whole would not have been extinguished.  Therefore, the TPA system and IHS funding process allegations under plaintiff's first claim for relief are not individual, cognizable claims for RCFC 54(b) purposes.

Moreover, the court disagrees with plaintiff's interpretation of the Chief Judge's April 3, 2007 order.  The April 3, 2007 order merely served as an instrument to advance the case such that the court could ultimately resolve defendant's motion to dismiss in the most efficient way possible.  There was no indication in the order that the Chief Judge intended to enter a final judgment on his ruling on plaintiff's TPA system and IHS funding process allegations in the event that the court granted defendant's motion to dismiss plaintiff's first claim for relief with respect to those allegations.

## C.  There Is Just Reason for Delaying Entry of Final Judgment Pursuant to RCFC 54(b)

Although the court has reached a finality determination adverse to plaintiff, it finds that it would be instructive to discuss the second determination that the Court of Federal Claims is required to make under RCFC 54(b): whether there is any just reason for delay in entering a final judgment.  As noted above, in making this discretionary determination, the court "must take into account judicial administrative interests as well as the equities involved."  Curtiss-Wright Corp., 446 U.S. at 8.  The United States Supreme Court, the Federal Circuit, and the Court of Federal Claims have all enumerated various factors that a court may consider when addressing judicial administrative interests and the relevant equities, but none of these factors, taken in isolation, is dispositive.  Instead, the court must weigh the importance of the factors in light of the specific circumstances presented by the case.

Turning first to judicial administrative interests, the court reiterates its determination that plaintiff's allegations concerning the TPA system and IHS funding process under its first claim for relief are separate from those same allegations under its second claim for relief.  The two

-7-

claims for relief rely on the same legal frameworks but invoke different liability theories.  Thus, the court must make a dispositive ruling on both claims for relief before entering final judgment.[7]  Moreover, due to the interrelatedness of plaintiff's two claims for relief, entry of a final judgment on a portion of one claim for relief would likely result in piecemeal appeals.  For example, if the court entered final judgment on its May 27, 2008 Opinion and Order, it is highly likely that the Federal Circuit would confront (1) multiple appeals concerning the TPA system and IHS funding process (one for each cause of action), (2) multiple appeals concerning the application of the network theory of jurisdiction to plaintiff's allegations, or (3) separate appeals concerning each program, service, and benefit enumerated in its second amended complaint.  Multiple appeals may well result in several different panels of the Federal Circuit hearing these interrelated issues brought by the same plaintiff.  Such duplicative appeals are detrimental to the efficient operation of both this court and the Federal Circuit, and should therefore be avoided.

Plaintiff expresses concern that it would be prejudiced by the court's failure to enter the requested final judgment because further litigation in this court would be both protracted and contentious.  See Mot. 8-9.  Plaintiff contends that additional discovery would be required, and anticipates, based on past experience, that discovery disputes are inevitable.  Id. at 8.  Plaintiff further contends that it would likely need to retain its own experts.  Id.  The court understands plaintiff's concerns, but finds that effective measures can be established to avoid the difficulties that the parties might encounter.

First, the court notes that discovery and expert reports will not be required to determine whether the court has jurisdiction over all of the remaining programs, services, and benefits identified in plaintiff's second amended complaint, i.e., those described in paragraphs 30b, 30c, and 30e through 30o.  There are only three avenues available to plaintiff through which it can demonstrate the money-mandating character of these programs, services, and benefits: (1) the program, service, or benefit is the product of a network of statutes and regulations, Samish II, 82 Fed. Cl. at 61-65 (describing the network concept); (2) the program, service, or benefit is a qualifying discretionary scheme, id. at 65-66 (discussing the Federal Circuit precedent defining discretionary schemes); Samish I, slip op. at 8 ("Plaintiff has adequately demonstrated that certain jurisdictional facts with respect to non-TPA programs are, in fact, disputed, e.g., that all federally-recognized tribes received some funding under these statutes, and that the administering agencies, in fact, did not interpret any eligibility requirements as providing them discretionary authority."); or (3) one of the statutes or regulations that comprise the program, service, or benefit is individually money-mandating.  As the court previously held, to prevail under the network theory, plaintiff must demonstrate: "(1) express statutory and regulatory language supporting the existence of a fiduciary relationship and (2) such elaborate or comprehensive

---

[7]  Indeed, this conclusion would be the same regardless of which program, service, or benefit was the subject of a separate ruling.  Each of the programs, services, and benefits that are to be analyzed separately under plaintiff's first claim for relief is a component of plaintiff's second claim for relief.  See Compl. ¶¶ 32, 41.  The two claims for relief are completely intertwined.

government control over Indian property as to constitute a common-law trust." <u>Samish II</u>, 82 Fed. Cl. at 66 (citations omitted).  The first factor requires only an examination of the language of the relevant statutes and regulations.  The second factor requires only a determination of the existence of a common-law trust, which, given the court's discussion in its May 27, 2008 Opinion and Order,[8] <u>id.</u> at 68-69, should be relatively straightforward.  Thus, plaintiff would not need any discovery or expert opinions to demonstrate this court's jurisdiction over those programs, services, or benefits that are the product of a network of statutes and regulations.  Nor would discovery be necessary to determine whether a statute or regulation is individually money-mandating.  Accordingly, discovery, if indeed required, would be limited to those programs, services, or benefits that plaintiff contends to be discretionary schemes.

A review of plaintiff's second amended complaint reveals that only some of the enumerated programs, services, and benefits might fairly be argued to constitute a discretionary scheme as defined by the Federal Circuit and as further amplified by the court in its May 27, 2008 Opinion and Order.  Moreover, as permitted by the Chief Judge, plaintiff has previously propounded discovery requests on defendant, to which defendant served its responses and objections.  However, as plaintiff indicated in the parties' January 8, 2007 joint status report, it deemed defendant's responses insufficient, and indicated that it was prepared to file a motion to compel.[9]

Thus, at this stage, it appears that the next step for the court would be to resolve the parties' discovery dispute, if one remains; direct any necessary, limited discovery; and establish a schedule for the remaining briefing on defendant's motion to dismiss.  The court anticipates that the additional time necessary to accomplish these tasks will not significantly prejudice either party.  Further, an expeditious resolution of defendant's entire motion to dismiss will avoid piecemeal litigation before this court and the Federal Circuit with the resulting time and cost savings accruing to the parties and the courts.  Therefore, even if the court had reached a finality determination in plaintiff's favor, there would be ample just reason for delaying entry of judgment.

### III.  CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiff's motion for entry of judgment pursuant to RCFC 54(b).  Plaintiff shall, **by no later than Friday, February 27, 2009**, file either (1) a motion to compel that identifies, with specificity, which discovery responses by

---

[8]  Plaintiff conceded that its case did not involve trust property and the court concluded that "the funding appropriated by Congress for the benefit of the Indian people via the TPA system and IHS funding process is not trust property." <u>Samish II</u>, 82 Fed. Cl. at 68-69.

[9]  Because the Chief Judge limited the issues to be briefed on defendant's motion to dismiss to plaintiff's TPA program and IHS funding process allegations, it was unnecessary for plaintiff to file a motion to compel.

defendant are insufficient to allow plaintiff to adequately respond to defendant's motion to dismiss in light of the court's May 27, 2008 Opinion and Order and the instant ruling or (2) a status report indicating that it is able to proceed without any additional discovery.  If plaintiff decides to file a motion to compel, briefing shall proceed according to the time limits set forth in the RCFC, after which the court will convene a status conference to resolve the disputes.  If plaintiff decides to file a status report, the court will then issue an order setting forth a schedule for the remaining briefing of defendant's motion to dismiss.

**IT IS SO ORDERED**.

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge